**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RANDY R. LIEBICH | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | 11-cv-05624 |
| | ) | |
| WARDEN MARCUS HARDY; | ) | Hon. Judge Robert W. Gettlemen |
| WEXFORD HEALTH SOURCES, Inc.; | ) | |
| PARATHASARATHI GHOSH, M.D.; | ) | Magistrate Judge Nan R. Nolan |
| LIPING ZHANG, M.D.; | ) | |
| RONALD SCHAEFER, M.D.; | ) | |
| SALEH OBAISI, M.D., | ) | |
|     Defendants. | ) | |

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DECLARATORY
JUDGMENT UNDER THE CIVIL RIGHTS ACT, TITLE 42 U.S.C. § 1983, ET SEQ.**

Randy R. Liebich, for his complaint against Warden Marcus Hardy, Wexford Health

Source, Inc., Parathasarathi Ghosh, Liping Zhang, Ronald Schaefer, and Saleh Obaisi, states as

follows:

<u>THE PARTIES</u>

1.  At all relevant times, Plaintiff, Randy Liebich, is, and has been, incarcerated by the State

of Illinois and held by the Illinois Department of Corrections (I.D.O.C.) at Stateville Correctional

Center (hereinafter "Stateville").

2.  Defendant, Marcus Hardy (hereinafter "Warden Hardy") at all times relevant to this

complaint was the Warden and/or Chief Administrative Officer at Stateville and an employee of

I.D.O.C. Accordingly, Warden Hardy was, and continues to be, the highest ranking official of

Stateville. Additionally, Warden Hardy was, and continues to be, responsible for all persons

assigned to Stateville. At all relevant times Warden Hardy was acting under color of state law

and within the scope of his employment with I.D.O.C.

3. Defendant, Wexford Health Sources, Inc. (hereinafter "Wexford"), is a Pennsylvania Corporation transacting business in Illinois, and, is a health care provider for I.D.O.C. Facilities, including Stateville. At all relevant times Wexford was acting under color of state law by and through its lawful agents, including Drs. Ghosh, Zhang, Schaefer, and Obaisi.

4. Defendant, Parathasarathi Ghosh, M.D., at all times relevant to this complaint, was the Medical Director at Stateville and an employee of Wexford. Dr. Ghosh is sued here in his individual and official capacities. At all times relevant, Dr. Ghosh was acting under color of state law and within the scope of his employment with Wexford

5. Defendant, Liping Zhang, M.D., at all times relevant to this complaint, was a privately contracted general practice physician licensed to practice medicine in Illinois, with a place of employment at the Health Care Unit at Stateville. At all times relevant, Dr. Zhang was acting under color of state law and as an employee and/or agent of Wexford. Dr. Zhang is sued in her individual capacity.

6. Defendant, Ronald Schaefer, M.D., at all times relevant to this complaint, was a privately contracted general practice physician licensed to practice medicine in Illinois, with a place of employment at the Health Care Unit at Stateville. At all relevant times, Dr. Schaefer was acting under color of state law and within the scope of his employment with Wexford. Dr. Schaefer is sued in his individual capacity.

7. Defendant, Saleh Obaisi, M.D., at all times relevant to this complaint, on information and belief, was a privately contracted general practice physician licensed to practice medicine in Illinois, with a place of employment at the Health Care Unit at Stateville. At all times relevant, Dr. Obaisi was acting under color of state law and within the scope of his employment with Wexford. He is sued in his individual capacity.

8.   Plaintiff has never before been a party to any prior civil actions.

JURISDICTION

9.   This is a civil action to redress the continuing deprivation of rights secured by the Eighth Amendment to the United States Constitution and title 42 of the United States Code, § 1983.

10. This action arises under Title 42 of the United States Code § 1983 and the Court has Jurisdiction of the action under Title 28 of the United States Code, 1331 and § 1343.

VENUE

11. All of the events set forth in this complaint occurred during Plaintiff's incarceration in Stateville Correctional Center, State of Illinois. Venue therefore properly lies in the Northern District of Illinois.

GENERAL ALLEGATIONS

12. Plaintiff began serving his sentence at Stateville in 2005. By September of 2009 Plaintiff began experiencing chronic and severe pain in his abdomen and kidneys.

13. By November 4, 2009 Plaintiff began requesting medical treatment from Stateville medical staff for his pains.

14. From November 2009 until present, Plaintiff has continuously requested that the Stateville medical staff, including Dr. Ghosh, Dr. Zhang, Dr. Schaefer, and Dr. Obaisi as employees and/or agents of Wexford, provide treatment for his medical condition. These requests have been made via policies established by Warden Hardy as well as through formal grievances.

15. From November 2009 until present, Stateville medical staff has provided only cursory treatment; specifically the Defendants consistently refused Plaintiff's requests for medical treatment, referrals to a urology specialist, and administration of necessary prescription

medications.

16. From November 2009, until present, Plaintiff has made verbal and written requests upon Defendants and has filed formal grievances regarding Plaintiff's medical condition, his ongoing pain, and the failure to provide and administer medication prescribed by licensed doctors to treat Plaintiff's conditions.

