**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RANDY R. LIEBICH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 11 C 5624 |
| | ) | |
| WARDEN MARCUS HARDY; | ) | Hon. Judge Robert W. Gettlemen |
| WEXFORD HEALTH SOURCES, Inc.; | ) | Magistrate Judge Mary M. Rowland |
| PARATHASARATHI GHOSH, M.D.; | ) | |
| LIPING ZHANG, M.D.; RONALD | ) | |
| SCHAEFER, M.D.; SALEH OBAISI, | ) | |
| M.D., | ) | |
| Defendants. | ) | |

**DEFENDANT WARDEN MARCUS HARDY'S ANSWER TO PLAINTIFF'S FIRST
AMENDED COMPLAINT FOR DAMAGES AND DECLARATORY JUDGMENT
UNDER THE CIVIL RIGHTS ACT, TITLE 42 U.S.C. § 1983, ET SEQ.**

NOW COMES Defendant WARDEN MARCUS HARDY, by and through his attorney, LISA MADIGAN, Attorney General of Illinois, and hereby answers Plaintiff's First Amended Complaint as follows:

**THE PARTIES**

1.      At all relevant times, Plaintiff, Randy Liebich, is, and has been, incarcerated by the State of Illinois and held by the Illinois Department of Corrections (I.D.O.C.) at Stateville Correctional Center (hereinafter "Stateville").

**ANSWER**:   **Admit.**

2.      Defendant, Marcus Hardy (hereinafter "Warden Hardy") at all times relevant to this complaint was the Warden and/or Chief Administrative Officer at Stateville and an employee of I.D.O.C. Accordingly, Warden Hardy was, and continues to be, the highest ranking official of Stateville. Additionally, Warden Hardy was, and continues to be, responsible for all persons assigned to Stateville. At all relevant times Warden Hardy was acting under color of state law and within the scope of his employment with I.D.O.C.

**ANSWER**:     **Defendant admits that Marcus Hardy was the warden at Stateville
Correctional Center from December, 2009 until the present.  Defendant Hardy also admits
that he is an employee of IDOC, is the highest ranking official permanently stationed at
Stateville Correctional Center, and that at all times he was acting under color of law and**

1

within the scope of his employment. Defendant denies the remaining allegations contained in paragraph 2.

3. Defendant, Wexford Health Sources, Inc. (hereinafter "Wexford"), is a Pennsylvania Corporation transacting business in Illinois, and, is a health care provider for I.D.O.C. Facilities, including Stateville. At all relevant times Wexford was acting under color of state law by and through its lawful agents, including Drs. Ghosh, Zhang, Schaefer, and Obaisi.

**ANSWER**: **Defendant Hardy admits that Wexford provides health care at Stateville, but he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 3.**

4. Defendant, Parathasarathi Ghosh, M.D., at all times relevant to this complaint, was the Medical Director at Stateville and an employee of Wexford. Dr. Ghosh is sued here in his individual and official capacities. At all times relevant, Dr. Ghosh was acting under color of state law and within the scope of his employment with Wexford.

**ANSWER**: **Defendant Hardy lacks knowledge or information sufficient to form a belief as to the truth of the capacity in which Dr. Ghosh was acting at any specific time, but Defendant Hardy admits the remaining allegations contained in paragraph 4.**

5. Defendant, Liping Zhang, M.D., at all times relevant to this complaint, was a privately contracted general practice physician licensed to practice medicine in Illinois, with a place of employment at the Health Care Unit at Stateville. At all times relevant, Dr. Zhang was acting under color of state law and as an employee and/or agent of Wexford. Dr. Zhang is sued in her individual capacity.

**ANSWER**: **Defendant Hardy admits that Dr. Zhang provided health care at Stateville, but Defendant Hardy lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 5.**

6. Defendant, Ronald Schaefer, M.D., at all times relevant to this complaint, was a privately contracted general practice physician licensed to practice medicine in Illinois, with a place of employment at the Health Care Unit at Stateville. At all relevant times, Dr. Schaefer was acting under color of state law and within the scope of his employment with Wexford. Dr. Schaefer is sued in his individual capacity.

**ANSWER**: **Defendant Hardy admits that Dr. Schaefer provided health care at Stateville, but Defendant Hardy lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 6.**

7. Defendant, Saleh Obaisi, M.D., at all times relevant to this complaint, on information and belief, was a privately contracted general practice physician licensed to practice medicine in Illinois, with a place of employment at the Health Care Unit at Stateville. At all times relevant, Dr. Obaisi was acting under color of state law and within the scope of his

2

employment with Wexford. He is sued in his individual capacity.

**ANSWER**:    **Defendant Hardy admits that Dr. Obaisi provided health care at Stateville, but Defendant Hardy lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 7.**

8.      Plaintiff has never before been a party to any prior civil actions.

**ANSWER**:    **Defendant Hardy lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 8.**

## JURISDICTION

9.      This is a civil action to redress the continuing deprivation of rights secured by the Eighth Amendment to the United States Constitution and title 42 of the United States Code, § 1983.

**ANSWER**:    **Defendant Hardy admits that Plaintiff purports to bring this action pursuant to 42 U.S.C. § 1983.  Defendant Hardy denies the remaining allegations contained in paragraph 9.**

10.      This action arises under Title 42 of the United States Code § 1983 and the Court has Jurisdiction of the action under Title 28 of the United States Code, 1331 and § 1343.

**ANSWER**:    **Defendant Hardy admits that if this action were proper, this Court would have jurisdiction under 28 U.S.C. § 1331 and § 1343.**

## VENUE

11.      All of the events set forth in this complaint occurred during Plaintiff's incarceration in Stateville Correctional Center, State of Illinois. Venue therefore properly lies in the Northern District of Illinois.

**ANSWER**:    **Admit.**

## GENERAL ALLEGATIONS

12.      Plaintiff began serving his sentence at Stateville in 2005. By September of 2009 Plaintiff began experiencing chronic and severe pain in his abdomen and kidneys.

**ANSWER**:    **Defendant Hardy admits that Plaintiff began serving his sentence at Stateville in 2005.  Defendant Hardy lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 12.**

13.      By November 4, 2009 Plaintiff began requesting medical treatment from

Stateville medical staff for his pains.

**ANSWER**:    **Defendant Hardy lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 13.**

14.    From November 2009 until present, Plaintiff has continuously requested that the Stateville medical staff, including Dr. Ghosh, Dr. Zhang, Dr. Schaefer, and Dr. Obaisi as employees and/or agents of Wexford, provide treatment for his medical condition. These requests have been made via policies established by Warden Hardy as well as through formal grievances.

