IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RANDY R. LIEBICH, | ) | |
| | ) | |
| Plaintiff, | ) | No. 11 C 5624 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| WARDEN MARCUS HARDY; ALBERT J. | ) | |
| KISSELL; N. JACKSON; JOHNNIE L. | ) | |
| FRANKLIN; CHARLES P. FREDERICK; | ) | |
| ILLINOIS DEPARTMENT OF | ) | |
| CORRECTIONS; WEXFORD HEALTH | ) | |
| SOURCES, Inc.; PARATHASARATHI GHOSH, | ) | |
| M.D.; LIPING ZHANG, M.D.; RONALD | ) | |
| SCHAEFER, M.D.; SALEH OBAISI, M.D., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, an inmate at Stateville Correctional Facility, has filed a fourteen-count second

amended complaint against Warden Marcus Hardy, Albert J. Kissell, N. Jackson, Johnnie L.

Franklin, Charles P. Frederick, and the Illinois Department of Corrections ("the IDOC

defendants"); and Wexford Health Sources, Inc. ("Wexford"), Parathasarathi Ghosh, M.D.,

Liping Zhang, M.D., Ronald Schaefer, M.D., and Saleh Obaisi, M.D. (the Wexford defendants").

The complaint alleges counts of: Cruel and Unusual Punishment, in violation of 42 U.S.C. §

1983 (Counts I- VI);  Retaliation, in violation of 42 U.S.C. § 1983 (Count VII); Failure to

Intervene, in violation of 42 U.S.C. § 1983 (Count VIII); Violation of the Right to Procedural

Due Process,  in violation of 42 U.S.C. § 1983 (Count IX); Violation of the Americans With

Disabilities Act (ADA), 42 U.S.C. §§ 12131-12134 (Count X); Violation of the Rehabilitation

Act, 29 U.S.C. § 794 (Count XI); Negligent or Willful and Wanton Conduct, in violation of

Illinois law (Count XII); Intentional Infliction of Emotional Distress, in violation of Illinois law

(Count XIII); and Respondeat Superior under Illinois law (Count XIV). The IDOC defendants have filed a motion to dismiss Counts I and VIII - XIV, and the Wexford defendants have filed a motion to dismiss Counts II-VI, VIII, IX, XII, and XIII, both motions for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons described below, the court denies defendants' motion to dismiss: Counts I-VI; Count IX against Hardy, Franklin, and Frederick; Counts X and XI against IDOC; Count XII against the Wexford defendants, Franklin, and Frederick; and Count XIII against Wexford defendants. The court grants defendants' motion to dismiss Counts VIII and IX against the Wexford defendants, Kissell, and Jackson; Counts X and XI against all individual defendants; Count XII against Kissell, Hardy, and Jackson; Count XIII against the IDOC defendants; and Count XIV.

## BACKGROUND[1]

Plaintiff has been incarcerated in Stateville Correctional Facility since 2005. In his complaint, plaintiff alleges that he began experiencing pain in this abdomen and kidneys by September 2009, and by November 4, 2009, he began requesting medical treatment from the Stateville medical staff for his pain. Plaintiff alleges that the Wexford defendants provided only cursory treatment and refused plaintiff's request for further medical treatment. He also alleges that Hardy inappropriately affirmed the denial of his many grievances related to medical care.

Specifically, plaintiff alleges that on various dates between November 2009 and May 2010, plaintiff was seen by Dr. Zhang for his abdominal pain. Plaintiff alleges that Zhang refused to provide anything more than cursory treatment for the pain, offered no medication to

---

[1]The following facts are taken from Liebich's Second Amended Complaint and are assumed to be true for purposes of this Motion to Dismiss. See Murphy v. Walker, 51 F.3d 714, 717 (7th Cir.1995).

address plaintiff's pain beyond a single Donnatal pill and Excedrin Migraine, and refused to provide plaintiff with a referral to a specialist, despite plaintiff's request. Lab tests were ordered and returned abnormal results, but plaintiff was not provided with further treatment or medication. Plaintiff also alleges that Zhang told him that she would not refer him to a urology specialist because it was too costly, and that in order to get a referral, plaintiff's condition would have to be "life threatening." Between December 2009 and April 1, 2010, plaintiff submitted medical requests to both Zhang and Dr. Ghosh, but most requests were not answered.

On April 2, 2010, plaintiff filed a grievance ("first grievance") regarding the lack of a response to his medical requests, and once again requested treatment for his abdominal pain. The grievance officer denied the grievance, stating that medical furloughs had been previously scheduled. Plaintiff alleges that those furloughs were related to cardiologist consultations, were unrelated to his requests regarding abdominal pain, and that the grievance was therefore wrongly denied. Hardy confirmed the denial of the grievance.

Plaintiff filed another grievance ("second grievance") on April 26, 2010, explaining the reasons for the previous furloughs and requesting treatment for his abdominal pain. The request was deemed moot by the grievance officer in September 2010.

On June 26, 2010, plaintiff was diagnosed by Dr. Obaisi with an "impacted urinary calculus," or kidney stone. Obaisi first attempted to surgically remove the stone without anesthesia. After plaintiff demanded anesthesia, Obaisi made several lidocaine injections into the tip of plaintiff's penis and inside the urethra. Obaisi also allegedly stretched open plaintiff's urethra with a hemostat, causing a small tear, and punctured plaintiff with a pair of tweezers. Plaintiff alleges that all of these actions caused bleeding and pain.

Obaisi subsequently decided to transfer plaintiff to St. Joseph's Hospital in Joliet, Illinois, for emergency treatment. Plaintiff alleges that he was forced to wait in a "holding cage" for over four hours before being transferred to the hospital, and that this undue delay was due to a policy that requires all employees to obtain authorization from the Medical Director and/or Chief Administrative Officer before calling for emergency transport. Plaintiff further alleges that he experienced extreme pain as a result of the pressure of his full bladder and the injuries inflicted by Obaisi.