17. Upon information and belief, all grievances made and/or filed were ignored or wrongfully denied. Accordingly, it is established that Plaintiff has taken proper action to exhaust his administrative remedies.

18. Defendants have, and continue to, deliberately deny Plaintiff adequate treatment in that they have either failed to conduct further diagnostic testing, timely refer him to a specialist, timely schedule follow-up appointments with appropriate specialists, provide and administer medication to relieve pain, and refused to provide and administer medications prescribed by urology specialists to treat Plaintiff's condition.

19. On November 4, 2009, Plaintiff was seen by Dr. Zhang for his abdominal and kidney pain. Dr. Zhang ordered lab tests and gave Plaintiff a pill, *Donnatal*, which provided no relief for Plaintiff's severe pain.

20. On November 10, 2009, Plaintiff was seen by Dr. Zhang for abdominal and kidney pain. Dr. Zhang merely pressed on Plaintiff's abdomen and lower back with her fingers and indicated that she didn't feel anything abnormal, so it was not anything serious. No further medical care was provided at this time.

21. On November 15, 2009 Plaintiff's lab tests results came back showing multiple abnormal readings, including elevated blood-urea-nitrogen ("BUN") and creatinine levels, both of which are indications of kidney distress and/or other kidney complications.

22. On or about December 3, 2009, Plaintiff further requested that Dr. Zhang then refer him to a specialist and prescribe him medication to relieve his pain. Dr. Zhang refused these requests and instead ordered another lab test. This lab test's results also yielded multiple abnormal readings.

23. On December 3, 2009, Dr. Ghosh ordered a lab test which also was abnormal with high levels of creatinine and a low BUN-Creatinine ratio.

24. Between November 4, 2009 and April 1, 2010, Plaintiff submitted numerous medical requests to Dr. Zhang and Dr. Ghosh, requesting medical treatment for his painful condition. However, most requests were not answered.

25. Upon information and belief, on or about April 1, 2010 Plaintiff's counselor, Ricky Bishop, informed Plaintiff that he "spoke to someone" at the Health Care Unit who related that Plaintiff had already been seen for his complaining issues several times and there was not going to be any further appointments made regarding the same issues.

26. Plaintiff filed a grievance on April 2, 2010 regarding the comment made by Mr. Bishop and the failure to answer his medical requests. Plaintiff requested treatment for his pain. The request was denied by the Grievance Officer based upon the fact that medical furloughs had been scheduled previously. However, these furloughs were actually appointments to consult a cardiologist regarding matters not related to the abdominal and renal pain the Plaintiff was experiencing. The denial was wrongfully confirmed by Warden Hardy.

27. On April 26, 2010 Plaintiff filed another grievance asking for medical treatment for his ongoing pain, explaining the previous furlough schedules and the need for new appointments to address his abdominal and renal pain. This grievance was wrongfully deemed "moot" by the grievance office in September 2010.

28. Thereafter, on May 22, 2010 Plaintiff was seen by Dr. Zhang at the Asthma Clinic (for an evaluation of his condition of asthma). After informing Dr. Zhang that he was continuing to experience abdominal and kidney pain, Dr. Zhang responded by prescribing *Excedrin Migraine* and indicating that the medication would alleviate the kidney and abdominal pain.

29. During the same consultation with Dr. Zhang on May 22, 2010, Plaintiff requested that Dr. Zhang refer him to a urology specialist. Dr. Zhang responded that it "costs too much money to see a specialist, and that the Stateville medical staff could not be sending inmates out for every little thing, or symptom." Dr. Zhang stated that for him to be referred to a urology specialist, Plaintiff's condition would need to be "life threatening."

30. By June 26, 2010 a kidney stone developed in Plaintiff's kidney that was so large it could not pass on its own via urination. It became lodged in plaintiff's urethra, completely obstructing urine flow. Plaintiff had not urinated in over 24-hours.

31. At approximately 9:30 a.m. on June 26, 2010, Plaintiff was sent to the Health Care Unit at which time Dr. Obaisi diagnosed Plaintiff's condition as an "impacted urinary calculus," (more commonly referred to as a "kidney stone") which was lodged inside the urethra.

32. Rather than sending Plaintiff to the local hospital for appropriate emergency treatment, Dr. Obaisi attempted to surgically remove the kidney stone himself without first providing Plaintiff any form of anesthesia, causing very severe pain and discomfort.

33. Plaintiff had to repeatedly demand to be provided with anesthesia at which time Dr. Obaisi decided to make several *lidocaine* injections into the tip of Plaintiff's penis and inside the urethra.

34. As a result of these injections, Plaintiff now has a permanent puncture hole which pierced straight through to the inside of this urethra causing Plaintiff to unnaturally urinate in two

streams.

35. Dr. Obaisi inflicted further physical damage on June 26, 2010 by stretching open Plaintiff's urethra with a hemostat, causing a small tear at the opening of the urethra. Dr. Obaisi also punctured Plaintiff with a pair of tweezers. All injuries caused bleeding.