**ANSWER**:    **Defendant Hardy lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 14.**

15.    From November 2009 until present, Stateville medical staff has provided only cursory treatment; specifically the Defendants consistently refused Plaintiff's requests for medical treatment, referrals to a urology specialist, and administration of necessary prescription medications.

**ANSWER**:    **Deny.**

16.    From November 2009, until present, Plaintiff has made verbal and written requests upon Defendants and has filed formal grievances regarding Plaintiff's medical condition, his ongoing pain, and the failure to provide and administer medication prescribed by licensed doctors to treat Plaintiff's conditions.

**ANSWER**:    **Defendant Hardy admits that Plaintiff filed grievances related to medical care on November 12, 2009, July 1, 2010, April 2, 2010, August 13, 2010, September 6, 2010, September 22, 2010, January 26, 2011, and January 10, 2011.  Defendant Hardy admits that Plaintiff sent a letter to the Health Care Unit on June 11, 2011.  Defendant Hardy lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 16.**

17.    Upon information and belief, all grievances made and/or filed were ignored or wrongfully denied. Accordingly, it is established that Plaintiff has taken proper action to exhaust his administrative remedies.

**ANSWER**:    **Defendant Hardy denies that all grievances made and/or filed were ignored or wrongfully denied and further denies the remaining allegations contained in paragraph 17 which call for a legal conclusion.**

18.    Defendants have, and continue to, deliberately deny Plaintiff adequate treatment in that they have either failed to conduct further diagnostic testing, timely refer him to a specialist, timely schedule follow-up appointments with appropriate specialists, provide and administer medication to relieve pain, and refused to provide and administer medications

prescribed by urology specialists to treat Plaintiff's condition.

**ANSWER**: **Deny.**

19. On November 4, 2009, Plaintiff was seen by Dr. Zhang for his abdominal and kidney pain. Dr. Zhang ordered lab tests and gave Plaintiff a pill, Donnatal, which provided no relief for Plaintiff's severe pain.

**ANSWER**: **Defendant Hardy admits that Plaintiff was seen in the Health Care Unit on November 4, 2009, that Plaintiff complained of lower abdominal pain, and that Plaintiff was prescribed Donnatal. Defendant Hardy lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 19.**

20. On November 10, 2009, Plaintiff was seen by Dr. Zhang for abdominal and kidney pain. Dr. Zhang merely pressed on Plaintiff's abdomen and lower back with her fingers and indicated that she didn't feel anything abnormal, so it was not anything serious. No further medical care was provided at this time.

**ANSWER**: **Defendant Hardy admits that Plaintiff was seen in the Health Care Unit on November 10, 2009. Defendant Hardy lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 20.**

21. On November 15, 2009 Plaintiff's lab tests results came back showing multiple abnormal readings, including elevated blood-urea-nitrogen ("BUN") and creatinine levels, both of which are indications of kidney distress and/or other kidney complications.

**ANSWER**: **Defendant Hardy lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 21.**

22. On or about December 3, 2009, Plaintiff further requested that Dr. Zhang then refer him to a specialist and prescribe him medication to relieve his pain. Dr. Zhang refused these requests and instead ordered another lab test. This lab test's results also yielded multiple abnormal readings.

**ANSWER**: **Defendant Hardy lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 22.**

23. On December 3, 2009, Dr. Ghosh ordered a lab test which also was abnormal with high levels of creatinine and a low BUN-Creatinine ratio.

**ANSWER**: **Defendant Hardy lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 23.**

24. Between November 4, 2009 and April 1, 2010, Plaintiff submitted numerous medical requests to Dr. Zhang and Dr. Ghosh, requesting medical treatment for his painful

condition. However, most requests were not answered.

**ANSWER**:     **Defendant Hardy lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 24.**

25.     Upon information and belief, on or about April 1, 2010 Plaintiff's counselor, Ricky Bishop, informed Plaintiff that he "spoke to someone" at the Health Care Unit who related that Plaintiff had already been seen for his complaining issues several times and there was not going to be any further appointments made regarding the same issues.

**ANSWER**:     **Defendant Hardy lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 25.**

26.     Plaintiff filed a grievance on April 2, 2010 regarding the comment made by Mr. Bishop and the failure to answer his medical requests. Plaintiff requested treatment for his pain. The request was denied by the Grievance Officer based upon the fact that medical furloughs had been scheduled previously. However, these furloughs were actually appointments to consult a cardiologist regarding matters not related to the abdominal and renal pain the Plaintiff was experiencing. The denial was wrongfully confirmed by Warden Hardy.

**ANSWER**:     **Defendant Hardy admits that Plaintiff filed a grievance on April 2, 2010, which referenced a comment by Mr. Bishop and in which Plaintiff requested that he receive a thyroid hormone test and treatment for abdominal pains. Defendant Hardy admits that this grievance was denied by the Grievance Officer who referenced three medical furloughs in the response. Defendant Hardy admits that he concurred in Grievance Officer's denial of this grievance. Defendant Hardy denies the remaining allegations contained in paragraph 26.**

27.     On April 26, 2010 Plaintiff filed another grievance asking for medical treatment for his ongoing pain, explaining the previous furlough schedules and the need for new appointments to address his abdominal and renal pain. This grievance was wrongfully deemed "moot" by the grievance office in September 2010.

**ANSWER**:     **Defendant Hardy lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 27.**

28.     Thereafter, on May 22, 2010 Plaintiff was seen by Dr. Zhang at the Asthma Clinic (for an evaluation of his condition of asthma). After informing Dr. Zhang that he was continuing to experience abdominal and kidney pain, Dr. Zhang responded by prescribing Excedrin Migraine and indicating that the medication would alleviate the kidney and abdominal pain.

**ANSWER**:     **Defendant Hardy admits that Plaintiff was seen in the Health Care Unit on May 22, 2010, and Excedrin was prescribed for Plaintiff. Defendant Hardy lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 28.**

6

29.     During the same consultation with Dr. Zhang on May 22, 2010, Plaintiff requested that Dr. Zhang refer him to a urology specialist. Dr. Zhang responded that it "costs too much money to see a specialist, and that the Stateville medical staff could not be sending inmates out for every little thing, or symptom." Dr. Zhang stated that for him to be referred to a urology specialist, Plaintiff's condition would need to be "life threatening."

**ANSWER**:     **Defendant Hardy lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 29.**

30.     By June 26, 2010 a kidney stone developed in Plaintiff's kidney that was so large it could not pass on its own via urination. It became lodged in plaintiff's urethra, completely obstructing urine flow. Plaintiff had not urinated in over 24-hours.

**ANSWER**:     **Defendant Hardy lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 30.**

31.     At approximately 9:30 a.m. on June 26, 2010, Plaintiff was sent to the Health Care Unit at which time Dr. Obaisi diagnosed Plaintiff's condition as an "impacted urinary calculus," (more commonly referred to as a "kidney stone") which was lodged inside the urethra.