Plaintiff was transported to St. Joseph Medical Center, where a urology specialist determined that plaintiff would have to have the kidney stone removed by a laser procedure while under anesthesia. Plaintiff was discharged from the hospital the next day, June 27, 2010.

Following the procedure, in June and July 2010, plaintiff was treated multiple times by Ghosh. Plaintiff demonstrated the injuries inflicted by Obaisi to Ghosh and complained about the pain he was experiencing. Ghosh allegedly prescribed Motrin for the pain, but plaintiff did not receive the prescribed medication. At a later consultation, plaintiff advised Ghosh that he was not receiving the medication, but Ghosh declined to take any action.

On July 1, 2010, plaintiff filed a grievance ("third grievance") related to Obaisi's treatment of his kidney stone and the failure to receive the prescribed Motrin. The grievance officer acknowledged the prescription, but did not address the failure to receive the medication, and dismissed the grievance. Hardy confirmed the dismissal.

On July 2, 2010, Gosh examined plaintiff for his abdominal pain, and plaintiff reported that he was not receiving the medication prescribed. Plaintiff also requested a follow up consultation with a urology specialist to deal with complications that resulted from the June 26

procedures. Ghosh declined to provide medication and refused to refer plaintiff for a follow-up consultation with a specialist. Plaintiff also alleges that Ghosh ordered further lab tests and did not take any action when the results were returned abnormal.

On August 10, 2010, plaintiff was seen by Dr. Shaefar in the asthma clinic and described his abdominal pain and the injuries sustained from the June 26 procedure. Shaefar refused to provide plaintiff with any treatment, because plaintiff's abdominal pain was not the reason for the appointment.

Plaintiff filed a grievance ("fourth grievance") against Zhang, Ghosh, and Shaefar for failing to document his medical complaints. When he received no response, plaintiff filed another grievance ("fifth grievance") in the form of a letter on August 29, 2010. Plaintiff sent an "emergency grievance" ("sixth grievance") to Hardy on September 6, 2010, complaining of severe pain in his abdomen, kidney, testicles, and bladder, swelling in his abdomen, and that he was unable to empty his bladder during urination. Plaintiff claimed that the medical staff was denying him treatment for his symptoms. Hardy denied the grievance as a "non-emergency."

On September 17, 2010, plaintiff was evaluated by Ghosh for complaints of pain in his side and abdomen, as well as trouble urinating and emptying his bladder during urination. Plaintiff opined that kidney stones had begun to redevelop, and Ghosh allegedly referred plaintiff to the Urology Clinic at the University of Illinois, although plaintiff was never transported to the clinic.

On September 22, 2010, sent another "emergency grievance" to Hardy ("seventh grievance") requesting emergency medical care at an outside hospital to treat his severe pain and

difficulty emptying his bladder. The grievance officer denied the grievance approximately seven months later and Hardy affirmed the denial as a "non-emergency."

On September 25, 2010, plaintiff was admitted to the Stateville infirmary to have a catheter installed to drain his bladder. Plaintiff claims that his inability to urinate and the catheterization were noted on his medical records.

Plaintiff has also alleged counts against the IDOC defendants related to a disciplinary incident connected to his medical condition. On January 5, 2011, defendant Kissell ordered plaintiff to provide a urine sample within two hours for drug testing. Plaintiff informed Kissell of his medical condition, requested that Kissell verify his medical condition by consulting his medical records, and requested additional time to provide the sample, but was informed that noncompliance with the instruction would result in penalties. When plaintiff did not produce the sample, Kissell informed plaintiff that he would be sentenced to disciplinary action including six months C grade and six months of segregation. Kissell once more denied plaintiff's request for additional time and refused to consult his medical records.

The next day, plaintiff was served with a disciplinary report by defendant Jackson. Plaintiff asked Jackson to consult his medical records and to aid him in securing evidence for his Adjustment Committee hearing. Jackson refused.

On January 10, 2010, plaintiff filed a grievance ("eighth grievance") regarding his failure to provide a urine sample and the resulting disciplinary report. Plaintiff requested that he be removed from segregation and that this disciplinary ticket be expunged from his record.

On January 13, 2011, the Adjustment Committee addressed plaintiff's disciplinary report. In advance of the hearing, plaintiff attempted to secure evidence of his medical condition by

requesting copies of his medical records, requesting access to his legal boxes to retrieve copies of his filed grievances, and requesting that various medical personnel be called as witnesses. All of plaintiff's request were ignored, and at the hearing plaintiff was told that this evidence was not necessary because the disciplinary report spoke for itself. The Adjustment Committee, comprised of defendants Franklin and Frederick, denied plaintiff's request to dismiss the disciplinary report, in part because plaintiff had not offered proof of a health condition. Plaintiff alleges that this final decision was approved by Hardy.

On January 19, 2010, plaintiff was found guilty of violating the drug testing policy and sentenced to six months of segregation, six months good time credit revocation, 6 months of commissary restriction, six months of C-grade, and six months of contact visit restriction. The summary report stated that plaintiff could not produce evidence of his medical condition and that his medical records did not state that plaintiff had a problem with urination, which plaintiff alleges were materially false statements made by Franklin and Frederick.

Plaintiff filed a grievance ("ninth grievance") appealing the Committee's summary report on January 26, 2010. The grievance included evidence from plaintiff's medical records. Upon review, the grievance officer recommended that plaintiff's disciplinary report be expunged, but Hardy disagreed and denied the grievance. The Administrative Review Board affirmed Hardy's denial on June 3, 2011.

In May 2011, it was determined that plaintiff had developed another kidney stone and a urology specialist at UIC Hospital diagnosed plaintiff with a swollen prostate. The specialist prescribed medication, but plaintiff never received the medication. Plaintiff attempted to obtain the medication by informing medical staff, writing letters to the medical director, and sending

another "emergency grievance" to Hardy ("tenth grievance"), which was denied as a non-emergency.