36. After unsuccessfully attempting to remove the kidney stone, and causing severe pain and further damage to Plaintiff's penis and urethra, over the objections of attending "Nurse Tiffany," Dr. Obaisi, with the request of "Nurse Tiffany," decided that Plaintiff required emergency treatment at St. Joseph Hospital, in Joliet, IL. However, Dr. Obaisi did not arrange for Plaintiff to be transported for emergency medical care for several hours. Plaintiff was placed in a "holding cage" from approximately 11:00 a.m. to 3:23 p.m. during which time Plaintiff further suffered extreme pain and discomfort in his bladder and kidneys due to the tremendous pressure from maintaining a full bladder for over 30 hours, in addition to the injuries inflicted upon Plaintiff resulting from Dr. Obaisi's surgical attempt to remove the kidney stone.

37. Dr. Obaisi delayed Plaintiff's emergency transport because of a policy at Stateville which requires all employees to obtain authorization from the Medical Director and/or Chief Administrative Officer before calling for emergency transport. This policy caused unnecessary delay in Plaintiff's emergency medical treatment and placed Plaintiff at further risk of kidney damage where his bladder needed to be immediately drained.

38. Upon information and belief, it took Dr. Obaisi approximately four hours to obtain authorization for Plaintiff's transport to St. Joseph Hospital.

39. Once transported to Provena Saint Joseph Medical Center, a urology specialist, Dr. Gregory Andros, determined that Plaintiff would have to be administered general anesthesia and the kidney stone would have to be removed using a "laser procedure."

40. Plaintiff was discharged from Provena Saitn Joseph Medical Center on June 27, 2010 and returned to Stateville the same day.

41. On June 28, 2010, Plaintiff showed Dr. Ghosh the tear at the tip of the urethra and the injection site below it (caused by Dr. Obaisi's surgical attempts to remove the kidney stone on June 26, 2010). Plaintiff complained of severe pain due to these injuries, however Dr. Ghosh stated that the injuries would heal quickly and simply prescribed *Motrin* for the pain.

42. On July 1, 2010, Plaintiff filed a grievance regarding the damage inflicted by Dr. Obaisi and because of the failure to receive *Motrin* as prescribed by Dr. Ghosh. The Grievance Officer's response indicated that Dr. Obaisi's conduct was "normal procedure," and further conceded that *Motrin* was prescribed, but did not address the issue of the Plaintiff having received any dosage of *Motrin*. Ultimately, with the confirmation of Warden Hardy, the Grievance Officer dismissed the grievance.

43. On  July 2, 2010, Plaintiff was seen by Dr. Ghosh for pain in his kidneys and abdomen, irritation in his bladder and continued burning sensation when urinating.

44. Plaintiff informed Dr. Ghosh that he was not receiving the *Motrin* he had previously prescribed. Dr. Ghosh declined to provide any medication for Plaintiff's pain during this visit.

45. At the same appointment on July 2, 2010, Plaintiff also requested that Dr. Ghosh refer plaintiff for a follow-up treatment and/or consultation with a urology specialist because Plaintiff was still experiencing complications from the June 26, 2010 procedures by Dr. Obaisi and Provena Saint Joseph Medical Center. Dr. Ghosh refused and instead ordered a lab test.

46. On July 6, 2010, the lab test results yielded abnormal results, including high levels of creatinine, albumin, and a low BUN/creatinine ratio.

47. An attorney named Heather Kirkwood, who Plaintiff has remained in contact with after reviewing his criminal conviction, made several attempts, via telephone to Stateville regarding his medical issues and not receiving his prescribed medications.

48. Upon information and belief, after Heather Kirkwood's telephone calls, Plaintiff began receiving his medication after spending approximately ten days in pain and at risk of infection.

49. Upon information and belief, on July 20, 2010, Dr. Ghosh ordered another lab test and this test also yielded abnormal results, including high BUN and creatinine levels.

50. On August 10, 2010 Plaintiff was seen by Dr. Shaefer at the Asthma Clinic; Plaintiff described his medical condition including chronic pain, trouble urinating and injuries caused by Dr. Obaisi. Dr. Shaefer examined Plaintiff where he sustained the injuries caused by Dr. Obaisi. Dr. Shaefer noted the injection site, but refused to provide Plaintiff any medical treatment for his complaints despite Plaintiff's insistence by responding, "We're not going to sit here and waste any more time talking about this, we've discussed it at length and this is not what this appointment was about."

51. On August 13, 2010 Plaintiff filed a grievance against Dr. Ghosh, Dr. Zhang, and Dr. Shaefer for ignoring and not documenting his medical complaints. After not receiving any medical attention Plaintiff composed another grievance in the form of a letter on August 29, 2010.