**ANSWER**:     **Defendant Hardy admits that Plaintiff was seen in the Health Care Unit on June 26, 2010, at approximately 9:30 a.m. and was diagnosed as having an "impacted urinary calculus," (more commonly referred to as a "kidney stone") which was lodged inside the urethra.  Defendant Hardy lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 31.**

32.     Rather than sending Plaintiff to the local hospital for appropriate emergency treatment, Dr. Obaisi attempted to surgically remove the kidney stone himself without first providing Plaintiff any form of anesthesia, causing very severe pain and discomfort.

**ANSWER**:     **Defendant Hardy lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 32.**

33.     Plaintiff had to repeatedly demand to be provided with anesthesia at which time Dr. Obaisi decided to make several lidocaine injections into the tip of Plaintiff's penis and inside the urethra.

**ANSWER**:     **Defendant Hardy lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 33.**

34.     As a result of these injections, Plaintiff now has a permanent puncture hole which pierced straight through to the inside of this urethra causing Plaintiff to unnaturally urinate in two streams.

**ANSWER**:    **Defendant Hardy lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 34.**

35.    Dr. Obaisi inflicted further physical damage on June 26, 2010 by stretching open Plaintiff's urethra with a hemostat, causing a small tear at the opening of the urethra. Dr. Obaisi also punctured Plaintiff with a pair of tweezers. All injuries caused bleeding.

**ANSWER**:    **Defendant Hardy lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 35.**

36.    After unsuccessfully attempting to remove the kidney stone, and causing severe pain and further damage to Plaintiff's penis and urethra, over the objections of attending "Nurse Tiffany," Dr. Obaisi, with the request of "Nurse Tiffany," decided that Plaintiff required emergency treatment at St. Joseph Hospital, in Joliet, IL. However, Dr. Obaisi did not arrange for Plaintiff to be transported for emergency medical care for several hours. Plaintiff was placed in a "holding cage" from approximately 11:00 a.m. to 3:23 p.m. during which time Plaintiff further suffered extreme pain and discomfort in his bladder and kidneys due to the tremendous pressure from maintaining a full bladder for over 30 hours, in addition to the injuries inflicted upon Plaintiff resulting from Dr. Obaisi's surgical attempt to remove the kidney stone.

**ANSWER**:    **Defendant Hardy admits that a doctor at the Stateville Health Care Unit recommended transferring Plaintiff to St. Joseph Hospital. Defendant Hardy lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 36.**

37.    Dr. Obaisi delayed Plaintiff's emergency transport because of a policy at Stateville which requires all employees to obtain authorization from the Medical Director and/or Chief Administrative Officer before calling for emergency transport. This policy caused unnecessary delay in Plaintiff's emergency medical treatment and placed Plaintiff at further risk of kidney damage where his bladder needed to be immediately drained.

**ANSWER**:    **Deny.**

38.    Upon information and belief, it took Dr. Obaisi approximately four hours to obtain authorization for Plaintiff's transport to St. Joseph Hospital.

**ANSWER**:    **Defendant Hardy lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 38.**

39.    Once transported to Provena Saint Joseph Medical Center, a urology specialist, Dr. Gregory Andros, determined that Plaintiff would have to be administered general anesthesia and the kidney stone would have to be removed using a "laser procedure."

**ANSWER**:    **Defendant Hardy lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 39.**

40.     Plaintiff was discharged from Provena Saitn [sic] Joseph Medical Center on June 27, 2010 and returned to Stateville the same day.

**ANSWER**:     **Admit.**

41.     On June 28, 2010, Plaintiff showed Dr. Ghosh the tear at the tip of the urethra and the injection site below it (caused by Dr. Obaisi's surgical attempts to remove the kidney stone on June 26, 2010). Plaintiff complained of severe pain due to these injuries, however Dr. Ghosh stated that the injuries would heal quickly and simply prescribed Motrin for the pain.

**ANSWER**:     **Defendant Hardy admits that Plaintiff saw Dr. Ghosh on June 28, 2010, and that Dr. Ghosh prescribed Motrin for Plaintiff.  Defendant Hardy lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 41.**

42.     On July 1, 2010, Plaintiff filed a grievance regarding the damage inflicted by Dr. Obaisi and because of the failure to receive Motrin as prescribed by Dr. Ghosh. The Grievance Officer's response indicated that Dr. Obaisi's conduct was "normal procedure," and further conceded that Motrin was prescribed, but did not address the issue of the Plaintiff having received any dosage of Motrin. Ultimately, with the confirmation of Warden Hardy, the Grievance Officer dismissed the grievance.

**ANSWER**:     **Defendant Hardy admits that Plaintiff filed a grievance on July 1, 2010, in which he stated that a doctor attempted to extract his kidney stone using a "painful, highly invasive, and inappropriate procedure."  Defendant Hardy also admits that Plaintiff requested that he receive "the appropriate pain relievers" in the July 1, 2010 grievance. Defendant Hardy admits that the Grievance Officer responded that the procedure used at Stateville was a normal procedure, that Motrin was prescribed to Plaintiff, and that the issues in the grievance appeared to be resolved.  Defendant Hardy denies that he confirmed the dismissal of the grievance.  Defendant Hardy lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 42.**

43.     On July 2, 2010, Plaintiff was seen by Dr. Ghosh for pain in his kidneys and abdomen, irritation in his bladder and continued burning sensation when urinating.

**ANSWER**:     **Defendant Hardy admits that Plaintiff was seen by Dr. Ghosh on July 2, 2010.  Defendant Hardy lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 43.**

44.     Plaintiff informed Dr. Ghosh that he was not receiving the Motrin he had previously prescribed. Dr. Ghosh declined to provide any medication for Plaintiff's pain during this visit.

**ANSWER**:     **Defendant Hardy lacks knowledge or information sufficient to form a belief**

as to the truth of the allegations contained in paragraph 44.

45.     At the same appointment on July 2, 2010, Plaintiff also requested that Dr. Ghosh refer plaintiff for a follow-up treatment and/or consultation with a urology specialist because Plaintiff was still experiencing complications from the June 26, 2010 procedures by Dr. Obaisi and Provena Saint Joseph Medical Center. Dr. Ghosh refused and instead ordered a lab test.

**ANSWER**:     **Defendant Hardy lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 45.**

46.     On July 6, 2010, the lab test results yielded abnormal results, including high levels of creatinine, albumin, and a low BUN/creatinine ratio.