## **DISCUSSION**

**A.      Legal Standard**

A Rule 12(b)(6) motion tests the sufficiency of the complaint, not the merits of the case. Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990).  In evaluating a motion to dismiss, the court thus accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007) (citations omitted).  To provide the defendant with "fair notice of what the claim is and the grounds upon which it rests," id. at 555, the complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2).  In addition, its allegations must plausibly suggest that the plaintiff has a right to relief and raise that possibility above the "speculative level."  Twombly, 550 U.S. at 555, citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004); see Ashcroft v. Iqbal, 556 U.S. 662 (2009) (explaining that Twombly's pleading principles apply in all civil actions).

**B.      Counts I-VI: Deliberate Indifference**

Plaintiff alleges that Warden Hardy, Wexford, Dr. Ghosh, Dr. Zhang, Dr. Schaefer, and Dr. Obaisi were deliberately indifferent to plaintiff's serious medical needs.

Under the Eighth Amendment, correctional officials and health care providers may not act with deliberate indifference to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); Walker v. Benjamin, 293 F.3d 1030, 1036–37 (7th Cir. 2002). Deliberate indifference has both an objective and a subjective element: the inmate

must have an objectively serious medical condition, and the defendant must be subjectively aware of and consciously disregard the inmate's medical need. Farmer v. Brennan, 511 U.S. 825, 834–37, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); Walker, 293 F.3d at 1037. A medical condition is serious "where 'failure to treat [it] could result in further significant injury or unnecessary and wanton infliction of pain.'" Hayes v. Snyder, 546 F.3d 516, 522 (7th Cir. 2008) (quoting Gutierrez v. Peters, 111 F.3d 1364, 1373 (7th Cir.1997)).

### 1.     The Wexford Doctors

In the counts concerning the Wexford defendants, plaintiff has alleged that he experienced significant abdominal and renal pain in connection with his kidney stones.  He has also alleged injuries in connection with the procedures Obaisi performed on June 26 in an effort to surgically remove the kidney stone. The Wexford defendants do not contest that plaintiff's injuries constitute a serious medical need. Instead, they argue that plaintiff has not demonstrated that defendants acted with deliberate indifference toward plaintiff's condition.  The Wexford defendants claim that the exercise of professional judgment, even if that exercise amounts to medical malpractice, does not rise to the level of deliberate indifference, and plaintiff has therefore not adequately plead his claim.

To satisfy this component, a prisoner must demonstrate that the defendant was aware of and consciously disregarded plaintiff's serious medical need. Farmer, 511 U.S. at 837; Sherrod v. Lingle, 223 F.3d 605, 610 (7th Cir. 2000). "The fact that a prisoner received some medical treatment does not necessarily defeat his claim; deliberate indifference to a serious medical need can be manifested by 'blatantly inappropriate' treatment, or by 'woefully inadequate action' as well as by no action at all." Allen v. Wexford Health Sources, Inc., No. 11 C 3834, 2011 WL

2463544, at *1 (N.D. Ill. Jun.17, 2011) (citations omitted); <u>Reed v. McBride</u>, 178 F.3d 849, 854 (7th Cir. 1999)). Refusing to treat a prisoner's chronic pain or erroneous treatment constituting a substantial departure from accepted medical judgment, practice, or standards may constitute deliberate indifference. <u>See</u> <u>Jones v. Simek</u>, 193 F.3d 485, 490 (7th Cir. 1999); <u>Gayton</u> v. McCoy, 593 F.3d 610, 623 (7th Cir. 2010).

Plaintiff alleges that he was treated by Zhang at least three times between November 2009 and May 2010, and on each occasion complained of severe abdominal and renal pain. He states that Zhang refused to prescribe medication beyond one Donnatal pill and refused to refer plaintiff to a specialist despite abnormal test results and repeated requests for treatment by plaintiff.  Plaintiff's kidney stones were not diagnosed until June 2010, when his condition became acute.   Although Zhang correctly points out that neither medical malpractice nor a mere disagreement with a doctor's medical judgment amounts to deliberate indifference, <u>Berry v. Peterman</u>, 604 F.3d 435, 441 (7th Cir. 2010), plaintiff has alleged that Zhang ignored his symptoms, provided unsatisfactory and cursory medical treatment, and ignored his medical requests. These factual allegations support an inference of deliberate indifference. Zhang's motion to dismiss Count IV is therefore denied.

Plaintiff alleges that Ghosh likewise ignored medical requests by plaintiff, refused to take any action when plaintiff advised Ghosh that he was not receiving medication previously prescribed, ignored abnormal tests results, and generally ignored plaintiff's requests for treatment.  Because these factual allegations are sufficient to state a claim for deliberate indifference, Ghosh's motion to dismiss Count III is denied.

Plaintiff alleges that Obaisi attempted to remove his kidney stone surgically without any anesthesia and caused a tear in plaintiff's urethra. He further alleges that Obaisi delayed plaintiff's emergency treatment for four hours, causing plaintiff severe pain and discomfort. Because these allegations are sufficient to state a claim of deliberate indifference, Obaisi's motion to dismiss Count VI is therefore denied.

Plaintiff alleges that Shaefer ignored his symptoms and pain, refused to provide treatment for plaintiff's complaints, and refused to provide medication or referrals. Because these allegations are sufficient to state a claim of deliberate indifference, Shaefar's motion to dismiss Count V is denied.

The Wexford defendants also claim that Counts III through VI should be dismissed on the basis of qualified immunity. The Seventh Circuit has stated that in cases where the constitutional right alleged to have been violated is articulated at the time the violation is alleged to have occurred, "plaintiff is not required initially to plead factual allegations that anticipate and overcome a defense of qualified immunity." Jacobs v. City of Chicago, 215 F.3d 758, 765 (7th Cir. 2000). Because plaintiff's Eighth Amendment rights were established at the time of violation, the court declines to dismiss Counts III- VI on the grounds of qualified immunity.