52. On September 6, 2010, Plaintiff sent an "emergency grievance" to Warden Hardy complaining of severe pain in his abdomen, kidney, testicles, and bladder, swelling in his abdomen and that he was unable to empty his bladder during urination. Plaintiff informed Warden Hardy that the urine retention was placing him at risk of kidney damage and the medical staff was denying him treatment for this condition. Plaintiff specifically requested medical care

at an outside hospital to diagnose and threat his condition. Warden Hardy denied the grievance, deeming it "non-emergency."

53. On September 17, 2010, Plaintiff was seen by Dr. Ghosh and reported pain in his side that radiated to his abdomen as well as trouble urinating and emptying his bladder during urination. He also informed Dr. Ghosh that the kidney stones had begun to re-develop. Dr. Ghosh allegedly referred Plaintiff to the Urology Clinic at University of Illinois at Chicago (UIC) Hospital, located in Chicago, IL; and the appointment was allegedly approved by Wexford on September 22, 2010. However, the appointment was never followed through, that is Plaintiff was never transported to UIC Hospital for consultation.

54. On September 22, 2010 Plaintiff sent another "emergency grievance" to Warden Hardy requesting immediate medical care from an outside hospital. Plaintiff informed Warden Hardy that he was in constant severe pain and could not urinate enough to empty his bladder. The Grievance Officer responded to the grievance approximately 7 months later and dismissed the grievance. Warden Hardy denied the grievance again, deeming it "non-emergency."

55. By September 25, 2010 Plaintiff had not urinated for 24 hours and was admitted to the Stateville infirmary for 3 days where a catheter had to be installed so Plaintiff's bladder could drain. The need for catheterization and inability to urinate was documented in Plaintiff's medical chart.

56. On January 5, 2011, Plaintiff was required to provide a urine specimen for purposes of drug testing. After expressing his physical inability to produce the urine specimen due to his medical complication, Plaintiff was informed that non-compliance would result is penalties, including solitary confinement. Plaintiff indicated his medical records contained information from physicians describing his physical difficulties affecting his ability to urinate.

57. On January 5, 2011, Plaintiff did not produce the requested urine sample in the time period allotted. In turn, Plaintiff was sentenced to disciplinary action including six months C grade and six months segregation.

58. On January 10, 2011, Plaintiff filed a grievance in response to the disciplinary report he received for not producing a urine sample. The grievance indicated that his difficulty urinating was documented in his medical records. Plaintiff requested: (1) he be removed from segregation and be placed "back in Unit B;" (2) and that the disciplinary ticket be expunged and removed from his "record."

59. On January 13, 2011, Plaintiff's scheduled hearing in front of the Adjustment Committee took place; however, his requests to dismiss the disciplinary report and expunge the charges were denied based, in part, upon on the fact that defendant had not offered proof of a health condition affecting his ability to urinate. This final decision was approved by Warden Hardy.

60. On January 26, 2011, Plaintiff filed another grievance appealing the Adjustment Committee's Final Report, with firm evidence found in Plaintiff's medical records composed by Plaintiff's attending physicians indicating Plaintiff's difficulty and even inability to urinate. After further review, the Grievance Officer's response to these grievances recommended that Plaintiff's disciplinary report be expunged. However, Warden Hardy, as the final policy-maker, did not concur with the Grievance Officer's recommendations and denied the grievance, thus enforcing the disciplinary action for Plaintiff's failure to produce a urine sample on January 5, 2011.

61. On February 19, 2011 Heather Kirkwood wrote a letter to Warden Hardy in which she expressed her concern for Plaintiff's well being. In her letter, Ms. Kirkwood addressed Plaintiff's inability to urinate and the subsequent disciplinary report for lack of providing a urine sample on

January 5, 2010. After further correspondence, and obtaining Plaintiff's medical records, Ms. Kirkwood, sent specific evidence of Plaintiff's difficulty urinating found in the Physician's notes. Shortly following Heather Kirkwood's correspondence with Warden Hardy, Plaintiff was sent to UIC Hospital.

62. On or about March 2, 2011, a computerized axial tomography ("CAT") scan was performed which revealed that Plaintiff had developed another kidney stone in one of his kidneys.

63. On May 9, 2011, a procedure was conducted at UIC Hospital to look inside Plaintiff's urethra and bladder. The urology specialist diagnosed Plaintiff with a swollen Prostate and prescribed medication to help Plaintiff urinate and to treat his Prostate condition.

64. To date the Plaintiff has never received the medication prescribed the by the urology specialist at UIC Hospital on May 9, 2011.

65. Plaintiff has made numerous attempts to obtain this medication by informing the medical staff, writing three letters to the Medical Director and sending another "emergency grievance" to Warden Hardy. Warden Hardy denied the grievance, deeming it "non-emergency."

66. Upon information and belief, at all relevant times, Plaintiff's condition had been obvious and known by the Defendants yet the Defendants have deliberately denied and/or delayed necessary and obvious medical care.

67. Upon information and belief, at all relevant times, the Defendants have known Plaintiff's need for the referral to a specialist to treat Plaintiff's medical issues, however Defendants have deliberately continued to deny and/or delayed such medical care.