**ANSWER**:     **Defendant Hardy lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 46.**

47.     An attorney named Heather Kirkwood, who Plaintiff has remained in contact with after reviewing his criminal conviction, made several attempts, via telephone to Stateville regarding his medical issues and not receiving his prescribed medications.

**ANSWER**:     **Defendant Hardy lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 47.**

48.     Upon information and belief, after Heather Kirkwood's telephone calls, Plaintiff began receiving his medication after spending approximately ten days in pain and at risk of infection.

**ANSWER**:     **Defendant Hardy lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 48.**

49.     Upon information and belief, on July 20, 2010, Dr. Ghosh ordered another lab test and this test also yielded abnormal results, including high BUN and creatinine levels.

**ANSWER**:     **Defendant Hardy admits that on July 20, 2010, Dr. Ghosh ordered a lab test for Plaintiff.  Defendant Hardy lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 49.**

50.     On August 10, 2010 Plaintiff was seen by Dr. Shaefer at the Asthma Clinic; Plaintiff described his medical condition including chronic pain, trouble urinating and injuries caused by Dr. Obaisi. Dr. Shaefer examined Plaintiff where he sustained the injuries caused by Dr. Obaisi. Dr. Shaefer noted the injection site, but refused to provide Plaintiff any medical treatment for his complaints despite Plaintiff's insistence by responding, "We're not going to sit here and waste any more time talking about this, we've discussed it at length and this is not what this appointment was about."

10

**ANSWER**:    **Defendant Hardy admits that Plaintiff was seen by Dr. Schaefer at the Asthma Clinic on August 10, 2010. Defendant Hardy admits that Dr. Schaefer's notes reflect that Plaintiff discussed his kidney stone, lab test results and an attempt to remove a kidney stone. Defendant Hardy also admits that Dr. Schaefer's notes reflect that he examined Plaintiff's penis and noted an old injection site. Defendant Hardy lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 50.**

51.    On August 13, 2010 Plaintiff filed a grievance against Dr. Ghosh, Dr. Zhang, and Dr. Shaefer for ignoring and not documenting his medical complaints. After not receiving any medical attention Plaintiff composed another grievance in the form of a letter on August 29, 2010.

**ANSWER**:    **Defendant Hardy admits that on August 13, 2010, Plaintiff filed a grievance in which he stated that several doctors at Stateville had not incorporated all of his medical history into his medical file. Defendant Hardy denies that an official grievance can be in the form of a letter. Defendant Hardy lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 51.**

52.    On September 6, 2010, Plaintiff sent an "emergency grievance" to Warden Hardy complaining of severe pain in his abdomen, kidney, testicles, and bladder, swelling in his abdomen and that he was unable to empty his bladder during urination. Plaintiff informed Warden Hardy that the urine retention was placing him at risk of kidney damage and the medical staff was denying him treatment for this condition. Plaintiff specifically requested medical care at an outside hospital to diagnose and threat [sic] his condition. Warden Hardy denied the grievance, deeming it "non-emergency."

**ANSWER**:    **Defendant Hardy admits that Plaintiff filed a grievance which he labeled as an emergency on September 6, 2010, in which he stated that he was experiencing pain and swelling in his bladder area, kidneys, lower abdomen and testicles and that he was unable to fully empty his bladder during urination. Defendant Hardy admits that Plaintiff also stated in the September 6, 2010, grievance that excess storage of urine can lead to possible infection and or kidney damage. Defendant Hardy admits that Plaintiff stated in this grievance that his requests for medical attention were being ignored and that Plaintiff requested diagnosis and treatment from an outside hospital for his condition. Defendant Hardy denies the remaining allegations contained in paragraph 52.**

53.    On September 17, 2010, Plaintiff was seen by Dr. Ghosh and reported pain in his side that radiated to his abdomen as well as trouble urinating and emptying his bladder during urination. He also informed Dr. Ghosh that the kidney stones had begun to re-develop. Dr. Ghosh allegedly referred Plaintiff to the Urology Clinic at University of Illinois at Chicago (UIC) Hospital, located in Chicago, IL; and the appointment was allegedly approved by Wexford on September 22, 2010. However, the appointment was never followed through, that is Plaintiff was never transported to UIC Hospital for consultation.

**ANSWER**:    Defendant Hardy admits that Plaintiff was seen by Dr. Ghosh on September 17, 2010, and Dr. Ghosh's notes reflect that Plaintiff complained of pain in his right side and abdomen. Defendant Hardy also admits that Dr. Ghosh's notes reflect that he referred Plaintiff to the UIC urology clinic. Defendant Hardy lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 53.

54.    On September 22, 2010 Plaintiff sent another "emergency grievance" to Warden Hardy requesting immediate medical care from an outside hospital. Plaintiff informed Warden Hardy that he was in constant severe pain and could not urinate enough to empty his bladder. The Grievance Officer responded to the grievance approximately 7 months later and dismissed the grievance. Warden Hardy denied the grievance again, deeming it "non-emergency."

**ANSWER**:    Defendant Hardy admits that Plaintiff filed a grievance on September 22, 2010, in which he requested "immediate medical treatment for kidney stones from an outside hospital." Defendant Hardy also admits that Plaintiff stated in the September 22, 2010 grievance that he could not urinate enough to empty his bladder. Defendant Hardy admits that on September 28, 2010, this grievance was determined not to be of an emergency nature because an emergency was not substantiated. Defendant Hardy lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 54.

55.    By September 25, 2010 Plaintiff had not urinated for 24 hours and was admitted to the Stateville infirmary for 3 days where a catheter had to be installed so Plaintiff's bladder could drain. The need for catheterization and inability to urinate was documented in Plaintiff's medical chart.

**ANSWER**:    Defendant Hardy admits that Plaintiff was admitted to the Health Care Unit on September 25, 2010, and reported that he had not urinated in 24 hours. Defendant Hardy also admits that Plaintiff's medical notes reflect that a catheter was inserted to drain Plaintiff's bladder. Defendant Hardy admits that Plaintiff's reported inability to urinate and need for catheterization were documented in Plaintiff's medical records. Defendant Hardy lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 55.

56.    On January 5, 2011, Plaintiff was required to provide a urine specimen for purposes of drug testing. After expressing his physical inability to produce the urine specimen due to his medical complication, Plaintiff was informed that non-compliance would result is [sic] penalties, including solitary confinement. Plaintiff indicated his medical records contained information from physicians describing his physical difficulties affecting his ability to urinate.

**ANSWER**:    Defendant Hardy admits that on January 5, 2011, Plaintiff was ordered to provide a urine specimen for a drug urinalysis test. Defendant Hardy lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 56.

57.     On January 5, 2011, Plaintiff did not produce the requested urine sample in the time period allotted. In turn, Plaintiff was sentenced to disciplinary action including six months C grade and six months segregation.