### 2. Wexford

Defendant Wexford argues that it cannot be held responsible for the actions of its employees under a theory of respondeat superior. Wexford may, however, be held liable for deliberate indifference of plaintiff's medical needs if Wexford maintained a policy or custom that violated plaintiff's rights. See Minix v. Canarecci, 597 F.3d 824, 832 (7th Cir. 2010) (private providers of medical services to prisoners are treated like municipalities for purposes of

§ 1983); <u>Estate of Novack ex rel. Turbin v. County of Wood</u>, 226 F.3d 525, 530 (7th Cir. 2000) (a "municipality may be liable for harm to persons incarcerated under its authority if it maintains a policy that sanctions the maintenance of prison conditions that infringe upon the constitutional rights of the prisoners.") (internal citation omitted).  The alleged "policy or practice must be the 'direct cause' or 'moving force' behind the constitutional violation, which a plaintiff may show directly by demonstrating that the policy is itself unconstitutional." <u>Minix</u>, 597 F.3d at 832 (citing <u>Novack</u>, 226 F.3d at 530–31.)

Plaintiff alleges that Wexford has in place a policy that required its employees to deny medical care due to budgetary constraints and a policy that causes unnecessary delay in emergency medical transport situations. Plaintiff has also alleged that he was told by Zhang that it was too costly to send him out for a referral and that his medical condition would have to be "life-threatening" in order for plaintiff to consult with a specialist.  Plaintiff further alleges that he was forced to wait over four hours before being transported to a hospital because of a Wexford policy requiring the permission of the Medical Director and/or Chief Administrative Officer prior to any emergency transport.  Because these allegations are sufficient to state a claim of a policy or custom maintained by Wexford, Wexford's motion to dismiss Count II of the complaint is denied.

### 3.     Defendant Hardy

The remaining count regarding deliberate indifference, Count I, is against Hardy. Plaintiff alleges that Hardy was deliberately indifferent to his serious medical needs when Hardy affirmed the denial of grievances and confirmed disciplinary action against plaintiff when plaintiff refused to provide a urine specimen.  In response to the claims regarding the denial of

grievances, Hardy argues that the claim is inadequately pled because officials may properly rely on the judgment of medical professionals, and plaintiff's complaint does not allege any involvement by Hardy outside of the grievance process.

Supervisors and others in authority cannot be held liable for any alleged wrongdoing on the part of subordinates pursuant to the doctrine of respondeat superior because that doctrine does not apply in § 1983 actions. Pacelli v. DeVito, 972 F.2d 871, 877 (7th Cir. 1992); see Jones v. City of Chicago, 856 F.2d 985, 992 (7th Cir. 1988). It is well established, however, that a supervisor may not "turn a blind eye" to constitutional violations. T.E. v. Grindle, 599 F.3d 583, 588 (7th Cir. 2010) (quoting Jones v. City of Chicago, 856 F.2d 985, 992 (7th Cir. 1988)). Although plaintiff admits that he was regularly seen by health care providers, he alleges that his condition went largely untreated. From November 2009 until June 26, 2010, plaintiff requested medication, referrals, and consultations with medical staff. Although doctors attended plaintiff, he claims that his pain was not resolved until his condition became acute and required an emergency transfer to a local hospital.

Plaintiff alleges that Hardy is liable because he confirmed the grievances in which plaintiff reported that the doctors were not responding to his medical requests. Where an official is informed that a plaintiff is being denied access to health care, that official may be held liable for his inaction. Reed v. Indiana Dept. of Corr., 30 F. App'x 616, 618 (7th Cir. 2002) ("[Eighth Amendment] protection includes situations where prisoners are denied access to necessary medical care, or where officials excessively delay access to such care."). Plaintiff has pled knowledge on Hardy's part, as well as inaction. Because these allegations are sufficient to state a claim against Hardy for deliberate indifference, Hardy's motion to dismiss Count I is denied.

13

**C.      Count VIII: Failure to Intervene**

Plaintiff alleges in Count VIII that one or more of the (eleven) defendants had a reasonable opportunity to prevent the violation of his constitutional rights and failed to do so.  In response, both the IDOC defendants and the Wexford defendants argue that plaintiff has not adequately plead a failure to intervene because the individual defendants are not personally liable for plaintiff's mistreatment and plaintiff has not connected individual defendants with specific acts that violated plaintiff's rights.

Although plaintiff points to the numerous allegations in the initial factual recitation of complaint that do specify the actions of each individual, those allegations do not set forth a sufficient factual basis for failure to intervene.  The complaint does not provide adequate notice to the individual defendants regarding whether they themselves are alleged to have failed to intervene and whose actions they failed to stop.  For example, it is unclear whether the doctors are alleged to have failed to intervene to stop the alleged constitutional violations of other doctors, the defendant guards, or Warden Hardy.  It is likewise unclear whether Hardy is alleged to have failed to intervene to stop constitutional violations committed by the doctors or the guards, and whether the guards are alleged to have failed to intervene to stop violations by Hardy, other guards, or the doctors.  Unlike <u>Johnson v. Vill. of Maywood</u>, 12 C 3014, 2012 WL 5862756 (N.D. Ill. Nov. 19, 2012), cited by plaintiff, where the complaint detailed that officials witnessed an attack and failed to come to the aid of the plaintiff, the complaint in the instant case does not include sufficient allegations to determine which defendants are alleged to have failed intervene in the many incidents detailed in the complaint. Because this count does not adequately

put defendants on notice of the claims against them, the court dismisses Count VIII as to all defendants.

**D.       Count IX: Due Process**

Plaintiff alleges that one or more defendants violated his constitutional right to procedural due process by depriving him of an impartial Adjustment Committee panel and impartial procedures, denying plaintiff's request to call witnesses and present evidence at his disciplinary hearing, and recommending punishment unsupported by the proceedings. The IDOC defendants argue that plaintiff's due process claim is both barred by <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994), and inadequately pled because plaintiff has not connected specific defendants to specific acts.