68. Upon information and belief, at all relevant times, the Defendants have known of Plaintiff's need for having his prescribed medications to be administered, however Defendants

have continued to deny and/or delay the administering of such medications.

69. Upon information and belief, Plaintiff has suffered retaliation from employees of Stateville including transfer to solitary confinement, for seeking medical care, and fighting for civil rights via litigation.

## EXHAUSTION

70. The Prison Litigation Reform Act, 42 U.S.C § 1997 (e)(a), provides that no action be brought by a prisoner with respect to prison conditions until "such administrative remedies as are available are exhausted."

71. Plaintiff has exhausted all available administrative remedies by repeatedly initiating formal grievance procedures in effort to obtain proper medical treatment. All of Plaintiff's grievances have been improperly denied.

## COUNT I
(42. U.S.C. § 1983 – Cruel and Unusual Punishment)
(Defendant Warden Hardy)

72. Plaintiff incorporates paragraphs 1 through 71 as paragraph 72 of this Count I.

73. The Eighth Amendment of the United States Constitution prohibits the Cruel and Unusual Punishment of United States Citizens by the Federal Government.

74. Plaintiff's rights under the Eighth Amendment, to be free from Cruel and Unusual Punishment by the State of Illinois, have been abridged by Warden Hardy's deliberate indifference to plaintiff's serious medical needs.

75. At all relevant times to this complaint, Warden Hardy was an employee of IDOC and the Warden and/or Chief Administrative Officer at Stateville.

76. Upon information and belief, Warden Hardy had final policy making authority and was responsible for ensuring performance of staff under his supervision, in addition to ensuring the

safety of inmates at Stateville.

77. While in the custody of the State of Illinois, Plaintiff is restrained from caring for himself and Warden Hardy has deliberately and willfully disregarded Plaintiff's complaints, that he was not being medically treated for his severe pain and suffering and urinary complications by the Stateville medical staff and/or officer staff under Warden Hardy's supervision.

78. Upon information and belief, at all relevant times, by numerous grievances filed directly to his attention, Warden Hardy was aware of: Plaintiff's pain and suffering; Plaintiff's suffering from urine retention; the detrimental effects on Plaintiff's kidneys; Plaintiff not receiving his necessary prescribed medications to treat his conditions; and Plaintiff's placement in segregation despite his inability to produce a urine sample in the time alotted.

79. Warden Hardy, in his supervising and official capacity showed deliberate indifference to Plaintiff's serious condition by:

a) deliberately disregarding and/or denying Plaintiff's grievances and/or complaints expressly indicating Plaintiff was not receiving necessary prescribed medication

b) approving, condoning, and allowing the denial of medication to be administered by staff under his supervision, despite numerous grievances

c) deliberately disregarding Plaintiff's medical condition and confirming Plaintiff's violation of 20 Ill. Adm. Code 501.130 (Substance Abuse), and subsequent disciplinary action, despite Plaintiff's physical inability to produce a urine specimen.

80. As a direct result of Warden Hardy's acts and/or omissions, Plaintiff's serious medical needs, and his pain and suffering have been exacerbated resulting in physical and emotional injuries.

WHEREFORE, Plaintiff prays that the Court:

a)  issue a preliminary and permanent injunction enjoining Defendant from denying and/or further delaying Plaintiff the necessary medical treatment as required;

b)  enter judgment against Defendant and in favor of Plaintiff for damages in an amount to be proven at trial;

c)  enter a judgment against Defendant for punitive damages;

d)  enter a judgment against Defendant and in favor of Plaintiff for costs of prosecuting this actions;

e)  order such further relief as this Court may deem appropriate.

<u>COUNT II</u>
(42 U.S.C. § 1983 – Cruel and Unusual Punishment)
(Defendant – Wexford)

81. Plaintiff incorporates paragraphs 1 through 80 as paragraph 81 of this Count II.

82. The Eighth Amendment of the United States Constitution prohibits the Cruel and Unusual Punishment of United States Citizens by the Federal Government.

83. Plaintiff's rights under the Eighth Amendment to be free from Cruel and Unusual Punishment by the State of Illinois has been abridged by Wexford's deliberate indifference to plaintiff's serious medical needs.

84. While in the custody of the State of Illinois, Plaintiff is restrained from caring for himself and Wexford has deliberately delayed and/or deliberately denied medical care necessary to alleviate obvious severe pain and suffering resulting from Plaintiff's kidney stones and urinary complications.

85. At all relevant times, Wexford, by and through its agents, knew of Plaintiff's need for specialized medical care, knew that failure to timely provide such care would aggravate his

medical conditions and injuries, and knew their failure to provide such care would exacerbate severe pain and suffering caused by these medical conditions and injuries. However, Wexford deliberately failed to take reasonable steps to ensure Plaintiff received the medical care required.

86. Upon information and belief, Wexford showed deliberate indifference to Plaintiff's serious medical needs by:

    a) having a policy that pressured and/or required defendants, as employees and/or agents of Wexford, to deny necessary medical care and treatment due to budgeting constraints.

    b) having a policy that caused unnecessary delay in Plaintiff's emergency medical transport on June 26, 2010.