**ANSWER**:     **Admit.**

58.     On January 10, 2011, Plaintiff filed a grievance in response to the disciplinary report he received for not producing a urine sample. The grievance indicated that his difficulty urinating was documented in his medical records. Plaintiff requested: (1) he be removed from segregation and be placed "back in Unit B;" (2) and that the disciplinary ticket be expunged and removed from his "record."

**ANSWER**:     **Defendant Hardy admits that on January 10, 2011, Plaintiff filed a grievance in which he stated that he was not able to provide a urine sample within the allotted time frame due to medical problems and that his medical issues were documented in his medical file.  Defendant Hardy admits that in the January 10, 2011 grievance, Plaintiff requested "(1) to be immediately removed from disciplinary segregation and placed back in Unit B (2) expunge this disciplinary report from my record."**

59.     On January 13, 2011, Plaintiff's scheduled hearing in front of the Adjustment Committee took place; however, his requests to dismiss the disciplinary report and expunge the charges were denied based, in part, upon on the fact that defendant had not offered proof of a health condition affecting his ability to urinate. This final decision was approved by Warden Hardy.

**ANSWER**:     **Defendant Hardy admits that an Adjustment Committee hearing was held on January 13, 2011 regarding Plaintiff's disciplinary report for failing to provide a urine specimen.  Defendant Hardy also admits that the committee approved the recommended action based in part on Plaintiff's failure to produce proof of the medical condition he claimed to have.  Defendant Hardy denies the remaining allegations contained in paragraph 59.**

60.     On January 26, 2011, Plaintiff filed another grievance appealing the Adjustment Committee's Final Report, with firm evidence found in Plaintiff's medical records composed by Plaintiff's attending physicians indicating Plaintiff's difficulty and even inability to urinate. After further review, the Grievance Officer's response to these grievances recommended that Plaintiff's disciplinary report be expunged. However, Warden Hardy, as the final policy-maker, did not concur with the Grievance Officer's recommendations and denied the grievance, thus enforcing the disciplinary action for Plaintiff's failure to produce a urine sample on January 5, 2011.

**ANSWER**:     **Defendant Hardy admits that on January 26, 2011, Plaintiff filed a grievance regarding the disciplinary hearing on January 13, 2011 in which he referenced statements from his medical records and doctor's appointments related to his ability to urinate. Defendant Hardy admits that the Grievance Officer recommended that the grievance be**

13

expunged.  **Defendant Hardy denies the remaining allegations contained in paragraph 60.**

61.    On February 19, 2011 Heather Kirkwood wrote a letter to Warden Hardy in which she expressed her concern for Plaintiff's well being. In her letter, Ms. Kirkwood addressed Plaintiff's inability to urinate and the subsequent disciplinary report for lack of providing a urine sample on January 5, 2010. After further correspondence, and obtaining Plaintiff's medical records, Ms. Kirkwood, sent specific evidence of Plaintiff's difficulty urinating found in the Physician's notes. Shortly following Heather Kirkwood's correspondence with Warden Hardy, Plaintiff was sent to UIC Hospital.

**ANSWER**:    **Defendant Hardy admits that Heather Kirkwood wrote a letter to Warden Hardy in February, 2011.  Defendant Hardy lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 61.**

62.    On or about March 2, 2011, a computerized axial tomography ("CAT") scan was performed which revealed that Plaintiff had developed another kidney stone in one of his kidneys.

**ANSWER**:    **Defendant Hardy admits that on March 2, 2011, a CT scan was performed. Defendant Hardy lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 62.**

63.    On May 9, 2011, a procedure was conducted at UIC Hospital to look inside Plaintiff's urethra and bladder. The urology specialist diagnosed Plaintiff with a swollen Prostate and prescribed medication to help Plaintiff urinate and to treat his Prostate condition.

**ANSWER**:    **Defendant Hardy admits that Plaintiff went to UIC Hospital on a medical furlough on May 9, 2011.  Defendant Hardy lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 63.**

64.    To date the Plaintiff has never received the medication prescribed the by the urology specialist at UIC Hospital on May 9, 2011.

**ANSWER**:    **Defendant Hardy lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 64.**

65.    Plaintiff has made numerous attempts to obtain this medication by informing the medical staff, writing three letters to the Medical Director and sending another "emergency grievance" to Warden Hardy. Warden Hardy denied the grievance, deeming it "non-emergency."

**ANSWER**:    **Defendant Hardy lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 65.**

66.    Upon information and belief, at all relevant times, Plaintiff's condition had been obvious and known by the Defendants yet the Defendants have deliberately denied and/or

delayed necessary and obvious medical care.

**ANSWER**:     **Deny.**

67.     Upon information and belief, at all relevant times, the Defendants have known Plaintiff's need for the referral to a specialist to treat Plaintiff's medical issues, however Defendants have deliberately continued to deny and/or delayed such medical care.

**ANSWER**:     **Deny.**

68.     Upon information and belief, at all relevant times, the Defendants have known of Plaintiff's need for having his prescribed medications to be administered, however Defendants have continued to deny and/or delay the administering of such medications.

**ANSWER**:     **Deny.**

69.     Upon information and belief, Plaintiff has suffered retaliation from employees of Stateville including transfer to solitary confinement, for seeking medical care, and fighting for civil rights via litigation.

**ANSWER**:     **Deny.**

## EXHAUSTION

70.     The Prison Litigation Reform Act, 42 U.S.C § 1997 (e)(a), provides that no action be brought by a prisoner with respect to prison conditions until "such administrative remedies as are available are exhausted."

**ANSWER**:     **Admit.**

71.     Plaintiff has exhausted all available administrative remedies by repeatedly initiating formal grievance procedures in effort to obtain proper medical treatment. All of Plaintiff's grievances have been improperly denied.

**ANSWER**:     **Defendant Hardy denies that all Plaintiff's grievances were improperly denied and further denies the remaining allegations contained in paragraph 71 which call for a legal conclusion.**

## COUNT I
### (42. U.S.C. § 1983 – Cruel and Unusual Punishment)
### (Defendant Warden Hardy)

72.     Plaintiff incorporates paragraphs 1 through 71 as paragraph 72 of this Count I.

**ANSWER**:     **Defendant Hardy restates and re-pleads his answers to all of the preceding**

**paragraphs as is fully set forth herein.**

73.     The Eighth Amendment of the United States Constitution prohibits the Cruel and Unusual Punishment of United States Citizens by the Federal Government.

**ANSWER**:     **Admit.**

74.     Plaintiff's rights under the Eighth Amendment, to be free from Cruel and Unusual Punishment by the State of Illinois, have been abridged by Warden Hardy's deliberate indifference to plaintiff's serious medical needs.