In <u>Heck</u>, the Supreme Court established a test to determine whether a prisoner's § 1983 is cognizable:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

512 U.S. at 487, 114 S.Ct. at 2372.

Judgments that result from prison disciplinary hearings qualify as "convictions" under Heck if there is a finding of guilt on the disciplinary charge and the hearing implicates the length of confinement. Stone-Bey v. Barnes, 120 F.3d 718, 719 (7th Cir. 1997), overruled on other grounds by DeWalt v. Carter, 224 F.3d 607 (7th Cir. 2000). The Supreme Court, however, has never "announced that the Heck rule bars a prisoner's challenge under § 1983 to an administrative or disciplinary sanction that does not affect the overall length of confinement." Jenkins v. Haubert, 179 F.3d 19, 27 (2d Cir. 1999). In DeWalt v. Carter, 224 F.3d 607, 617 (7th Cir. 2000), the Seventh Circuit held that a prisoner challenging the conditions of confinement, not the fact or duration of his confinement, may not pursue a habeas action and therefore may proceed on a § 1983 action. Under DeWalt, "where habeas is not applicable, the requirements of the habeas statute do not supersede the explicit right to proceed under § 1983." Id. at 617. Just as the plaintiff in DeWalt was not barred by Heck, plaintiff's claims are likewise not barred.

Defendants' alternative claim that plaintiff has not properly tied individuals to the due process violations has some merit. To state a due process claim, plaintiff must allege two elements: (1) that a recognized liberty or property interest has been interfered with by the defendants; and (2) that the procedures attendant to that deprivation were not constitutionally sufficient. Kentucky Dept. of Corrections v. Thompson, 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989). Plaintiff's complaint alleges that "one or more of the defendants" violated plaintiff's due process rights in connection with the Adjustment Committee meeting. As a result of the disciplinary hearing, plaintiff received six months of segregation, six months good time revocation, 6 months of commissary restriction, six months of C-grade, and six months of contact visit restriction. The Seventh Circuit has interpreted the Supreme Court's decisions in

Sandin v. Conner, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), and Wilkinson v. Austin, 545 U.S. 209, 224, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005), as "establish[ing] that disciplinary segregation can trigger due process protections depending on the duration and conditions of segregation." Marion v. Columbia Correction Inst., 559 F.3d 693, 697 (7th Cir. 2009). Contrary to defendants' argument, plaintiff has therefore sufficiently pled a recognized liberty interest, and the court will not dismiss Count IX at the 12(b)(6) stage for this reason.

Although Count IX is aimed at "one or more defendants," the conduct of the Wexford defendants does not appear to be implicated in Count IX, because plaintiff does not state which actions any of the Wexford defendants took that would constitute a deprivation of due process rights. The initial factual recitation alleges that plaintiff requested that the Adjustment Committee call Ghosh or another doctor to testify at his hearing, but plaintiff has not alleged that any Wexford defendant knew of the disciplinary proceedings and denied plaintiff any procedural rights. As such, to the extent Count IX is directed against any Wexford defendant, the motion to dismiss Count IX is granted as to those defendants.

Plaintiff's complaint alleges that both Jackson and Kissell refused to aid him in securing the evidence he sought for his defense. These actions are too vague to state a due process claim because they are as consistent with lawful conduct as with wrongdoing. See Brooks v. Ross, 578 F.3d 574, 581 (7th Cir. 2009). Plaintiff has not alleged that Jackson and Kissell were under any obligation to aid him in securing his medical records, or that they did not comply with their duties as correctional officers in taking the actions that they did. Further, as defendants note, plaintiff must allege personal involvement for individual liability under § 1983. See Rascon v. Hardiman, 803 F.2d 269, 273 (7th Cir. 1986) ("An individual cannot be held liable in a § 1983

action unless he caused or participated in an alleged constitutional deprivation."). Kissell and Jackson are not alleged to have been involved in the Adjustment Committee proceedings. The court therefore dismisses this count against Kissell and Jackson. Plaintiff's allegations against Hardy primarily involve the denial of grievances. Plaintiff does not allege that Hardy approved the Adjustment Committee's refusal to allow plaintiff to present witnesses or medical records, but does allege that Hardy ratified the final summary report from the Adjustment Committee proceedings and refused to expunge the disciplinary ticket from plaintiff's record, despite the grievance officer's recommendation that he do so. Although threadbare, these allegations support an inference that Hardy had knowledge of the alleged violation and ratified it. Such allegations are sufficient to state a claim against Hardy for violation of a due process right.

Defendants Frederick and Franklin are alleged to have refused plaintiff's request to present evidence at the Adjustment Committee hearing, interfering with plaintiff's liberty interests. These allegations are sufficient to state a claim against the two defendants.

For these reasons, the court grants defendants' motion to dismiss Count IX against the Wexford defendants, Kissell, and Jackson, and denies defendants' motion to dismiss Count IX against Hardy, Franklin, and Frederick.

**E. Counts X and XI: ADA and Rehabilitation Act**

Plaintiff has alleged that the IDOC defendants violated the ADA because his kidney stones prevented him from providing the urine sample sought by prison officials, and he was denied additional time to provide the sample. Plaintiff agrees that he may not bring ADA or Rehabilitation Act claims against the individual IDOC defendants and does not oppose dismissal of this count against those individuals. Plaintiff, however, maintains that he has adequately pled

these claims against IDOC itself.  The IDOC defendants argue that plaintiff has not adequately pled these counts against IDOC because he has failed to allege any facts indicating the nature of the reasonable accommodation sought or that he was denied access to a program or activity as a result.