87. As a direct result of Wexford's policies, Plaintiff's serious medical needs, and his pain and suffering have been exacerbated resulting in physical and emotional injuries.

WHEREFORE, Plaintiff prays that the Court:

    a) issue a preliminary and permanent injunction enjoining Wexford and its employees and/or agents from denying and/or further delaying Plaintiff the necessary medical treatment as alleged.

    b) enter judgment against Wexford and in favor of Plaintiff for damages in an amount to be proven at trial;

    c) enter a judgment against Wexford for punitive damages;

    d) enter a judgment against Wexford and in favor of Plaintiff for costs of prosecuting this actions;

    e) order such further relief as this Court may deem appropriate.

<u>COUNT III</u>
(42 U.S.C. § 1983 – Cruel and Unusual Punishment)
(Defendant – Dr. Ghosh)

88. Plaintiff incorporates paragraphs 1 through 87 as paragraph 88 of this Count III.

89. The Eighth Amendment of the United States Constitution prohibits the Cruel and Unusual Punishment of United States Citizens by the Federal government.

90. Plaintiff rights under the Eighth Amendment to be free from Cruel and Unusual Punishment by the State of Illinois have been abridged by Dr. Ghosh's deliberate indifference to Plaintiff's serious medical needs.

91. While in the custody of the State of Illinois, Plaintiff is restrained from caring for himself and Dr. Ghosh has deliberately delayed and/or denied medical care necessary to alleviate obvious severe pain and suffering resulting from known medical complications and severe injuries.

92. Dr. Ghosh, at all times relevant to this complaint, was an employee and/or agent of Wexford and the Medical Director of Stateville Correctional Center.

93. Upon information and belief, as Medical Director of Stateville, Dr. Ghosh had final policy and decision making authority with regard to Plaintiff's medical treatment and care.

94. Dr. Ghosh caused Plaintiff's constitutional injuries by deliberately failing to take reasonable steps to ensure Plaintiff received the medical treatment and care necessary.

95. Dr. Ghosh showed deliberate indifference to Plaintiff's serious medical needs by:

    a) deliberately refusing to order additional diagnostic tests despite Plaintiff's lab results and symptoms;

    b) deliberately refusing to refer and transfer Plaintiff to a specialist who was able to treat Plaintiff's kidney stones and urinary complications;

c) deliberately disregarding Plaintiff's pain and suffering;

d) deliberately disregarding the potential risk of damage to Plaintiff's kidneys from prolonged urine retention, caused by inability to urinate;

e) deliberately failing to provide necessary and proper pain medication to alleviate Plaintiff's pain and suffering caused by his kidney stones and unresolved urinary complication;

f) approving, condoning and disregarding the denial of medication treatment prescribed by doctors under his supervision;

g) deliberately failing to provide more than just cursory medical treatment.

96. As a direct result of Dr. Ghosh's deliberate indifference to Plaintiff's serious medical needs, and his pain and suffering have been exacerbated resulting in physical and emotional injuries.

WHEREFORE, Plaintiff prays that the Court:

a) issue a preliminary and permanent injunction enjoining the defendant from denying and/or further delaying Plaintiff the necessary medical treatment as alleged.

b) enter judgment against Defendant and in favor of Plaintiff for damages in an amount to be proven at trial;

c) enter a judgment against Defendant for punitive damages;

d) enter a judgment against Defendant and in favor of Plaintiff for costs of prosecuting this actions;

e) order such further relief as this Court may deem appropriate.

<u>COUNT IV</u>
(42 U.S.C. § 1983 – Cruel and Unusual Punishment)
(Defendant – Dr. Zhang)

97. Plaintiff incorporates paragraphs 1 through 96 as paragraph 97 of this Count IV.

98. The Eighth Amendment of the United States Constitution prohibits the Cruel and Unusual Punishment of United States Citizens by the Federal government.

99. Plaintiff's rights under the Eighth Amendment to be free from Cruel and Unusual Punishment by the State of Illinois have been abridged by Dr. Zhang's deliberate indifference to Plaintiff's serious medical needs.

100.    Dr. Zhang, at all times relevant to this complaint, was an employee and/or agent of Wexford and the Medical Director of Stateville Correctional Center.

101.    While in the custody of the State of Illinois, Plaintiff is restrained from caring for himself and Dr. Zhang has deliberately delayed and/or denied medical care necessary to alleviate obvious severe pain and suffering resulting from known medical complications and severe injuries.

102.    Dr. Zhang caused Plaintiff's constitutional injuries by deliberately failing to take reasonable steps to ensure Plaintiff received the medical care he required.