**ANSWER**:     **Deny.**

75.     At all relevant times to this complaint, Warden Hardy was an employee of IDOC and the Warden and/or Chief Administrative Officer at Stateville.

**ANSWER**:     **Defendant Hardy admits that he is an employee of IDOC, and that he was the Warden and/or Chief Administrative Officer at Stateville from December, 2009 until the present. Defendant Hardy denies the remaining allegations contained in paragraph 75.**

76.     Upon information and belief, Warden Hardy had final policy making authority and was responsible for ensuring performance of staff under his supervision, in addition to ensuring the safety of inmates at Stateville.

**ANSWER**:     **Warden Hardy admits that part of his duties was to ensure the safety of inmates and supervise staff at Stateville. Defendant Hardy denies the remaining allegations contained in paragraph 76.**

77.     While in the custody of the State of Illinois, Plaintiff is restrained from caring for himself and Warden Hardy has deliberately and willfully disregarded Plaintiff's complaints, that he was not being medically treated for his severe pain and suffering and urinary complications by the Stateville medical staff and/or officer staff under Warden Hardy's supervision.

**ANSWER**:     **Deny.**

78. Upon information and belief, at all relevant times, by numerous grievances filed directly to his attention, Warden Hardy was aware of: Plaintiff's pain and suffering; Plaintiff's suffering from urine retention; the detrimental effects on Plaintiff's kidneys; Plaintiff not receiving his necessary prescribed medications to treat his conditions; and Plaintiff's placement in segregation despite his inability to produce a urine sample in the time alotted [sic].

**ANSWER**:     **Deny.**

79.     Warden Hardy, in his supervising and official capacity showed deliberate indifference to Plaintiff's serious condition by:

a)      deliberately disregarding and/or denying Plaintiff's grievances and/or complaints expressly indicating Plaintiff was not receiving necessary prescribed medication

b)      approving, condoning, and allowing the denial of medication to be administered by staff under his supervision, despite numerous grievances

c)      deliberately disregarding Plaintiff's medical condition and confirming Plaintiff's violation of 20 Ill. Adm. Code 501.130 (Substance Abuse), and subsequent disciplinary action, despite Plaintiff's physical inability to produce a urine specimen.

**ANSWER**:      **Deny.**

80.   As a direct result of Warden Hardy's acts and/or omissions, Plaintiff's serious medical needs, and his pain and suffering have been exacerbated resulting in physical and emotional injuries.

**ANSWER**:      **Deny.**

### COUNT II
### (42 U.S.C. § 1983 – Cruel and Unusual Punishment)
### (Defendant – Wexford)

81.      Plaintiff incorporates paragraphs 1 through 80 as paragraph 81 of this Count II.

**ANSWER**:      **Defendant Hardy restates and re-pleads his answers to all of the preceding paragraphs as is fully set forth herein.**

82.      The Eighth Amendment of the United States Constitution prohibits the Cruel and Unusual Punishment of United States Citizens by the Federal Government.

**ANSWER**:      **Admit.**

83.      Plaintiff's rights under the Eighth Amendment to be free from Cruel and Unusual Punishment by the State of Illinois has [sic] been abridged by Wexford's deliberate indifference to plaintiff's serious medical needs.

**ANSWER**:      **Deny.**

84.      While in the custody of the State of Illinois, Plaintiff is restrained from caring for himself and Wexford has deliberately delayed and/or deliberately denied medical care necessary to alleviate obvious severe pain and suffering resulting from Plaintiff's kidney stones and urinary complications.

**ANSWER**:      **Deny.**

85.      At all relevant times, Wexford, by and through its agents, knew of Plaintiff's need

17

for specialized medical care, knew that failure to timely provide such care would aggravate his medical conditions and injuries, and knew their failure to provide such care would exacerbate severe pain and suffering caused by these medical conditions and injuries. However, Wexford deliberately failed to take reasonable steps to ensure Plaintiff received the medical care required.

**ANSWER**:    **Deny.**

86.    Upon information and belief, Wexford showed deliberate indifference to Plaintiff's serious medical needs by:
   a)    having a policy that pressured and/or required defendants, as employees and/or agents of Wexford, to deny necessary medical care and treatment due to budgeting constraints.
   b)    having a policy that caused unnecessary delay in Plaintiff's emergency medical transport on June 26, 2010.

**ANSWER**:    **Deny.**

87.    As a direct result of Wexford's policies, Plaintiff's serious medical needs, and his pain and suffering have been exacerbated resulting in physical and emotional injuries.

**ANSWER**:    **Deny.**

## COUNT III
### (42 U.S.C. § 1983 – Cruel and Unusual Punishment)
### (Defendant – Dr. Ghosh)

88.    Plaintiff incorporates paragraphs 1 through 87 as paragraph 88 of this Count III.

**ANSWER**:    **Defendant Hardy restates and re-pleads his answers to all of the preceding paragraphs as is fully set forth herein.**

89.    The Eighth Amendment of the United States Constitution prohibits the Cruel and Unusual Punishment of United States Citizens by the Federal government.

**ANSWER**:    **Admit.**

90.    Plaintiff rights under the Eighth Amendment to be free from Cruel and Unusual Punishment by the State of Illinois have been abridged by Dr. Ghosh's deliberate indifference to Plaintiff's serious medical needs.

**ANSWER**:    **Deny.**

91.    While in the custody of the State of Illinois, Plaintiff is restrained from caring for himself and Dr. Ghosh has deliberately delayed and/or denied medical care necessary to alleviate obvious severe pain and suffering resulting from known medical complications and severe

injuries.

**ANSWER**:    **Deny.**

92.    Dr. Ghosh, at all times relevant to this complaint, was an employee and/or agent of Wexford and the Medical Director of Stateville Correctional Center.

**ANSWER**:    **Admit.**

93.    Upon information and belief, as Medical Director of Stateville, Dr. Ghosh had final policy and decision making authority with regard to Plaintiff's medical treatment and care.

**ANSWER**:    **Deny.**

94.    Dr. Ghosh caused Plaintiff's constitutional injuries by deliberately failing to take reasonable steps to ensure Plaintiff received the medical treatment and care necessary.

**ANSWER**:    **Deny.**

95.    Dr. Ghosh showed deliberate indifference to Plaintiff's serious medical needs by:
a)    deliberately refusing to order additional diagnostic tests despite Plaintiff's lab results and symptoms;
b)    deliberately refusing to refer and transfer Plaintiff to a specialist who was able to treat Plaintiff's kidney stones and urinary complications;
c)    deliberately disregarding Plaintiff's pain and suffering;
d)    deliberately disregarding the potential risk of damage to Plaintiff's kidneys from prolonged urine retention, caused by inability to urinate;
e)    deliberately failing to provide necessary and proper pain medication to alleviate Plaintiff's pain and suffering caused by his kidney stones and unresolved urinary complication;
f)    approving, condoning and disregarding the denial of medication treatment prescribed by doctors under his supervision;
g)    deliberately failing to provide more than just cursory medical treatment.