Plaintiff's complaint, however, does address both of the insufficiencies identified by the IDOC defendants.  When Kissell requested a urine sample from plaintiff for drug testing, plaintiff requested additional time to provide the sample because of his disability.  This allegation is a sufficient statement of the accommodation sought based on plaintiff's alleged medical condition. Plaintiff also alleges that the disciplinary action that resulted from failure to provide the sample was six months of segregation, six months good time revocation, 6 months of commissary restriction, six months of C-grade, and six months of contact visit restriction.  These alleged disciplinary actions are sufficient allegations of the denial of access to a program or activity.  Defendants' motion to dismiss Counts X and XI are therefore denied.

**F.      Counts  XII and XIII: Negligent or Willful and Wanton Conduct; Intentional Inflition of Emotional Distress**

Count XII of the complaint alleges that defendants breached the duty of care owed to plaintiff by intentionally ignoring an obvious risk of serious harm.  Alternatively, plaintiff claims that defendants were willful and wanton in that they demonstrated an utter indifference to the safety of others.  Defendants argue that plaintiff has failed to identify specific actions by defendants that breached a duty of care or caused emotional distress.  Defendants further state that plaintiff has provided "threadbare recitals" of facts that are insufficient under the pleading standards of Twombly and Iqbal.  The Wexford defendants also assert that Count XII should be

dismissed because plaintiff has not asserted a state law claim of malpractice against them, and Count XIII should be dismissed because the conduct in this case does not rise to the standard of intentional infliction of emotional distress. The IDOC defendants also argue that these state law claims against state officials are barred by the doctrine of sovereign immunity.

## 1. Sovereign Immunity: IDOC defendants

The IDOC defendants claim that Counts XII and XIII against Hardy, Kissell, Jackson, Franklin, and Frederick should be dismissed because they are immune from these claims under the doctrine of sovereign immunity. Plaintiff argues that the claims against the individuals employed by IDOC are not barred by the Eleventh Amendment because the individuals are not being sued in their official capacity, but rather in an individual capacity.

In Illinois, state sovereign immunity rules apply to state law causes of action brought in federal court against state officials. See Omosegbon v. Wells, 335 F.3d 668, 673 (7th Cir. 2003). A claim against an individual will nonetheless be considered a claim against the state of Illinois, even when the individual is sued in his or her individual capacity, if "judgment for the plaintiff could operate to control the actions of the State or subject it to liability." Loman v. Freeman, 229 Ill.2d 104, 321 Ill.Dec. 724, 890 N.E.2d 446, 453 (Ill. 2008). An action against an individual is considered a claim against the state for sovereign immunity purposes when:

> "'there are (1) no allegations that an agent or employee of the State acted beyond the scope of his authority through wrongful acts; (2) the duty alleged to have been breached was not owed to the public generally independent of the fact of State employment; and (3) where the complained-of actions involve matters ordinarily within that employee's normal and official functions of the State.' "

Healy v. Vaupel, 133 Ill.2d 295, 309, 140 Ill.Dec. 368, 549 N.E.2d 1240 (1990), quoting Robb v. Sutton, 147 Ill.App.3d 710, 716, 101 Ill.Dec. 85, 498 N.E.2d 267 (1986).

Plaintiff argues that Counts XII and XIII are not against the state, but rather against the officers individually because officers have a general duty to the public not to violate statutory and constitutional rights, and that this general duty is the "source" duty that exempts defendants from sovereign immunity under the second prong of the test. The court construes this as an argument that the "officer suit" exception to the doctrine of sovereign immunity applies. The "officer suit" exception provides that "when an officer of the State commits an unconstitutional act or violates a statute, the suit is not against the State, because the State is presumed not to violate its own constitution or enactments." Turpin v. Koropchak, 567 F.3d 880, 884 (7th Cir. 2009); see also Nichol v. Stass, 192 Ill.2d 233, 248 Ill.Dec. 931, 735 N.E.2d 582, 586 (Ill. 2000) ("Sovereign immunity affords no protection, however, when it is alleged that the State's agent acted in violation of statutory or constitutional law or in excess of his authority"). "The mere fact that Plaintiff has alleged violations of his constitutional rights is not sufficient to avoid dismissal on sovereign immunity grounds." Cruz v. Cross, 08-CV-4873, 2010 WL 3655992 at *5 (N.D. Ill. Sept. 10, 2010). The court must determine whether the exception applies by analyzing whether the state law claims at issue are dependent on the alleged constitutional violation. Where the claims are not dependant on the alleged constitutional violation but rather dependant on a separate theory, the officer suit exception does not apply and the claims are barred by the sovereign immunity doctrine.

In the instant case, the state law claims of negligence or willful and wanton misconduct and IIED against the correctional officers are dependent on plaintiff's alleged constitutional claim: the § 1983 due process claim. For plaintiff to prevail on these state law claims, he must

demonstrate that the officers deprived him of his right to due process.  The state law claims are therefore not barred by sovereign immunity.

Plaintiff has also alleged deliberate indifference, retaliation, and due process violations against Hardy.  Plaintiff has not, however, specified which of the alleged actions taken by Hardy support his state law claims. It is unclear whether plaintiff's state law claims are dependant on his deliberate indifference claim, his retaliation claim, or his due process claim.  Because the court dismisses the state law counts against Hardy on other grounds (see below), the court declines to determine whether the counts are barred under the doctrine of sovereign immunity.

### 2.    Willful and Wanton Misconduct- All Defendants

Defendants are correct that the assertion that "one of more defendants" committed the tort is cursory and threadbare, but the court considers the complaint as a whole. <u>Atkins v. City of Chicago</u>, 631 F.3d 823, 832 (7th Cir. 2011). By parsing the language of the initial factual recitation and matching the counts to each individual, the court may determine whether the counts may be sustained against each defendant.