103.    Dr. Zhang showed deliberate indifference to Plaintiff's serious medical needs by:

    a) Prescribing medication that may have further aggravated Plaintiff's medical condition;

    b) deliberately refusing to order additional diagnostic testing despite Plaintiff's prior lab tests' results and symptoms establishing abnormalities;

    c) deliberately refusing to refer Plaintiff to the appropriate specialist who would have been able to appropriately treat Plaintiff's medical condition;

     d)   deliberately disregarding the potential risk of damage to Plaintiff's kidneys from prolonged urine retention, caused by inability to urinate;

     e)   deliberately failing to provide necessary and proper pain medication to alleviate Plaintiff's pain and suffering caused by his kidney stones and unresolved urinary complication;

     f)   approving, condoning and disregarding the denial of medication treatment prescribed by doctors under his supervision;

     g)   Deliberately failing to provide more than just cursory medical treatment.

104.     As a direct result of Dr. Zhang's conduct towards the Plaintiff's serious medical needs, Plaintiff's pain and suffering has been has needlessly been exacerbated, resulting in physical and emotional injuries.

WHEREFORE, Plaintiff prays that the Court:

     a)   enter judgment against Defendant and in favor of Plaintiff for damages in an amount to be proven at trial;

     b)   enter a judgment against Defendant for punitive damages;

     c)   enter a judgment against Defendant and in favor of Plaintiff for costs of prosecuting this actions;

     d)   order such further relief as this Court may deem appropriate.

<u>COUNT V</u>
(42 U.S.C. § 1983 – Cruel and Unusual Punishment)
(Defendant – Dr. Shaefer)

105.     Plaintiff incorporates paragraphs 1 through 104 as paragraph 105 of this Count V.

106.     The Eighth Amendment of the United States Constitution prohibits the Cruel and Unusual Punishment of United States Citizens by the Federal government.

107.     Plaintiff's rights under the Eighth Amendment to be free from Cruel and Unusual Punishment by the State of Illinois have been abridged by Dr. Shaefer's deliberate indifference to Plaintiff's serious medical needs.

108.     Dr. Shaefer, at all times relevant to this complaint, was an employee and/or agent of Wexford and the Medical Director of Stateville Correctional Center.

109.     While in the custody of the State of Illinois, Plaintiff is restrained from caring for himself and Dr. Shaefer has deliberately delayed and/or denied medical care necessary to alleviate obvious severe pain and suffering resulting from known medical complications and severe injuries.

110.     Dr. Shaefer showed deliberate indifference to Plaintiff's medical serious medical needs by:

    a)  Deliberately refusing to perform more than a cursory examination;

    b)  Deliberately refusing to provide medical treatment to Plaintiff specific to his complaints expressed to Dr. Shaefer on August 10, 2010;

    c)  Deliberately disregarding Plaintiff's pain and suffering caused by his unresolved medical condition;

    d)  Deliberately disregarding the potential risk of damage to Plaintiff's kidneys from prolonged urine retention;

    e)  deliberately disregarding the potential risk of damage to Plaintiff's kidneys from prolonged urine retention, caused by inability to urinate;

    f)  approving, condoning and disregarding the denial of medication treatment prescribed by doctors under his supervision;

    g)  Deliberately failing to provide necessary and proper medication to alleviate

Plaintiff's condition, including pain and suffering;

h) Deliberately failing to refer plaintiff to the appropriate specialist who would have been able to treat Plaintiff's medical condition.

111. As a direct result of Dr. Shaefer's conduct and deliberate indifference to Plaintiff's serious medical needs, Plaintiff's pain and suffering has needlessly been exacerbated, resulting in physical and emotional injuries.

WHEREFORE, Plaintiff prays that the Court:

a) enter judgment against Defendant and in favor of Plaintiff for damages in an amount to be proven at trial;

b) enter a judgment against Defendant for punitive damages;

c) enter a judgment against Defendant and in favor of Plaintiff for costs of prosecuting this actions;

d) order such further relief as this Court may deem appropriate.

<u>COUNT VI</u>
(42 U.S.C § 1983 – Cruel and Unusual Punishment)
(Defendant – Dr. Obaisi)

112. Plaintiff incorporates paragraphs 1 though 111 as paragraph 112 of this Count VI.

113. The Eighth Amendment of the United States Constitution prohibits the Cruel and Unusual Punishment of United States Citizens by the Federal government.

114. Plaintiff's rights under the Eighth Amendment to be free from Cruel and Unusual Punishment by the State of Illinois have been abridged by Dr. Obaisi's deliberate indifference to Plaintiff's serious medical needs.

115. Dr. Obaisi, at all times relevant to this complaint, was an employee and/or agent of Wexford and the Medical Director of Stateville Correctional Center.

116.     While in the custody of the State of Illinois, Plaintiff is restrained from caring for himself and Dr. Obaisi has deliberately delayed and/or denied medical care necessary to alleviate obvious severe pain and suffering resulting from known medical complications and severe injuries.

117.     Dr. Obaisi caused Plaintiff's constitutional injuries by attempting a surgical procedure without necessary and appropriate medical instruments, in an effort to prevent sending Plaintiff to an appropriate hospital to receive the emergency medical treatment Plaintiff required.