**ANSWER**:    **Deny.**

96.    As a direct result of Dr. Ghosh's deliberate indifference to Plaintiff's serious medical needs, and his pain and suffering have been exacerbated resulting in physical and emotional injuries.

**ANSWER**:    **Deny.**

**COUNT IV**
**(42 U.S.C. § 1983 – Cruel and Unusual Punishment)**
**(Defendant – Dr. Zhang)**

97.     Plaintiff incorporates paragraphs 1 through 96 as paragraph 97 of this Count IV.

**ANSWER**:     **Defendant Hardy restates and re-pleads his answers to all of the preceding paragraphs as is fully set forth herein.**

98.     The Eighth Amendment of the United States Constitution prohibits the Cruel and Unusual Punishment of United States Citizens by the Federal government.

**ANSWER**:     **Admit.**

99.     Plaintiff's rights under the Eighth Amendment to be free from Cruel and Unusual Punishment by the State of Illinois have been abridged by Dr. Zhang's deliberate indifference to Plaintiff's serious medical needs.

**ANSWER**:     **Deny.**

100.     Dr. Zhang, at all times relevant to this complaint, was an employee and/or agent of Wexford and the Medical Director of Stateville Correctional Center.

**ANSWER**:     **Deny.**

101.     While in the custody of the State of Illinois, Plaintiff is restrained from caring for himself and Dr. Zhang has deliberately delayed and/or denied medical care necessary to alleviate obvious severe pain and suffering resulting from known medical complications and severe injuries.

**ANSWER**:     **Deny.**

102.     Dr. Zhang caused Plaintiff's constitutional injuries by deliberately failing to take reasonable steps to ensure Plaintiff received the medical care he required.

**ANSWER**:     **Deny.**

103.     Dr. Zhang showed deliberate indifference to Plaintiff's serious medical needs by:
a)     Prescribing medication that may have further aggravated Plaintiff's medical condition;
b)     deliberately refusing to order additional diagnostic testing despite Plaintiff's prior lab tests' results and symptoms establishing abnormalities;
c)     deliberately refusing to refer Plaintiff to the appropriate specialist who would have been able to appropriately treat Plaintiff's medical condition;
d)     deliberately disregarding the potential risk of damage to Plaintiff's kidneys from prolonged urine retention, caused by inability to urinate;
e)     deliberately failing to provide necessary and proper pain medication to alleviate Plaintiff's pain and suffering caused by his kidney stones and unresolved urinary

        complication;

f)      approving, condoning and disregarding the denial of medication treatment prescribed by doctors under his supervision;

g)      Deliberately failing to provide more than just cursory medical treatment.

**ANSWER**:    **Deny.**

104. As a direct result of Dr. Zhang's conduct towards the Plaintiff's serious medical needs, Plaintiff's pain and suffering has been has needlessly been exacerbated, resulting in physical and emotional injuries.

**ANSWER**:    **Deny.**

## COUNT V
### (42 U.S.C. § 1983 – Cruel and Unusual Punishment)
### (Defendant – Dr. Shaefer)

105.    Plaintiff incorporates paragraphs 1 through 104 as paragraph 105 of this Count V.

**ANSWER**:    **Defendant Hardy restates and re-pleads his answers to all of the preceding paragraphs as is fully set forth herein.**

106.    The Eighth Amendment of the United States Constitution prohibits the Cruel and Unusual Punishment of United States Citizens by the Federal government.

**ANSWER**:    **Admit.**

107.    Plaintiff's rights under the Eighth Amendment to be free from Cruel and Unusual Punishment by the State of Illinois have been abridged by Dr. Shaefer's deliberate indifference to Plaintiff's serious medical needs.

**ANSWER**:    **Deny.**

108.    Dr. Shaefer, at all times relevant to this complaint, was an employee and/or agent of Wexford and the Medical Director of Stateville Correctional Center.

**ANSWER**:    **Deny.**

109.    While in the custody of the State of Illinois, Plaintiff is restrained from caring for himself and Dr. Shaefer has deliberately delayed and/or denied medical care necessary to alleviate obvious severe pain and suffering resulting from known medical complications and severe injuries.

**ANSWER**:    **Deny.**

110. Dr. Shaefer showed deliberate indifference to Plaintiff's medical serious medical needs by:

    a)    Deliberately refusing to perform more than a cursory examination;

    b)    Deliberately refusing to provide medical treatment to Plaintiff specific to his complaints expressed to Dr. Shaefer on August 10, 2010;

    c)    Deliberately disregarding Plaintiff's pain and suffering caused by his unresolved medical condition;

    d)    Deliberately disregarding the potential risk of damage to Plaintiff's kidneys from prolonged urine retention;

    e)    deliberately disregarding the potential risk of damage to Plaintiff's kidneys from prolonged urine retention, caused by inability to urinate;

    f)    approving, condoning and disregarding the denial of medication treatment prescribed by doctors under his supervision;

    g)    Deliberately failing to provide necessary and proper medication to alleviate Plaintiff's condition, including pain and suffering;

    h)    Deliberately failing to refer plaintiff to the appropriate specialist who would have been able to treat Plaintiff's medical condition.

**ANSWER**:    **Deny.**

111. As a direct result of Dr. Shaefer's conduct and deliberate indifference to Plaintiff's serious medical needs, Plaintiff's pain and suffering has needlessly been exacerbated, resulting in physical and emotional injuries.

**ANSWER**:    **Deny.**

## COUNT VI
### (42 U.S.C § 1983 – Cruel and Unusual Punishment)
### (Defendant – Dr. Obaisi)

112. Plaintiff incorporates paragraphs 1 though 111 as paragraph 112 of this Count VI.

**ANSWER**:    **Defendant Hardy restates and re-pleads his answers to all of the preceding paragraphs as is fully set forth herein.**

113. The Eighth Amendment of the United States Constitution prohibits the Cruel and Unusual Punishment of United States Citizens by the Federal government.

**ANSWER**:    **Admit.**

114. Plaintiff's rights under the Eighth Amendment to be free from Cruel and Unusual Punishment by the State of Illinois have been abridged by Dr. Obaisi's deliberate indifference to Plaintiff's serious medical needs.

**ANSWER**:    **Deny.**

115.     Dr. Obaisi, at all times relevant to this complaint, was an employee and/or agent of Wexford and the Medical Director of Stateville Correctional Center.