In Illinois, there is no separate and independent tort of wilful and wanton misconduct. <u>Krywin v. Chicago Transit Authority</u>, 238 Ill. 2d 215, 345 Ill. Dec. 1, 938 N.E.2d 440 (2010). Instead, it is a "hybrid between acts considered negligent and those found to be intentionally tortious." <u>Krivitskie v. Cramlett</u>, 301 Ill.App.3d 705, 235 Ill.Dec. 384, 704 N.E.2d 957, 959 (Ill.App.Ct.1998). To properly plead willful and wanton misconduct, plaintiffs must essentially plead the elements of a negligence count, as well as an allegation of either intentional or reckless willful and wanton conduct. <u>Kirwan v. Lincolnshire-Riverwoods Fire Protections Dist</u>., 349 Ill.App.3d 150, 285 Ill.Dec. 380, 811 N.E.2d 1259, 1263 (Ill.2004).  Intentional willful and

wanton conduct occurs when one undertakes an action with actual or deliberate intent to harm, while reckless willful and wanton conduct requires "an utter indifference to or conscious disregard for the welfare of the plaintiff." Id. The "utter indifference" or "conscious disregard" may be inferred from the outrageous nature of the individual's conduct. See, e.g., Doe v. Calumet City, 161 Ill.2d 374, 391, 204 Ill.Dec. 274, 641 N.E.2d 498 (1994); see also American National Bank, 192 Ill.2d at 285, 248 Ill.Dec. 900, 735 N.E.2d 551 (inferring reckless disregard where there was "a failure, after knowledge of impending danger, to exercise ordinary care to prevent it" or "a failure to discover [a] danger through recklessness or carelessness when it could have been discovered by the exercise of ordinary care.") (internal citations omitted).

Count XII contains the cursory statement that "one or more defendants" were willful and wanton in their conduct by "ignoring an obvious risk of serious harm, or alternatively, demonstrating "utter indifference to the safety of others." The count does not indicate which actions taken by which defendants constituted this conduct. However, in Count XII, plaintiff seeks to incorporate his preliminary factual recitation, which accounts for 13 pages of the complaint (and a good portion of this opinion), and the individualized recitation of actions by the Wexford defendants in earlier counts. These paragraphs contain sufficient information to put the Wexford defendants on notice of plaintiff's claims.[2] Counts II through VI contain individualized summaries of the actions of each Wexford defendant and allege facts sufficient to state a claim for willful and wanton misconduct, because they allege the breach of a duty in the form of a failure to treat plaintiff's medical conditions, injury proximately caused by the breach, and either

_____

[2]Although the Wexford defendants are correct that plaintiff failed to note explicitly that the underlying tort is medical malpractice, plaintiff has pled sufficient facts to support theories of malpractice, as well as wilful and wanton misconduct by the Wexford defendants.

a deliberate intent to harm, utter indifference, or conscious disregard of danger. The Wexford defendants' own brief explains the various factual allegations against each doctor. There can be no doubt that the actions detailed in the complaint are the basis of plaintiff's claims against each Wexford defendant. The treatments the various doctors provided (or failed to provide) is explained in detail and is sufficient to state a claim against the Wexford defendants for willful and wanton misconduct. The court therefore denies the motion to dismiss Count XII against the Wexford defendants.

Plaintiff has not provided the same degree of detail for the IDOC defendants. In the factual recitation, in support of a claim of willful and wanton misconduct against Kissell, plaintiff alleges that Kissell twice denied plaintiff's requests for additional time to provide a urine sample and to consult plaintiff's medical records, and wrote the disciplinary report that resulted in his punishments, despite plaintiff's explanations and entreaties. Plaintiff alleges that Kissell made comments demonstrating his indifference to plaintiff's medical needs. These allegations do not state that Kissell ignored an obvious risk of serious harm or an indifference to plaintiff's safety. The allegations in Count XII do not state a claim for willful and wanton conduct against Kissell.

Plaintiff's allegations against Jackson are simply that Jackson served him with the disciplinary report and refused to aid him in gathering evidence for his hearing. These allegations are also insufficient to support a claim of wilful and wanton misconduct because the facts pled do not allege a deliberate intent to harm, utter indifference, or conscious disregard of danger.

Regarding Franklin and Frederick, plaintiff alleges that they constituted the Adjustment Committee that adjudicated his disciplinary report, denied his requests to offer medical records or witnesses in his defense, and issued a final summary report with materially false statements, including a false statement that plaintiff's medical records did not contain information about his urinary condition. Plaintiff also alleges that Franklin told plaintiff that any evidence that plaintiff had contrary to the findings of the report did not matter because he would not throw out a disciplinary ticket that had been issued by Internal Affairs. Because these allegations are sufficient to support an inference of a deliberate intent to harm, utter indifference, or conscious disregard of danger, the complaint states a claim for willful and wanton misconduct against Franklin and Frederick.

Plaintiff alleges that Hardy unreasonably affirmed the grievances plaintiff filed and refused to expunge the summary report of the Adjustment Committee, despite the grievance officer's recommendation he do so. Plaintiff has also alleged counts of deliberate indifference and retaliation against Hardy. In asserting his claim of negligent or willful and wanton misconduct, plaintiff has not indicated which of Hardy's alleged actions support this claim. It unclear whether plaintiff alleges these counts in connection with the alleged denial of medical services or in connection with the disciplinary proceedings, or all of the above. Because the complaint fails to provide Hardy with notice of the allegations against him on Count XII, the court dismisses this count.

For these reasons, the court grants defendants' motion to dismiss Count XII against Kissell, Hardy, and Jackson, and denies defendants' motion to dismiss Count XII against the Wexford defendants, Franklin, and Frederick.