118.     Dr. Obaisi showed deliberate indifference to Plaintiff's serious medical needs by:

a)  deliberately failing to timely transfer Plaintiff for emergency care by a specialist capable of performing the necessary surgical treatment

b)  deliberately failing to provide necessary and proper anesthesia to alleviate Plaintiff's pain and suffering before attempting the surgical procedure

c)  deliberately disregarding the potential risk of damage to Plaintiff's kidneys and prolonged urine retention

d)  causing injuries to Plaintiff's urethra as a direct result of his attempted surgical procedure.

119.     As a direct result of Dr. Obaisi's conduct and deliberate indifference to Plaintiff's serious medical needs, Plaintiff's pain and suffering has needlessly been exacerbated, resulting in physical and emotional injuries.

WHEREFORE, Plaintiff prays that the Court:

a)  enter judgment against Defendant and in favor of Plaintiff for damages in an amount to be proven at trial;

b)  enter a judgment against Defendant for punitive damages;

c) enter a judgment against Defendant and in favor of Plaintiff for costs of prosecuting this actions;

d) order such further relief as this Court may deem appropriate.

COUNT VII
(42 U.S.C § 1983 – Retaliation)
(Defendant – Warden Marcus Hardy)

120.    Plaintiff incorporates paragraphs 1 though 119 as paragraph 120 of this Count VII.

121.    The First Amendment of the United States Constitution prohibits Retaliation against an incarcerated person  preventing him from exercising his constitutional rights.

122.    Plaintiff's rights under the First Amendment to be free from Retaliation by the State of Illinois have been abridged by Warden Hardy's denial of Plaintiff's grievances addressing the discipline he received for his physical inability to produce a urine specimen upon request.

123.    At all relevant times to this complaint, Warden Hardy was an employee of IDOC and the Warden and/or Chief Administrative Officer at Stateville.

124.    While in the custody of the State of Illinois, Plaintiff was disciplined and placed in solitary confinement for six months following his physical inability to produce a urine specimen on January 5, 2011. Plaintiff appropriately filed grievances addressing the discipline he received and requested an expungement of such discipline by presenting firm evidence of his medical condition and physical inability to urinate found in his medical records held by Stateville.

125.    Upon information and belief, Warden Hardy's retaliation was related to Plaintiff's numerous requests for medical care and grievances related to the Defendants' failure to provide

necessary medical care filed between April 2, 2010 and January 5, 2011.

126.     Upon information and belief, retaliation was further evidenced by Warden Hardy's deliberate denial of Plaintiff's request, and the Administrative Review Board's recommendation for expungment of discipline received following Plaintiff's grievances filed after January 5, 2011 addressing his medical condition and his inability to produce a urine specimen.

127.     Upon information and belief, at all relevant times, by numerous grievances filed and recommendations made by the Administrative Review Board, Warden Hardy was aware of Plaintiff's inability to urinate due to his medical condition. However, Warden Hardy deliberately and willfully denied the Administrative Review Board's recommendation, which was based on firm evidence, addressing his physical inability to urinate.

128.     Warden Hardy, in his supervising and official capacity retaliated against Plaintiff by:

   a)  deliberately disregarding and/or denying Plaintiff's grievances and/or complaints expressly indicating Plaintiff was physically unable to produce a urine specimen;

   b)  deliberately and willfully disregarding the Administrative Review Board's recommendation based upon firm medical evidence;

   c)  Approving, condoning and recommending that Plaintiff remain in solitary confinement, and denying Plaintiff's request to expunge the discipline received, despite Plaintiff's physical inability to produce a urine specimen.

129.     As a direct result of Warden Hardy's acts and/or omissions, Warden Hardy denied Plaintiff his constitutional rights including Plaintiff's right to seek redress through the administrative grievance process, by placing him in solitary confinement and not expunging the

discipline Plaintiff received, despite medical evidence proving Plaintiff's physical inability to urinate and the Administrative Review Board's contradicting findings and recommendation to expunge the discipline Plaintiff received. Accordingly, Plaintiff's serious medical needs, and his pain and suffering have been exacerbated resulting in physical and emotional injuries.

WHEREFORE, Plaintiff prays that the Court:

a)  enter judgment against Defendant and in favor of Plaintiff for damages in an amount to be proven at trial;

b)  enter a judgment against Defendant for punitive damages;

c)  enter a judgment against Defendant and in favor of Plaintiff for costs of prosecuting this actions;

d)  order such further relief as this Court may deem appropriate.

<u>JURY DEMAND</u>

Plaintiff demands a trial by jury pursuant to Rule 38(b) of the Federal Rules of Civil Procedure on all issues, so triable.

Dated May 18, 2012                                        Respectfully Submitted,

By: /s/ April Walkup

April Walkup
Hall, Prangle & Schoonveld LLC
200 S. Wacker Dr.
Suite 3300
Chicago, IL 60606
(312)345-9600
awalkup@hpslaw.com
*Attorney for Plaintiff Randy Liebich*

4826-8068-3022, v. 1