**ANSWER**:     **Deny.**

116.     While in the custody of the State of Illinois, Plaintiff is restrained from caring for himself and Dr. Obaisi has deliberately delayed and/or denied medical care necessary to alleviate obvious severe pain and suffering resulting from known medical complications and severe injuries.

**ANSWER**:     **Deny.**

117.     Dr. Obaisi caused Plaintiff's constitutional injuries by attempting a surgical procedure without necessary and appropriate medical instruments, in an effort to prevent sending Plaintiff to an appropriate hospital to receive the emergency medical treatment Plaintiff required.

**ANSWER**:     **Deny.**

118.     Dr. Obaisi showed deliberate indifference to Plaintiff's serious medical needs by:
a)     deliberately failing to timely transfer Plaintiff for emergency care by a specialist capable of performing the necessary surgical treatment
b)     deliberately failing to provide necessary and proper anesthesia to alleviate Plaintiff's pain and suffering before attempting the surgical procedure
c)     deliberately disregarding the potential risk of damage to Plaintiff's kidneys and prolonged urine retention
d)     causing injuries to Plaintiff's urethra as a direct result of his attempted surgical procedure.

**ANSWER**:     **Deny.**

119.     As a direct result of Dr. Obaisi's conduct and deliberate indifference to Plaintiff's serious medical needs, Plaintiff's pain and suffering has needlessly been exacerbated, resulting in physical and emotional injuries.

**ANSWER**:     **Deny.**

## COUNT VII
### (42 U.S.C § 1983 – Retaliation)
### (Defendant – Warden Marcus Hardy)

120.     Plaintiff incorporates paragraphs 1 though 119 as paragraph 120 of this Count VII.

**ANSWER**:     **Defendant Hardy restates and re-pleads his answers to all of the preceding**

paragraphs as is fully set forth herein.

121. The First Amendment of the United States Constitution prohibits Retaliation against an incarcerated person preventing him from exercising his constitutional rights.

**ANSWER:** **Defendant Hardy denies the allegations in paragraph 121 as they call for a legal conclusion.**

122. Plaintiff's rights under the First Amendment to be free from Retaliation by the State of Illinois have been abridged by Warden Hardy's denial of Plaintiff's grievances addressing the discipline he received for his physical inability to produce a urine specimen upon request.

**ANSWER:** **Deny.**

123. At all relevant times to this complaint, Warden Hardy was an employee of IDOC and the Warden and/or Chief Administrative Officer at Stateville.

**ANSWER:** **Defendant Hardy admits that he is and employee of IDOC, and that he was the Warden and/or Chief Administrative Officer at Stateville from December, 2009 until the present. Defendant Hardy denies the remaining allegations contained in paragraph 123.**

124. While in the custody of the State of Illinois, Plaintiff was disciplined and placed in solitary confinement for six months following his physical inability to produce a urine specimen on January 5, 2011. Plaintiff appropriately filed grievances addressing the discipline he received and requested an expungement of such discipline by presenting firm evidence of his medical condition and physical inability to urinate found in his medical records held by Stateville.

**ANSWER:** **Defendant Hardy admits that the Plaintiff was disciplined for failure to comply with an order to produce a urine specimen on January 5, 2011, and that Plaintiff sought expungement of this discipline. Defendant Hardy denies the remaining allegations contained in paragraph 124.**

125. Upon information and belief, Warden Hardy's retaliation was related to Plaintiff's numerous requests for medical care and grievances related to the Defendants' failure to provide necessary medical care filed between April 2, 2010 and January 5, 2011.

**ANSWER:** **Deny.**

126. Upon information and belief, retaliation was further evidenced by Warden Hardy's deliberate denial of Plaintiff's request, and the Administrative Review Board's recommendation for expungment of discipline received following Plaintiff's grievances filed after January 5, 2011 addressing his medical condition and his inability to produce a urine

specimen.

**ANSWER**:     **Deny.**

127.     Upon information and belief, at all relevant times, by numerous grievances filed and recommendations made by the Administrative Review Board, Warden Hardy was aware of Plaintiff's inability to urinate due to his medical condition. However, Warden Hardy deliberately and willfully denied the Administrative Review Board's recommendation, which was based on firm evidence, addressing his physical inability to urinate.

**ANSWER**:     **Deny.**

128.     Warden Hardy, in his supervising and official capacity retaliated against Plaintiff by:
   a)     deliberately disregarding and/or denying Plaintiff's grievances and/or complaints expressly indicating Plaintiff was physically unable to produce a urine specimen;
   b)     deliberately and willfully disregarding the Administrative Review Board's recommendation based upon firm medical evidence;
   c)     Approving, condoning and recommending that Plaintiff remain in solitary confinement, and denying Plaintiff's request to expunge the discipline received, despite Plaintiff's physical inability to produce a urine specimen.

**ANSWER**:     **Deny.**

129.     As a direct result of Warden Hardy's acts and/or omissions, Warden Hardy denied Plaintiff his constitutional rights including Plaintiff's right to seek redress through the administrative grievance process, by placing him in solitary confinement and not expunging the discipline Plaintiff received, despite medical evidence proving Plaintiff's physical inability to urinate and the Administrative Review Board's contradicting findings and recommendation to expunge the discipline Plaintiff received. Accordingly, Plaintiff's serious medical needs, and his pain and suffering have been exacerbated resulting in physical and emotional injuries.

**ANSWER**:     **Deny.**

**WHEREFORE**, the Defendant denies that the Plaintiff is entitled to the requested relief, or any relief whatsoever, and Defendant requests that this Court strike this Amended Complaint, deny all allegations against him, and enter judgment on his behalf, and for such further relief the Court finds reasonable and just.

## **GENERAL DENIAL**

Defendant denies each and every allegation not specifically admitted herein.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

At all times relevant herein, Defendant acted in good faith and in furtherance of lawful objectives without violating Plaintiff's clearly established statutory or constitutional rights of which a reasonable person would have know. Defendant is therefore protected from suit by the doctrine of qualified immunity.

### Second Affirmative Defense

The Defendant's personal involvement has not been established with sufficient specificity to state a claim upon which relief can be granted.

### Third Affirmative Defense

The Court lacks jurisdiction over any monetary relief against the Defendant in his official capacity under the Eleventh Amendment.

### JURY DEMAND

Defendant demands a trial by jury on all issues herein triable.

Respectfully Submitted,

LISA MADIGAN                           By:      /s/ Erin R. Gard
Attorney General of Illinois                    ERIN R. GARD
                                                Assistant Attorney General
                                                General Law Bureau
                                                100 W. Randolph, 13th Floor
                                                Chicago, Illinois 60601
                                                (312) 814-5163

26