### 3.       Intentional Infliction of Emotional Distress- All Defendants

Under Illinois law, a plaintiff alleging an IIED claim must show that: (1) the defendant's conduct was extreme and outrageous; (2) the defendant intended to inflict severe emotional distress or knew that there was at least a high probability that his conduct would inflict severe emotional distress; and (3) the defendant's conduct did cause severe emotional distress. Van Stan v. Fancy Colours & Co., 125 F.3d 563, 567 (7th Cir. 1997) (citing Harriston v. Chi. Tribune Co., 992 F.2d 697, 702 (7th Cir. 1993)).  Conduct is extreme and outrageous only if "the conduct has been so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency . . . ." Public Finance Corp. v. Davis, 66 Ill.2d 85, 4 Ill.Dec. 652, 360 N.E.2d 765, 767 (1976); Cook v. Winfrey, 141 F.3d 322, 331 (7th Cir.1998). To qualify as severe emotional distress, "the distress inflicted [must be] so severe that no reasonable man could be expected to endure it." McGrath v. Fahey, 126 Ill.2d 78, 127 Ill.Dec. 724, 533 N.E.2d 806, 809 (1988).

Plaintiff's complaint alleges that defendants engaged in extreme and outrageous conduct by denying plaintiff medical attention, that they did so intentionally or knowing that it would result in emotional distress, and that plaintiff has suffered injuries, including severe emotional distress and great conscious pain and suffering.   Because the allegations in Count XIII are threadbare, the court consults the litany of facts in the initial factual recitation.

The conduct detailed in the initial factual recitation and in the individual counts against the Wexford defendants alleges conduct sufficient to state a claim of IIED.  Plaintiff alleges in Count XIII that the Wexford defendants' conduct was extreme and outrageous because they denied plaintiff medical attention, causing plaintiff severe pain. Plaintiff further supports this claim with individualized allegations against each doctor regarding misconduct, including

repeated denials to provide prescribed medications, failure to refer plaintiff to a specialist because of cost concerns, unnecessary delay in emergency treatment, and disregard of plaintiff's alleged acute pain. Plaintiff alleges that the Wexford defendants knew there was a high probability that he would suffer emotional distress. The court therefore denies the Wexford defendants' motion to dismiss Count XIII.

Although Count XIII specifically states that the denial of medical care was extreme and outrageous, those actions were allegedly taken by the Wexford defendants. Count XIII does not identify which actions taken by the IDOC defendants were extreme and outrageous. The allegations in the initial factual recitation, as described above, are the only allegations on which plaintiff bases his IIED claim. Plaintiff has not pled sufficient facts to state a claim against Kissell for IIED, because plaintiff has not described any extreme conduct calculated to cause emotional distress. Nor has plaintiff pled sufficient facts to state a claim against Jackson for IIED, because the only facts pled against Jackson are the service of the disciplinary report and refusal to aid in evidence gathering. The facts pled against Franklin and Frederick likewise do not state a claim for IIED, because there are no facts alleged to indicate that those defendants intended emotional distress. Franklin and Frederick are alleged to have denied plaintiff's requests to present a defense to the disciplinary report and to have made materially false statements in the summary report of the hearing. These allegations are not sufficient to state a claim for IIED. The allegations against Hardy are that he denied emergency grievances and affirmed the denial of other grievances. Plaintiff has not alleged that Hardy intended to cause emotional distress, nor that he knew the denial of grievances would result in emotional distress.

The court therefore dismisses Count XIII against the IDOC defendants, and denies the Wexford defendants' motion to dismiss the same count.

## G.     Count XIV: Respondeat Superior and IDOC

Plaintiff alleges in Count XIV that the state of Illinois is liable for the actions of defendants, as defendants acted within the scope of their employment.  Defendants argue that the Eleventh Amendment bars this claim, because Illinois has not consented to the suit.  Defendants further claim that the state law claims against IDOC must be dismissed under the same doctrine.

The Supreme Court has held that under the Eleventh Amendment an unconsenting state cannot be sued in federal court. Pennhurst v. Haldeman, 465 U.S. 89, 100-1-1 (1984).  Plaintiff does not contest defendant's motion to dismiss Count XIV in his response and the court therefore dismisses Count XIV against the state of Illinois.

Defendants further argue that IDOC is a state agency and as such is also entitled to immunity under the Eleventh Amendment. See Alabama v. Pugh, 438 U.S. 781, 782, 98 S.Ct. 3057, 3057, 57 L.Ed.2d 1114 (1978) ("There can be no doubt ... that suit against the State and its Board of Corrections is barred by the Eleventh Amendment, unless Alabama has consented to filing of such a suit."); Riordan v. Kempiners, 831 F.2d 690, 695 (7th Cir. 1987). It is well-settled that the IDOC, as a state agency, cannot be sued under § 1983. Johnson v. Doe, 234 F.3d 1273, 2000 WL 1529788, at *2 (7th Cir. 2000), citing Vermont Agency of Natural Resources v. United States ex rel. Stevens, 529 U.S. 765, 120 S.Ct. 1858, 1866, 146 L.Ed.2d 836 (2000); Johnson v. Supreme Court of Illinois, 165 F.3d 1140, 1141 (7th Cir.1999). Because neither Illinois nor IDOC has consented to suits for damages, see Duckworth v. Franzen, 780

F.2d 645, 649 (7th Cir.1985), cert. denied, 475 U.S. 321, 107 S.Ct. 71, 93 L.Ed.2d 28 (1986),

IDOC is dismissed from the suit.

## CONCLUSION

For the reasons described above, the court denies defendants' motion to dismiss Counts I-VI, Count IX against Hardy, Franklin, and Frederick; Counts X, XI, XII against the Wexford defendants, Hardy, Franklin, and Frederick; and Count XIII against Wexford defendants. The court grants defendants' motion to dismiss Counts VIII, IX against the Wexford defendants, Kissell and Jackson; Count XII against Kissell and Jackson; Count XIII against the IDOC defendants; and Count XIV. Plaintiff is directed to file a second amended complaint on or before September 16, 2013. Defendants shall answer the second amended complaint on or before October 14, 2013. The parties are directed to file a joint status report with the court on or before October 18, 2013, and to appear for a status report on October 30, 2013, at 9:00 a.m.


**ENTER:**     **August 19, 2013**

**Robert W. Gettleman**
**United States District Judge**