**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RANDY R. LIEBICH, | ) | |
| | ) | |
| Plaintiff, | ) | No. 11 C 5624 |
| | ) | |
| v. | ) | Honorable Robert W. Gettleman |
| | ) | Judge Presiding |
| MARCUS HARDY, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**ANSWER AND AFFIRMATIVE DEFENSES TO
PLAINTIFF'S THIRD AMENDED COMPLAINT**

NOW COME the Defendants, Johnnie Franklin, Charles Frederick, Marcus Hardy,

Nicole Jackson and Albert Kissell (collectively, the "IDOC Defendants") by and through their

attorney LISA MADIGAN, Attorney General of the State of Illinois, and for their Answer and

Affirmative Defenses to Plaintiff's Third Amended Complaint state as follows:

**The Parties**

1.      At all times relevant to the events at issue in this case, Plaintiff Randy Liebich is
and was incarcerated by the State of Illinois and held by the Illinois Department of Corrections
("IDOC") at Stateville Correctional Center ("Stateville"). Plaintiff has never before been a party
to any prior civil actions.

**ANSWER:      The IDOC Defendants admit the facts and allegations of Paragraph 1.**

2.      At all times relevant to the events at issue in this case, Defendant Hardy was
employed by the IDOC in the capacity of Warden of Stateville Correctional Center. As such,
Defendant Hardy was acting under color of law.

**ANSWER:      The IDOC Defendants admit the facts and allegations of Paragraph 2.**

3.      At all times relevant to the events at issue in this case, Defendant Hardy
promulgated rules, regulations, policies, and procedures as Warden of Stateville Correctional
Center for the provision of certain medical care, including medical screening of inmates at
Stateville and for investigating and responding to inmate complaints and grievances relating to
medical care. Defendant Hardy's policies were implemented by and through IDOC employees

including certain individual Defendant medical care providers, who were responsible for the medical care of inmates at Stateville, including Plaintiff.

**ANSWER: The IDOC Defendants admit that all times relevant to the events at issue in this case, Defendant Hardy promulgated rules, regulations, policies, and procedures as Warden of Stateville Correctional Center, but deny that Warden Hardy was responsible for drafting such rules, regulations and policies relating to the provision of certain medical care, including medical screening of inmates at Stateville and for investigating and responding to inmate complaints and grievances relating to medical care. The IDOC Defendants deny the remaining facts and allegations of Paragraph 3.**

4.     At all times relevant to the events at issue in this case, Defendant Hardy had responsibility, inter alia, for ensuring that the practices of Stateville Correctional Center complied with federal and state requirements for the treatment of inmates. Throughout his tenure as warden, he had personal knowledge that the conditions of confinement challenged in this case were being imposed on inmates at Stateville, including Plaintiff, and he implemented, enforced, and/or condoned these conditions. Defendant Hardy is being sued in his official and individual capacities for the challenged conditions of confinement.

**ANSWER: The IDOC Defendants deny the facts and allegations contained in Paragraph 4.**

5.     At all times relevant to the events at issue in this case, Defendants Kissell, Jackson, Franklin, and Frederick were employed by the IDOC and worked at Stateville. As such, Defendants Kissell, Jackson, Franklin, and Frederick were acting under color of law.

**ANSWER: The IDOC Defendants admit the facts and allegations contained in Paragraph 5.**

6.     Illinois Department of Corrections ("IDOC") is an agency of the State of Illinois that operates the State's prison system.

**ANSWER: The IDOC Defendants admit the facts and allegations contained in Paragraph 6.**

7.     At all times relevant to the events at issue in this case, Defendant Wexford Health Sources, Inc. ("Wexford") was engaged in the business of providing medical care and treatment to inmates, including Plaintiff, at Stateville Correctional Center, and had contracted with the IDOC to perform such services. As such, Wexford was acting under color of law.

**ANSWER: The IDOC Defendants admit that at all times relevant to the events at issue in this case, Defendant Wexford Health Sources, Inc. ("Wexford") was engaged in the business of providing medical care and treatment to inmates, including Plaintiff, at**

**Stateville Correctional Center, and had contracted with the IDOC to perform such services. The IDOC Defendants deny that as such, Wexford was acting under color of law.**

8. At all times relevant to the events at issue in this case, in its capacity as a contractor to the IDOC, Wexford promulgated rules, regulations, policies, and procedures for the medical screening, medical treatment, and overall medical care of inmates at Stateville Correctional Center, including Plaintiff. Wexford policies were implemented by and through its employees and the employees of the IDOC, including the individual Defendant medical care providers and the individual Defendant correctional officers, who were responsible for the medical care of inmates at Stateville.

**ANSWER: The IDOC Defendants admit that at all times relevant to the events at issue in this case, in its capacity as a contractor to the IDOC, Wexford promulgated rules, regulations, policies, and procedures for the medical screening, medical treatment, and overall medical care of inmates at Stateville Correctional Center, including Plaintiff. Answering further, the IDOC Defendants admit Wexford policies were implemented by and through its employees, including the individual Defendant medical care providers and who were responsible for the medical care of inmates at Stateville. The IDOC Defendants deny the remaining facts and allegations of Paragraph 8.**

9. At all times relevant to the events at issue in this case, Defendant Dr. Ghosh was one of the treating physicians at Stateville and its Medical Director. In his capacity as Medical Director, Dr. Ghosh promulgated rules, regulations, policies, and procedures for the medical screening, medical treatment, and overall medical care of inmates at Stateville Correctional Center, including Plaintiff. Dr. Ghosh is being sued in his official and individual capacities.

**ANSWER: The IDOC Defendants admit the facts and allegations of Paragraph 9.**

10. At all times relevant to the events at issue in this case, Defendants Dr. Ghosh, Dr. Zhang, Dr. Schaefer, and Dr. Obaisi were employed by Wexford or by the IDOC to provide medical services to inmates, including Plaintiff, at Stateville. As such, Defendants Dr. Ghosh, Dr. Zhang, Dr. Schaefer, and Dr. Obaisi were acting under color of law and within the scope of their employment with Wexford or the IDOC.

**ANSWER: The IDOC Defendants admit that at all times relevant to the events at issue in this case, Defendants Dr. Ghosh, Dr. Zhang, Dr. Schaefer, and Dr. Obaisi were employed by Wexford to provide medical services to inmates, including Plaintiff, at Stateville, and that as such, Defendants Dr. Ghosh, Dr. Zhang, Dr. Schaefer, and Dr. Obaisi were acting and within the scope of their employment with Wexford. The IDOC Defendants deny the remaining facts and allegations of Paragraph 10.**

**Jurisdiction and Venue**

11.     This action is brought pursuant to 42 U.S.C. Section 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution. This Court has jurisdiction of the action pursuant to 28 U.S.C. §§ 1331 and 1367.  Venue is proper under 28 U.S.C. § 1391(b).  On information and belief, at least one Defendant resides in this judicial district, and the events giving rise to the claims asserted herein all occurred within this district.

**ANSWER:     The IDOC Defendants deny the deprivation of any right but admit the facts and allegations of Paragraph 11.**

### Factual Allegations

12.     Plaintiff began serving his sentence at Stateville in 2005.  By September of 2009 Plaintiff began experiencing chronic and severe pain in his abdomen and kidneys.

**ANSWER:     The IDOC Defendants admit that Plaintiff began serving his sentence at Stateville in 2005, but deny that by September of 2009 Plaintiff began experiencing chronic and severe pain in his abdomen and kidneys for lack of knowledge.**

13.     By November 4, 2009 Plaintiff began requesting medical treatment from Stateville medical staff for his pains.

**ANSWER:     The IDOC Defendants deny the facts and allegations of Paragraph 13 for lack of knowledge.**

14.     From November 2009 until present, Plaintiff has continuously requested that the Stateville medical staff, including Dr. Ghosh, Dr. Zhang, Dr. Schaefer, and Dr. Obaisi as employees and/or agents of Wexford and/or IDOC, provide treatment for his medical condition. These requests have been made via policies established by Warden Hardy and/or by Wexford as well as through formal grievances.

**ANSWER:     The IDOC Defendants deny the facts and allegations of Paragraph 14 for lack of knowledge.**

15.     From November 2009 until present, Stateville medical staff has provided only cursory treatment; specifically the Defendants consistently refused Plaintiff's requests for medical treatment, referrals to a urology specialist, and administration of necessary prescription medications.

**ANSWER:     The IDOC Defendants deny the facts and allegations of Paragraph 15 for lack of knowledge.**

16.     From November 2009, until present, Plaintiff has made verbal and written requests upon Defendants and has filed formal grievances regarding Plaintiff's medical condition, his ongoing pain, and the failure to provide and administer medication prescribed by licensed doctors to treat Plaintiff's conditions.

**ANSWER:     The IDOC Defendants admit that Plaintiff has filed formal grievances but deny the remaining facts and allegations of Paragraph 16 for lack of knowledge.**

17.     Upon information and belief, all grievances made and/or filed were ignored or wrongfully denied. Accordingly, it is established that Plaintiff has taken proper action to exhaust his administrative remedies.

**ANSWER:     The IDOC Defendants deny the facts and allegations of Paragraph 17.**

18.     Defendants have, and continue to, deliberately deny Plaintiff adequate treatment in that they have either failed to conduct further diagnostic testing, timely refer him to a specialist, timely schedule follow-up appointments with appropriate specialists, provide and administer medication to relieve pain, and refused to provide and administer medications prescribed by urology specialists to treat Plaintiff's condition.

**ANSWER:     The IDOC Defendants deny the facts and allegations of Paragraph 18 for lack of knowledge.**

19.     On November 4, 2009, Plaintiff was seen by Dr. Zhang for his abdominal and kidney pain. Dr. Zhang ordered lab tests and gave Plaintiff a pill, Donnatal, which provided no relief for Plaintiff's severe pain.

**ANSWER:     The IDOC Defendants deny the facts and allegations of Paragraph 19 for lack of knowledge.**

20.     On November 10, 2009, Plaintiff was seen by Dr. Zhang for abdominal and kidney pain. Dr. Zhang merely pressed on Plaintiff's abdomen and lower back with her fingers and indicated that she didn't feel anything abnormal, so it was not anything serious. No further medical care was provided at this time.

**ANSWER:     The IDOC Defendants deny the facts and allegations of Paragraph 20 for lack of knowledge.**

21.     On November 15, 2009 Plaintiff's lab tests results came back showing multiple

abnormal readings, including elevated blood-urea-nitrogen ("BUN") and creatinine levels, both of which are indications of kidney distress and/or other kidney complications.

**ANSWER:** **The IDOC Defendants deny the facts and allegations of Paragraph 21 for lack of knowledge.**

22.     On or about December 3, 2009, Plaintiff further requested that Dr. Zhang then refer him to a specialist and prescribe him medication to relieve his pain. Dr. Zhang refused these requests and instead ordered another lab test. This lab test's results also yielded multiple abnormal readings.

**ANSWER:** **The IDOC Defendants deny the facts and allegations of Paragraph 22 for lack of knowledge.**

23.     On December 3, 2009, Dr. Ghosh ordered a lab test which also was abnormal with high levels of creatinine and a low BUN-Creatinine ratio.

**ANSWER:** **The IDOC Defendants deny the facts and allegations of Paragraph 23 for lack of knowledge.**

24.     Between November 4, 2009 and April 1, 2010, Plaintiff submitted numerous medical requests to Dr. Zhang and Dr. Ghosh, requesting medical treatment for his painful condition. However, most requests were not answered.

**ANSWER:** **The IDOC Defendants deny the facts and allegations of Paragraph 24 for lack of knowledge.**

25.     Upon information and belief, on or about April 1, 2010 Plaintiff's counselor, Ricky Bishop, informed Plaintiff that he "spoke to someone" at the Health Care Unit who related that Plaintiff had already been seen for his complaining issues several times and there was not going to be any further appointments made regarding the same issues.

**ANSWER:** **The IDOC Defendants deny the facts and allegations of Paragraph 25 for lack of knowledge.**

26.     Plaintiff filed a grievance on April 2, 2010 regarding the comment made by Mr. Bishop and the failure to answer his medical requests. Plaintiff requested treatment for his pain. The request was denied by the Grievance Officer based upon the fact that medical furloughs had been scheduled previously. However, these furloughs were actually appointments to consult a cardiologist regarding matters not related to the abdominal and renal pain the Plaintiff was experiencing. The denial was wrongfully confirmed by Warden Hardy.

**ANSWER:** **The IDOC Defendants admit the grievance was filed, but deny the remaining facts and allegations of Paragraph 26.**

27.     On April 26, 2010 Plaintiff filed another grievance asking for medical treatment for his ongoing pain, explaining the previous furlough schedules and the need for new appointments to address his abdominal and renal pain. This grievance was wrongfully deemed "moot" by the grievance office in September 2010.

**ANSWER:** **The IDOC Defendants admit that the grievance was filed, but deny the remaining facts and allegations of Paragraph 27.**

28.     Thereafter, on May 22, 2010 Plaintiff was seen by Dr. Zhang at the Asthma Clinic (for an evaluation of his condition of asthma). After informing Dr. Zhang that he was continuing to experience abdominal and kidney pain, Dr. Zhang responded by prescribing Excedrin Migraine and indicating that the medication would alleviate the kidney and abdominal pain.

**ANSWER:** **The IDOC Defendants deny the facts and allegations of Paragraph 28 for lack of knowledge.**

29.     During the same consultation with Dr. Zhang on May 22, 2010, Plaintiff requested that Dr. Zhang refer him to a urology specialist. Dr. Zhang responded that it "costs too much money to see a specialist, and that the Stateville medical staff could not be sending inmates out for every little thing, or symptom." Dr. Zhang stated that for him to be referred to a urology specialist, Plaintiff's condition would need to be "life threatening."

**ANSWER:** **The IDOC Defendants deny the facts and allegations of Paragraph 29 for lack of knowledge.**

30.     By June 26, 2010 a kidney stone developed in Plaintiff's kidney that was so large it could not pass on its own via urination. It became lodged in plaintiff's urethra, completely obstructing urine flow. Plaintiff had not urinated in over 24-hours.

**ANSWER:** **The IDOC Defendants deny the facts and allegations of Paragraph 30 for lack of knowledge.**

31.     At approximately 9:30 a.m. on June 26, 2010, Plaintiff was sent to the Health Care Unit at which time Dr. Obaisi diagnosed Plaintiff's condition as an "impacted urinary calculus," (more commonly referred to as a "kidney stone") which was lodged inside the urethra.

**ANSWER:** **The IDOC Defendants deny the facts and allegations of Paragraph 31 for lack of knowledge.**

32.     Rather than sending Plaintiff to the local hospital for appropriate emergency treatment, Dr. Obaisi attempted to surgically remove the kidney stone himself without first providing Plaintiff any form of anesthesia, causing very severe pain and discomfort.

**ANSWER:     The IDOC Defendants deny the facts and allegations of Paragraph 32 for lack of knowledge.**

33.     Plaintiff had to repeatedly demand to be provided with anesthesia at which time Dr. Obaisi decided to make several lidocaine injections into the tip of Plaintiff's penis and inside the urethra.

**ANSWER:     The IDOC Defendants deny the facts and allegations of Paragraph 33 for lack of knowledge.**

34.     Dr. Obaisi inflicted further physical damage on June 26, 2010 by stretching open Plaintiff's urethra with a hemostat, causing a small tear at the opening of the urethra. Dr. Obaisi also punctured Plaintiff with a pair of tweezers. All injuries caused bleeding.

**ANSWER:     The IDOC Defendants deny the facts and allegations of Paragraph 34 for lack of knowledge.**

35.     After unsuccessfully attempting to remove the kidney stone, and causing severe pain and further damage to Plaintiff's penis and urethra, over the objections of attending "Nurse Tiffany," Dr. Obaisi, with the request of "Nurse Tiffany," decided that Plaintiff required emergency treatment at St. Joseph Hospital, in Joliet, IL. However, Dr. Obaisi did not arrange for Plaintiff to be transported for emergency medical care for several hours. Plaintiff was placed in a "holding cage" from approximately 11:00 a.m. to 3:23 p.m. during which time Plaintiff further suffered extreme pain and discomfort in his bladder and kidneys due to the tremendous pressure from maintaining a full bladder for over 30 hours, in addition to the injuries inflicted upon Plaintiff resulting from Dr. Obaisi's surgical attempt to remove the kidney stone.

**ANSWER:     The IDOC Defendants deny the facts and allegations of Paragraph 35 for lack of knowledge.**

36.     Dr. Obaisi delayed Plaintiff's emergency transport because of a policy at Stateville which requires all employees to obtain authorization from the Medical Director and/or Chief Administrative Officer before calling for emergency transport. This policy caused unnecessary delay in Plaintiff's emergency medical treatment and placed Plaintiff at further risk of kidney damage where his bladder needed to be immediately drained.

**ANSWER:     The IDOC Defendants deny the facts and allegations of Paragraph 36 for**

**lack of knowledge.**

37.     Upon information and belief, it took Dr. Obaisi approximately four hours to obtain authorization for Plaintiff's transport to St. Joseph Hospital.

**ANSWER:     The IDOC Defendants deny the facts and allegations of Paragraph 37 for lack of knowledge.**

38.     Once transported to Provena Saint Joseph Medical Center, a urology specialist, Dr. Gregory Andros, determined that Plaintiff would have to be administered general anesthesia and the kidney stone would have to be removed using a "laser procedure."

**ANSWER:     The IDOC Defendants deny the facts and allegations of Paragraph 38 for lack of knowledge.**

39.     Plaintiff was discharged from Provena Saint Joseph Medical Center on June 27, 2010 and returned to Stateville the same day.

**ANSWER:     The IDOC Defendants admit the facts and allegations of Paragraph 39.**

40.     On June 28, 2010, Plaintiff showed Dr. Ghosh the tear at the tip of the urethra and the injection site below it (caused by Dr. Obaisi's surgical attempts to remove the kidney stone on June 26, 2010). Plaintiff complained of severe pain due to these injuries, however Dr. Ghosh stated that the injuries would heal quickly and simply prescribed Motrin for the pain.

**ANSWER:     The IDOC Defendants deny the facts and allegations of Paragraph 40 for lack of knowledge.**

41.     On July 1, 2010, Plaintiff filed a grievance regarding the damage inflicted by Dr. Obaisi and because of the failure to receive Motrin as prescribed by Dr. Ghosh. The Grievance Officer's response indicated that Dr. Obaisi's conduct was "normal procedure," and further conceded that Motrin was prescribed, but did not address the issue of the Plaintiff having received any dosage of Motrin. Ultimately, with the confirmation of Warden Hardy, the Grievance Officer dismissed the grievance.

**ANSWER:     The IDOC Defendants admit the facts and allegations contained in Paragraph 41.**

42.     On July 2, 2010, Plaintiff was seen by Dr. Ghosh for pain in his kidneys and abdomen, irritation in his bladder and continued burning sensation when urinating.

**ANSWER:     The IDOC Defendants deny the facts and allegations of Paragraph 42 for lack of knowledge.**

43.     Plaintiff informed Dr. Ghosh that he was not receiving the Motrin he had previously prescribed. Dr. Ghosh declined to provide any medication for Plaintiff's pain during this visit.

**ANSWER:     The IDOC Defendants deny the facts and allegations of Paragraph 43 for lack of knowledge.**

44.     At the same appointment on July 2, 2010, Plaintiff also requested that Dr. Ghosh refer plaintiff for a follow-up treatment and/or consultation with a urology specialist because Plaintiff was still experiencing complications from the June 26, 2010 procedures by Dr. Obaisi and Provena Saint Joseph Medical Center. Dr. Ghosh refused and instead ordered a lab test.

**ANSWER:     The IDOC Defendants deny the facts and allegations of Paragraph 44 for lack of knowledge.**

45.     On July 6, 2010, the lab test results yielded abnormal results, including high levels of creatinine, albumin, and a low BUN/creatinine ratio.

**ANSWER:     The IDOC Defendants deny the facts and allegations of Paragraph 45 for lack of knowledge.**

46.     An attorney named Heather Kirkwood, who Plaintiff has remained in contact with after she had reviewed his criminal conviction, made several attempts, via telephone, to contact Stateville regarding Plaintiff's medical issues and not receiving his prescribed medications.

**ANSWER:     The IDOC Defendants deny the facts and allegations of Paragraph 46 for lack of knowledge.**

47.     Upon information and belief, after Heather Kirkwood's telephone calls, Plaintiff began receiving his medication after spending approximately ten days in pain and at risk of infection.

**ANSWER:     The IDOC Defendants deny the facts and allegations of Paragraph 47 for lack of knowledge.**

48.     Upon information and belief, on July 20, 2010, Dr. Ghosh ordered another lab test

and this test also yielded abnormal results, including high BUN and creatinine levels.

**ANSWER:** **The IDOC Defendants deny the facts and allegations of Paragraph 48 for lack of knowledge.**

49. On August 10, 2010 Plaintiff was seen by Dr. Shaefer at the Asthma Clinic; Plaintiff described his medical condition including chronic pain, trouble urinating and injuries caused by Dr. Obaisi. Dr. Schaefer examined Plaintiff where he sustained the injuries caused by Dr. Obaisi. Dr. Schaefer noted the injection site, but refused to provide Plaintiff any medical treatment for his complaints despite Plaintiff's insistence by responding, "We're not going to sit here and waste any more time talking about this, we've discussed it at length and this is not what this appointment was about."

**ANSWER:** **The IDOC Defendants deny the facts and allegations of Paragraph 49 for lack of knowledge.**

50. On August 13, 2010 Plaintiff filed a grievance against Dr. Ghosh, Dr. Zhang, and Dr. Schaefer for ignoring and not documenting his medical complaints. After not receiving any medical attention Plaintiff composed another grievance in the form of a letter on August 29, 2010.

**ANSWER:** **The IDOC Defendants admit that the grievance was filed but deny the remaining facts and allegations of Paragraph 50 for lack of knowledge.**

51. On September 6, 2010, Plaintiff sent an "emergency grievance" to Warden Hardy complaining of severe pain in his abdomen, kidney, testicles, and bladder, swelling in his abdomen and that he was unable to empty his bladder during urination. Plaintiff informed Warden Hardy that the urine retention was placing him at risk of kidney damage and the medical staff was denying him treatment for this condition. Plaintiff specifically requested medical care at an outside hospital to diagnose and treat his condition. Warden Hardy denied the grievance, deeming it a "non-emergency."

**ANSWER:** **The IDOC Defendants admit that on September 6, 2010, Plaintiff sent an "emergency grievance" to Warden Hardy complaining of severe pain in his abdomen, kidney, testicles, and bladder, swelling in his abdomen and that he was unable to empty his bladder during urination, and that Warden Hardy denied the grievance as a non-emergency. The IDOC Defendants deny the remaining facts and allegations of Paragraph 51.**

52. On September 17, 2010, Plaintiff was seen by Dr. Ghosh and reported pain in his side that radiated to his abdomen as well as trouble urinating and emptying his bladder during urination. He also informed Dr. Ghosh that the kidney stones had begun to re-develop. Dr.

Ghosh allegedly referred Plaintiff to the Urology Clinic at University of Illinois at Chicago (UIC) Hospital, located in Chicago, IL; and the appointment was allegedly approved by Wexford on September 22, 2010. However, the appointment was never followed through, that is Plaintiff was never transported to UIC Hospital for consultation.

**ANSWER:** **The IDOC Defendants deny the facts and allegations of Paragraph 52 for lack of knowledge.**

53. On September 22, 2010 Plaintiff sent another "emergency grievance" to Warden Hardy requesting immediate medical care from an outside hospital. Plaintiff informed Warden Hardy that he was in constant severe pain and could not urinate enough to empty his bladder. The Grievance Officer responded to the grievance approximately 7 months later and dismissed the grievance. Warden Hardy denied the grievance again, deeming it a "nonemergency."

**ANSWER:** **The IDOC Defendants admit that on September 22, 2010, Plaintiff submitted another emergency grievance to Warden Hardy which was denied because it was deemed a non-emergency. The IDOC Defendants deny the remaining facts and allegations of Paragraph 53.**

54. By September 25, 2010 Plaintiff had not urinated for 24 hours and was admitted to the Stateville infirmary for 3 days where a catheter had to be installed so Plaintiff's bladder could drain. The need for catheterization and inability to urinate was documented in Plaintiff's medical chart.

**ANSWER:** **The IDOC Defendants deny the facts and allegations of Paragraph 54 for lack of knowledge.**

55. On January 5, 2011, Plaintiff was ordered by Defendant Kissell to provide a urine specimen for purposes of drug testing. Defendant Kissell informed Plaintiff that he had two hours to provide the urine specimen. Plaintiff informed Defendant Kissell that he had a medical condition that affected his ability to urinate and that it may take him additional time to produce a urine sample per Defendant Kissell's orders. Defendant Kissell dismissed Plaintiff's concerns and informed Plaintiff that non-compliance would result is penalties, including solitary confinement. Plaintiff indicated to Defendant Kissell that his medical records contained information from physicians describing his inability to urinate normally.

**ANSWER:** **The IDOC Defendants admit the allegations of Paragraph 55.**

56. On January 5, 2011, after multiple attempts to urinate, Plaintiff was unable to produce the requested urine sample in the time period allotted. Defendant Kissell informed Plaintiff that he was sentencing Plaintiff to disciplinary action including six months C grade and six months of segregation. Plaintiff requested that he be allowed additional time to produce a specimen due to his medical condition but Defendant Kissell denied Plaintiff's request stating

that Plaintiff's story was "bullshit." Plaintiff requested that Defendant Kissell contact the health care unit to verify his condition but Defendant Kissell refused to do so. Defendant Kissell stated to Plaintiff that he was "going to seg" and that Plaintiff could "file a grievance."

**ANSWER:** **The IDOC Defendants admit that on January 5, 2011, Plaintiff failed to produce the requested urine sample in the time period allotted, and that as a result, Plaintiff was sentenced to disciplinary action including six months C grade and six months of segregation. The IDOC Defendants further admit that Plaintiff requested that he be allowed additional time to produce a specimen due to his medical condition but that said request was denied. The IDOC Defendants deny the remaining facts and allegations of Paragraph 56.**

57. Upon information and belief, Defendant Kissell had a duty to investigate Plaintiff's claim that a medical condition prevented him from urinating in the allotted time, yet he ignored that duty. In failing to investigate whether Plaintiff had a medical condition that prevented him from urinating regularly, as well as in wrongfully punishing Plaintiff with, among other discipline, six months of C-grade and six months of segregation, Defendant Kissell acted in conscious disregard for Plaintiff's welfare.

**ANSWER:** **The IDOC Defendants deny the facts and allegations of Paragraph 57.**

58. On January 6, 2011, Defendant Jackson served Plaintiff with a disciplinary report for his failure to timely provide a urine sample. Plaintiff informed Defendant Jackson about his medical condition and told her that his condition could be verified by Stateville medical staff and/or his medical records. Plaintiff requested that Defendant Jackson verify his condition and that she assist him in securing this evidence for his upcoming hearing before the Adjustment Committee since Plaintiff was housed in segregation and was unable to secure this evidence himself.

**ANSWER:** **The IDOC Defendants admit that on January 6, 2011 Plaintiff was served with a disciplinary report, and further admit that Plaintiff claimed that his discipline was inappropriate due to a medical condition. The IDOC Defendants deny the remaining facts and allegations of Paragraph 58.**

59. Defendant Jackson informed Plaintiff that she was only there to serve him with a disciplinary report and would not honor his requests.

**ANSWER:** **The IDOC Defendants deny the facts and allegations of Paragraph 59.**

60. On January 10, 2011, Plaintiff filed a grievance in response to the disciplinary report he received for not producing a urine sample. The grievance indicated that his difficulty urinating was documented in his medical records. Plaintiff requested: (1) he be removed from

segregation and be placed "back in Unit B;" (2) and that the disciplinary ticket be expunged and removed from his "record."

**ANSWER:**    **The IDOC Defendants admit the facts and allegations of Paragraph 60.**

61.    Plaintiff made several requests for copies of his medical records but all of these requests went unanswered.  Plaintiff also made several requests to the clerk of the law library for access to his legal boxes stored at the library so that he could retrieve copies of grievances and other documents that would substantiate his medical condition.  These requests were ignored for several months.  Additionally, Plaintiff submitted a written request to the Adjustment Committee that Dr. Ghosh and/or one of his medical technicians/assistants be called as witnesses at Plaintiff's upcoming hearing so that they could substantiate his medical condition but Defendants Franklin and Frederick refused to call these witnesses at the hearing.

**ANSWER:**    **The IDOC Defendants admit that Plaintiff requested that he be able to call certain witnesses at his adjustment hearing, but that those requests were denied.  The IDOC Defendants deny the remaining facts and allegations of Paragraph 61 for lack of knowledge.**

62.    On January 13, 2011, Plaintiff's scheduled hearing in front of the Adjustment Committee took place.  The Adjustment Committee was composed of Defendants Franklin and Frederick.  Plaintiff's request to dismiss the disciplinary report and expunge the charges were denied based, in part, upon on the notion that Plaintiff had not offered proof of a health condition affecting his ability to urinate.  Plaintiff asked Defendants Franklin and Frederick why he was not allowed to call witnesses at the hearing, nor offer his medical records as proof of his medical condition, and he was informed by Defendant Franklin that this evidence was not necessary because the disciplinary report spoke for itself.  This final decision was approved by Warden Hardy.

**ANSWER:**    **The IDOC Defendants admit the facts and allegations of Paragraph 62.**

63.    In failing to allow Plaintiff to call witnesses at the hearing, to offer his medical records, or to otherwise determine whether Plaintiff had a legitimate medical condition that prevented him from urinating regularly, Defendants Franklin and Frederick failed to intervene to prevent Defendant Kissell from charging Plaintiff with disciplinary action that resulted in, among other discipline, six months C-grade and six months of segregation.  Defendants Franklin and Frederick had a duty to allow Plaintiff to present such evidence.  Defendants Franklin and Frederick also had a reasonable opportunity in the form of the Adjustment Committee hearing to prevent Plaintiff from being disciplined as a result of the faulty disciplinary report.

**ANSWER:**    **The IDOC Defendants object to Paragraph 63 as it seeks a legal conclusion.  Answering subject to this objection, the IDOC Defendants deny the facts and allegations of Paragraph 63.**

64.     On January 19, 2011, Plaintiff received the final summary report issued by the Adjustment Committee.  This report indicated that Plaintiff had been found guilty of violating the drug testing procedure and that he was being sentenced to six months of segregation, six months good time revocation, 6 months of commissary restriction, six months of C-grade, and six months of contact visit restriction.  The guilty verdict was based on the materially false statements by Defendants Franklin and Frederick indicating that Plaintiff "could not produce proof of the medical condition he claimed he had," and that Plaintiff's "medical record has nothing about Liebich having a urinating problem."  Defendant Hardy approved the Adjustment Committee's final summary report on January 18, 2011.

**ANSWER:     The IDOC Defendants admit that on January 19, 2011, Plaintiff received the final summary report issued by the Adjustment Committee, and that this report indicated that Plaintiff had been found guilty of violating the drug testing procedure and that he was being sentenced to six months of segregation, six months good time revocation, 6 months of commissary restriction, six months of C-grade, and six months of contact visit restriction, and that Defendant Hardy approved the Adjustment Committee's final summary report on January 18, 2011.  The IDOC Defendants deny the remaining facts and allegations of Paragraph 64.**

65.     On January 26, 2011, Plaintiff filed another grievance appealing the Adjustment Committee's Final Report, with firm evidence found in Plaintiff's medical records composed by Plaintiff's attending physicians indicating Plaintiff's difficulty and even inability to urinate. After further review, the Grievance Officer's response to these grievances recommended that Plaintiff's disciplinary report be expunged. However, Warden Hardy, as the final policy-maker, did not concur with the Grievance Officer's recommendations and denied the grievance, thus enforcing the disciplinary action for Plaintiff's failure to produce a urine sample on January 5, 2011.

**ANSWER:     The IDOC Defendants deny that Warden Hardy was the final policy-maker, but admit the remaining facts and allegations of Paragraph 65.**

66.     On February 19, 2011 Heather Kirkwood wrote a letter to Warden Hardy in which she expressed her concern for Plaintiff's well being. In her letter, Ms. Kirkwood addressed Plaintiff's inability to urinate and the subsequent disciplinary report for lack of providing a urine sample on January 5, 2010. After further correspondence, and obtaining Plaintiff's medical records, Ms. Kirkwood sent specific evidence of Plaintiff's difficulty urinating found in the Physician's notes of Plaintiff's medical records to Warden Hardy. Shortly following Heather Kirkwood's correspondence with Warden Hardy, Plaintiff was sent to UIC Hospital.

**ANSWER:     The IDOC Defendants deny the facts and allegations of Paragraph 66 for lack of knowledge.**

67.     At no time did Defendant Hardy expunge Plaintiff's disciplinary ticket.  On June 3, 2011, the Administrative Review Board affirmed the denial of Plaintiff's grievance.

**ANSWER:    The IDOC Defendants admit the facts and allegations of Paragraph 67.**

68.      On or about March 2, 2011, a computerized axial tomography ("CAT") scan was performed which revealed that Plaintiff had developed another kidney stone in one of his kidneys.

**ANSWER:    The IDOC Defendants deny the facts and allegations of Paragraph 68 for lack of knowledge.**

69.     On May 9, 2011, a procedure was conducted at UIC Hospital to look inside Plaintiff's urethra and bladder. The urology specialist diagnosed Plaintiff with a swollen Prostate and prescribed medication to help Plaintiff urinate and to treat his Prostate condition.

**ANSWER:    The IDOC Defendants deny the facts and allegations of Paragraph 69 for lack of knowledge.**

70.     To date the Plaintiff has never received the medication prescribed by the urology specialist at UIC Hospital on May 9, 2011.

**ANSWER:    The IDOC Defendants deny the facts and allegations of Paragraph 70 for lack of knowledge.**

71.     Plaintiff has made numerous attempts to obtain this medication by informing the medical staff, writing three letters to the Medical Director and sending another "emergency grievance" to Warden Hardy. Warden Hardy denied the grievance, deeming it a "nonemergency."

**ANSWER:    The IDOC Defendants admit that the Plaintiff filed grievances, but deny the remaining facts and allegations of Paragraph 71 for lack of knowledge.**

72.     In March, 2011, Plaintiff asked Defendant Franklin directly why he had issued an Adjustment Committee report that contained the false statements referenced above.  Defendant Franklin responded that any evidence Plaintiff had to the contrary did not matter because Plaintiff's disciplinary ticket had been issued by Internal Affairs and that Defendant would not simply "throw out" an Internal Affairs ticket.

**ANSWER:    The IDOC Defendants deny the facts and allegations of Paragraph 72.**

73.     Upon information and belief, Defendant Warden Hardy received at least four grievances from Plaintiff regarding the medical care he received (or the lack thereof) at the hands of the Wexford Defendants.  Despite being made aware of the Wexford Defendants' ongoing deliberate indifference to Plaintiff's serious medical condition, Defendant Hardy did nothing to ensure that Plaintiff received the medical care that he required.  Nor did Defendant Hardy do anything to prevent the Wexford Defendants from inflicting further injury on Plaintiff by, among other things, performing medical procedures for which they were wholly unqualified. Defendant Hardy had the opportunity to intervene and prevent further harm to Plaintiff but failed to do so.

**ANSWER:**     The IDOC Defendants deny the facts and allegations of Paragraph 73.

74.     Upon information and belief, Defendant Warden Hardy received at least three grievances regarding the disciplinary report issued against Plaintiff, as well as the Adjustment Committee hearing in which Plaintiff was barred from presenting evidence on his behalf. Despite this knowledge, Defendant Hardy did nothing to prevent the disciplinary action taken against Plaintiff.  Indeed, despite the recommendation from a Grievance Officer that Plaintiff's disciplinary report should be expunged because his medical records clearly indicated that he has a medical condition that affects his ability to urinate, Defendant Hardy denied Plaintiff's grievances effectively enforcing the disciplinary action against him. Again, Defendant Hardy had the opportunity to intervene and prevent further harm to Plaintiff but failed to do so.

**ANSWER:**     The IDOC Defendants deny the facts and allegations of Paragraph 74.

75.     In failing to act upon Plaintiff's grievances, Defendant Hardy acted in conscious disregard of, and with deliberate indifference to, Plaintiff's welfare.

**ANSWER:**     The IDOC Defendants deny the facts and allegations of Paragraph 75.

76.     Upon information and belief, at all relevant times, Plaintiff's condition had been obvious and known by the Defendants yet the Defendants have deliberately denied and/or delayed necessary and obvious medical care.

**ANSWER:**     The IDOC Defendants deny the facts and allegations of Paragraph 76.

77.     Upon information and belief, at all relevant times, the Defendants have known Plaintiff's need for the referral to a specialist to treat Plaintiff's medical issues, however Defendants have deliberately continued to deny and/or delayed such medical care.

**ANSWER:**     The IDOC Defendants deny the facts and allegations of Paragraph 77.

78.     Upon information and belief, at all relevant times, the Defendants have known of Plaintiff's need for having his prescribed medications to be administered, however Defendants

have continued to deny and/or delay the administering of such medications.

**ANSWER:** **The IDOC Defendants deny the facts and allegations of Paragraph 78.**

79. Upon information and belief, IDOC, Stateville, and/or Defendant Hardy has a policy and/or practice of affirming all disciplinary tickets issued by Internal Affairs.

**ANSWER:** **The IDOC Defendants deny the facts and allegations of Paragraph 79.**

80. Upon information and belief, Plaintiff has suffered retaliation from employees of Stateville including transfer to solitary confinement, for seeking medical care, and fighting for civil rights via litigation.

**ANSWER:** **The IDOC Defendants deny the facts and allegations of Paragraph 80.**

## Exhaustion

81. The Prison Litigation Reform Act, 42 U.S.C § 1997 (e)(a), provides that no action be brought by a prisoner with respect to prison conditions until "such administrative remedies as are available are exhausted."

**ANSWER:** **The IDOC Defendants admit the facts and allegations of Paragraph 81.**

82. Plaintiff has exhausted all available administrative remedies by repeatedly initiating formal grievance procedures in effort to obtain proper medical treatment. All of Plaintiff's grievances have been improperly denied.

**ANSWER:** **The IDOC Defendants deny the facts and allegations of Paragraph 82.**

## Count I
### (42 U.S.C. § 1983 – Cruel and Unusual Punishment)
### (Defendant Warden Hardy)

83. Plaintiff incorporates each Paragraph of this Complaint as if restated fully herein.

**ANSWER:** **The IDOC Defendants hereby reallege and incorporate their responses to the allegations contained in Paragraphs 1 – 82 into Paragraph 83 as if fully set forth herein.**

84. The Eighth Amendment of the United States Constitution prohibits the Cruel and Unusual Punishment of United States Citizens by the Federal Government.

**ANSWER:** **The IDOC Defendants admit the facts and allegations of Paragraph 84.**

85.     As described more fully above, Defendant Hardy is liable in his individual capacity for the violation of Plaintiff's rights under the Eighth Amendment because he was aware of Plaintiff's serious medical needs and was deliberately indifferent to them, resulting in harm to Plaintiff.

**ANSWER:** **The IDOC Defendants deny the facts and allegations of Paragraph 85.**

86.     In addition, and also as described more fully above, Defendant Hardy is liable in his official capacity as an IDOC final policy-maker for maintaining a widespread policy, practice, or custom at Stateville that was the moving force behind the violation of Plaintiff's Eighth Amendment rights as described in Counts II-VI of this complaint. Specifically, Defendant Hardy maintained a policy, practice, or custom at Stateville of inadequately investigating and responding to inmate complaints regarding medical care, thereby ensuring that the actions of IDOC agents/employees responsible for providing medical care to inmates were never subject to any meaningful scrutiny.  In this way, Defendant Hardy acquiesced in, encouraged, and/or authorized the very type of misconduct at issue in Counts II-VI.

**ANSWER:** **The IDOC Defendants deny the facts and allegations of Paragraph 86.**

WHEREFORE, the IDOC Defendants pray this  Court: i) enter judgment in their favor and against Plaintiff as to Count I; ii) enter judgment denying injunctive, monetary, or other relief; and iii) for such other and further relief in favor of Defendants as it deems just and appropriate.

## Count II
### (42 U.S.C. § 1983 – Cruel and Unusual Punishment)
### (Defendant – Wexford)

87.     Plaintiff incorporates paragraphs each paragraph of this Complaint is if restated fully herein.

**ANSWER:** **The IDOC Defendants hereby reallege and incorporate their responses to the allegations contained in Paragraphs 1 – 86 into Paragraph 87 as if fully set forth herein.**

88.     The Eighth Amendment of the United States Constitution prohibits the Cruel and Unusual Punishment of United States Citizens by the Federal Government.

**ANSWER:    The IDOC Defendants make no answer to Paragraph 88 because it is not directed against them.    To the extent Paragraph 88 is directed against the IDOC Defendants, it is admitted.**

89.    Plaintiff's rights under the Eighth Amendment to be free from Cruel and Unusual Punishment by the State of Illinois has been abridged by Wexford's deliberate indifference to plaintiff's serious medical needs.

**ANSWER:    The IDOC Defendants make no answer to Paragraph 89 because it is not directed against them.    To the extent Paragraph 89 is directed against the IDOC Defendants, it is denied.**

90.    While in the custody of the State of Illinois, Plaintiff is restrained from caring for himself and Wexford has deliberately delayed and/or deliberately denied medical care necessary to alleviate obvious severe pain and suffering resulting from Plaintiff's kidney stones and urinary complications.

**ANSWER:    The IDOC Defendants make no answer to Paragraph 90 because it is not directed against them.    To the extent Paragraph 90 is directed against the IDOC Defendants, it is denied.**

91.    At all times relevant to the events at issue in this Complaint, Defendant Wexford was under contract to the State of Illinois, through the IDOC, to provide health care to inmates at Stateville, including Plaintiff.  In this capacity, Defendant Wexford acted under color of law, and Wexford, as provider of healthcare services to inmates at Stateville, was responsible for the creation, implementation, oversight, and supervision of all policies and procedures followed by Wexford and IDOC employees who were medical care providers to inmates incarcerated at Stateville.

**ANSWER:    The IDOC Defendants make no answer to Paragraph 91 because it is not directed against them.    To the extent Paragraph 91 is directed against the IDOC Defendants, it is admitted.**

92.    At all times relevant to the events at issue in this Complaint, Wexford maintained a policy or procedure under which inmates with serious medical conditions, like Plaintiff, were routinely denied access to proper or sufficient medical care.  Wexford's policies and procedures resulted in the frequent failure and refusal of its employees to provide proper or adequate medication and medical care to inmates.  Wexford had a constitutional obligation to maintain and provide continuing adequate and appropriate medical care and treatment of prisoners incarcerated at Stateville.  As a direct and proximate result of the unconstitutional policies and procedures of Wexford, Plaintiff was deprived of his rights under the Eighth Amendment of the United States Constitution.

**ANSWER:** **The IDOC Defendants make no answer to Paragraph 92 because it is not directed against them. To the extent Paragraph 92 is directed against the IDOC Defendants, it is denied.**

93.     At all relevant times, Wexford, by and through its agents, knew of Plaintiff's need for specialized medical care, knew that failure to timely provide such care would aggravate his medical conditions and injuries, and knew their failure to provide such care would exacerbate severe pain and suffering caused by these medical conditions and injuries. However, Wexford deliberately failed to take reasonable steps to ensure Plaintiff received the medical care required.

**ANSWER:** **The IDOC Defendants make no answer to Paragraph 93 because it is not directed against them. To the extent Paragraph 93 is directed against the IDOC Defendants, it is denied.**

94.     Upon information and belief, Wexford showed deliberate indifference to Plaintiff's serious medical needs by:

a)      having a policy that pressured and/or required defendants, as employees and/or agents of Wexford, to deny necessary medical care and treatment due to budgeting constraints;

b)      having a policy that caused unnecessary delay in Plaintiff's emergency medical transport on June 26, 2010.

**ANSWER:** **The IDOC Defendants make no answer to Paragraph 94 because it is not directed against them. To the extent Paragraph 94 is directed against the IDOC Defendants, it is denied.**

95.     As a direct and proximate result of Wexford's policies, Plaintiff's serious medical needs, and his pain and suffering have been exacerbated resulting in physical and emotional injuries.

**ANSWER:** **The IDOC Defendants make no answer to Paragraph 95 because it is not directed against them. To the extent Paragraph 95 is directed against the IDOC Defendants, it is denied.**

### Count III
(42 U.S.C. § 1983 – Cruel and Unusual Punishment
(Defendant – Dr. Ghosh)

96.     Plaintiff incorporates each Paragraph of this Complaint as if restated fully herein.

**ANSWER:** **The IDOC Defendants hereby reallege and incorporate their responses to the allegations contained in Paragraphs 1 – 95 into Paragraph 96 as if fully set forth herein.**

97.     The Eighth Amendment of the United States Constitution prohibits the Cruel and Unusual Punishment of United States Citizens by the Federal government.

**ANSWER:** **The IDOC Defendants make no answer to Paragraph 97 because it is not directed against them.   To the extent Paragraph 97 is directed against the IDOC Defendants, it is admitted.**

98.     Plaintiff rights under the Eighth Amendment to be free from Cruel and Unusual Punishment by the State of Illinois have been abridged by Dr. Ghosh's deliberate indifference to Plaintiff's serious medical needs.

**ANSWER:** **The IDOC Defendants make no answer to Paragraph 98 because it is not directed against them.   To the extent Paragraph 98 is directed against the IDOC Defendants, it is denied.**

99.     While in the custody of the State of Illinois, Plaintiff is restrained from caring for himself and Dr. Ghosh has deliberately delayed and/or denied medical care necessary to alleviate obvious severe pain and suffering resulting from known medical complications and severe injuries.

**ANSWER:** **The IDOC Defendants make no answer to Paragraph 99 because it is not directed against them.   To the extent Paragraph 99 is directed against the IDOC Defendants, it is denied.**

100.     Dr. Ghosh, at all times relevant to this complaint, was an employee and/or agent of Wexford and the Medical Director of Stateville Correctional Center.

**ANSWER:** **The IDOC Defendants make no answer to Paragraph 100 because it is not directed against them.   To the extent Paragraph 100 is directed against the IDOC Defendants, it is admitted.**

101.     Upon information and belief, as Medical Director of Stateville, Dr. Ghosh had final policy and decision making authority with regard to Plaintiff's medical treatment and care.

**ANSWER:** **The IDOC Defendants make no answer to Paragraph 101 because it is not directed against them.   To the extent Paragraph 101 is directed against the IDOC Defendants, it is denied.**

102.    Dr. Ghosh caused Plaintiff's constitutional injuries by deliberately failing to take reasonable steps to ensure Plaintiff received the medical treatment and care necessary.

**ANSWER:    The IDOC Defendants make no answer to Paragraph 102 because it is not directed against them.    To the extent Paragraph 102 is directed against the IDOC Defendants, it is denied.**

103.    Dr. Ghosh showed deliberate indifference to Plaintiff's serious medical needs by:

a)    deliberately refusing to order additional diagnostic tests despite Plaintiff's lab results and symptoms;

b)    deliberately refusing to refer and transfer Plaintiff to a specialist who was able to treat Plaintiff's kidney stones and urinary complications;

c)    deliberately disregarding Plaintiff's pain and suffering;

d)    deliberately disregarding the potential risk of damage to Plaintiff's kidneys from prolonged urine retention, caused by inability to urinate;

e)    deliberately failing to provide necessary and proper pain medication to alleviate Plaintiff's pain and suffering caused by his kidney stones and unresolved urinary complication;

f)    approving, condoning and disregarding the denial of medication treatment prescribed by doctors under his supervision;

g)    deliberately failing to provide more than just cursory medical treatment.

**ANSWER:    The IDOC Defendants make no answer to Paragraph 103 because it is not directed against them.    To the extent Paragraph 103 is directed against the IDOC Defendants, it is denied for lack of sufficient knowledge.**

104.    As a direct and proximate result of Dr. Ghosh's deliberate indifference to Plaintiff's serious medical needs, and his pain and suffering have been exacerbated resulting in physical and emotional injuries.

**ANSWER:    The IDOC Defendants make no answer to Paragraph 104 because it is not directed against them.    To the extent Paragraph 104 is directed against the IDOC Defendants, it is denied.**

**Count IV**
(42 U.S.C. § 1983 – Cruel and Unusual Punishment)
(Defendant – Dr. Zhang)

105.    Plaintiff incorporates each Paragraph of this Complaint as if restated fully herein.

**ANSWER:    The IDOC Defendants hereby reallege and incorporate their responses to the allegations contained in Paragraphs 1 – 104 into Paragraph 105 as if fully set forth herein.**

106.    The Eighth Amendment of the United States Constitution prohibits the Cruel and Unusual Punishment of United States Citizens by the Federal government.

**ANSWER:    The IDOC Defendants make no answer to Paragraph 106 because it is not directed against them.   To the extent Paragraph 106 is directed against the IDOC Defendants, it is admitted.**

107.    Plaintiff's rights under the Eighth Amendment to be free from Cruel and Unusual Punishment by the State of Illinois have been abridged by Dr. Zhang's deliberate indifference to Plaintiff's serious medical needs.

**ANSWER:    The IDOC Defendants make no answer to Paragraph 107 because it is not directed against them.   To the extent Paragraph 107 is directed against the IDOC Defendants, it is denied.**

108.    Dr. Zhang, at all times relevant to this complaint, was an employee and/or agent of Wexford and the Medical Director of Stateville Correctional Center.

**ANSWER:    The IDOC Defendants make no answer to Paragraph 108 because it is not directed against them.   To the extent Paragraph 108 is directed against the IDOC Defendants, it is admitted.**

109.    While in the custody of the State of Illinois, Plaintiff is restrained from caring for himself and Dr. Zhang has deliberately delayed and/or denied medical care necessary to alleviate obvious severe pain and suffering resulting from known medical complications and severe injuries.

**ANSWER:    The IDOC Defendants make no answer to Paragraph 109 because it is not directed against them.   To the extent Paragraph 109 is directed against the IDOC Defendants, it is denied.**

110.    Dr. Zhang caused Plaintiff's constitutional injuries by deliberately failing to take

reasonable steps to ensure Plaintiff received the medical care he required.

**ANSWER:** **The IDOC Defendants make no answer to Paragraph 110 because it is not directed against them. To the extent Paragraph 110 is directed against the IDOC Defendants, it is denied.**

111.    Dr. Zhang showed deliberate indifference to Plaintiff's serious medical needs by:

a)      Prescribing medication that may have further aggravated Plaintiff's medical condition;

b)      deliberately refusing to order additional diagnostic testing despite Plaintiff's prior lab tests' results and symptoms establishing abnormalities;

c)      deliberately refusing to refer Plaintiff to the appropriate specialist who would have been able to appropriately treat Plaintiff's medical condition;

d)      deliberately disregarding the potential risk of damage to Plaintiff's kidneys from prolonged urine retention, caused by inability to urinate;

e)      deliberately failing to provide necessary and proper pain medication to alleviate Plaintiff's pain and suffering caused by his kidney stones and unresolved urinary complication;

f)      approving, condoning and disregarding the denial of medication treatment prescribed by doctors under his supervision;

g)      deliberately failing to provide more than just cursory medical treatment.

**ANSWER:** **The IDOC Defendants make no answer to Paragraph 111 because it is not directed against them. To the extent Paragraph 111 is directed against the IDOC Defendants, it is denied for lack of sufficient knowledge.**

112.    As a direct result of Dr. Zhang's conduct towards the Plaintiff's serious medical needs, Plaintiff's pain and suffering has been has needlessly been exacerbated, resulting in physical and emotional injuries.

**ANSWER:** **The IDOC Defendants make no answer to Paragraph 112 because it is not directed against them. To the extent Paragraph 112 is directed against the IDOC Defendants, it is denied.**

**Count V**
(42 U.S.C. § 1983 – Cruel and Unusual Punishment)
(Defendant – Dr. Schaefer)

113.    Plaintiff incorporates each Paragraph of this Complaint as if restated fully herein.

**ANSWER:    The IDOC Defendants hereby reallege and incorporate their responses to the allegations contained in Paragraphs 1 – 112 into Paragraph 113 as if fully set forth herein.**

114.    The Eighth Amendment of the United States Constitution prohibits the Cruel and Unusual Punishment of United States Citizens by the Federal government.

**ANSWER:    The IDOC Defendants make no answer to Paragraph 114 because it is not directed against them.    To the extent Paragraph 114 is directed against the IDOC Defendants, it is admitted.**

115.    Plaintiff's rights under the Eighth Amendment to be free from Cruel and Unusual Punishment by the State of Illinois have been abridged by Dr. Schaefer's deliberate indifference to Plaintiff's serious medical needs.

**ANSWER:    The IDOC Defendants make no answer to Paragraph 115 because it is not directed against them.    To the extent Paragraph 115 is directed against the IDOC Defendants, it is denied.**

116.    Dr. Schaefer, at all times relevant to this complaint, was an employee and/or agent of Wexford and the Medical Director of Stateville Correctional Center.

**ANSWER:    The IDOC Defendants make no answer to Paragraph 116 because it is not directed against them.    To the extent Paragraph 116 is directed against the IDOC Defendants, it is denied.**

117.    While in the custody of the State of Illinois, Plaintiff is restrained from caring for himself and Dr. Schaefer has deliberately delayed and/or denied medical care necessary to alleviate obvious severe pain and suffering resulting from known medical complications and severe injuries.

**ANSWER:    The IDOC Defendants make no answer to Paragraph 117 because it is not directed against them.    To the extent Paragraph 117 is directed against the IDOC Defendants, it is denied.**

118.    Dr. Schaefer showed deliberate indifference to Plaintiff's medical serious medical

needs by:

a)    deliberately refusing to perform more than a cursory examination;

b)    deliberately refusing to provide medical treatment to Plaintiff specific to his complaints expressed to Dr. Schaefer on August 10, 2010;

c)    deliberately disregarding Plaintiff's pain and suffering caused by his unresolved medical condition;

d)    deliberately disregarding the potential risk of damage to Plaintiff's kidneys from prolonged urine retention;

e)    deliberately disregarding the potential risk of damage to Plaintiff's kidneys from prolonged urine retention, caused by inability to urinate;

f)    approving, condoning and disregarding the denial of medication treatment prescribed by doctors under his supervision;

g)    deliberately failing to provide necessary and proper medication to alleviate Plaintiff's condition, including pain and suffering;

h)    deliberately failing to refer Plaintiff to the appropriate specialist who would have been able to treat Plaintiff's medical condition.

**ANSWER:**   **The IDOC Defendants make no answer to Paragraph 118 because it is not directed against them.  To the extent Paragraph 118 is directed against the IDOC Defendants, it is denied for lack of sufficient knowledge.**

119.    As a direct result of Dr. Schaefer's conduct and deliberate indifference to Plaintiff's serious medical needs, Plaintiff's pain and suffering has needlessly been exacerbated, resulting in physical and emotional injuries.

**ANSWER:**   **The IDOC Defendants make no answer to Paragraph 119 because it is not directed against them.  To the extent Paragraph 119 is directed against the IDOC Defendants, it is denied.**

**Count VI**
(42 U.S.C. § 1983 – Cruel and Unusual Punishment)
(Defendant- Dr. Obaisi)

120.    Plaintiff incorporates each Paragraph of this Complaint as if restated fully herein.

**ANSWER:** **The IDOC Defendants hereby reallege and incorporate their responses to the allegations contained in Paragraphs 1 – 119 into Paragraph 120 as if fully set forth herein.**

121.    The Eighth Amendment of the United States Constitution prohibits the Cruel and Unusual Punishment of United States Citizens by the Federal government.

**ANSWER:** **The IDOC Defendants make no answer to Paragraph 121 because it is not directed against them. To the extent Paragraph 121 is directed against the IDOC Defendants, it is admitted.**

122.    Plaintiff's rights under the Eighth Amendment to be free from Cruel and Unusual Punishment by the State of Illinois have been abridged by Dr. Obaisi's deliberate indifference to Plaintiff's serious medical needs.

**ANSWER:** **The IDOC Defendants make no answer to Paragraph 122 because it is not directed against them. To the extent Paragraph 122 is directed against the IDOC Defendants, it is denied.**

123.    Dr. Obaisi, at all times relevant to this complaint, was an employee and/or agent of Wexford and the Medical Director of Stateville Correctional Center.

**ANSWER:** **The IDOC Defendants make no answer to Paragraph 123 because it is not directed against them. To the extent Paragraph 123 is directed against the IDOC Defendants, it is denied.**

124.    While in the custody of the State of Illinois, Plaintiff is restrained from caring for himself and Dr. Obaisi has deliberately delayed and/or denied medical care necessary to alleviate obvious severe pain and suffering resulting from known medical complications and severe injuries.

**ANSWER:** **The IDOC Defendants make no answer to Paragraph 124 because it is not directed against them. To the extent Paragraph 124 is directed against the IDOC Defendants, it is denied.**

125.    Dr. Obaisi caused Plaintiff's constitutional injuries by attempting a surgical procedure without necessary and appropriate medical instruments, in an effort to prevent sending Plaintiff to an appropriate hospital to receive the emergency medical treatment Plaintiff required.

**ANSWER:** **The IDOC Defendants make no answer to Paragraph 125 because it is not directed against them. To the extent Paragraph 125 is directed against the IDOC Defendants, it is denied.**

126.    Dr. Obaisi showed deliberate indifference to Plaintiff's serious medical needs by:

a)    deliberately failing to timely transfer Plaintiff for emergency care by a specialist capable of performing the necessary surgical treatment;

b)    deliberately failing to provide necessary and proper anesthesia to alleviate Plaintiff's pain and suffering before attempting the surgical procedure;

c)    deliberately disregarding the potential risk of damage to Plaintiff's kidneys and prolonged urine retention;

d)    causing injuries to Plaintiff's urethra as a direct result of his attempted surgical procedure.

**ANSWER:    The IDOC Defendants make no answer to Paragraph 126 because it is not directed against them.    To the extent Paragraph 126 is directed against the IDOC Defendants, it is denied for lack of sufficient knowledge.**

127.    As a direct result of Dr. Obaisi's conduct and deliberate indifference to Plaintiff's serious medical needs, Plaintiff's pain and suffering has needlessly been exacerbated, resulting in physical and emotional injuries.

**ANSWER:    The IDOC Defendants make no answer to Paragraph 127 because it is not directed against them.    To the extent Paragraph 127 is directed against the IDOC Defendants, it is denied.**

### Count VII
(42 U.S.C. § 1983 – Retaliation)
(Defendant – Warden Hardy)

128.    Plaintiff incorporates each Paragraph of this Complaint as if restated fully herein.

**ANSWER:    The IDOC Defendants hereby reallege and incorporate their responses to the allegations contained in Paragraphs 1 – 127 into Paragraph 128 as if fully set forth herein.**

129.    The First Amendment of the United States Constitution prohibits Retaliation against an incarcerated person preventing him from exercising his constitutional rights.

**ANSWER:    The IDOC Defendants deny that this allegation correctly states the protections afforded by the First Amendment to the Constitution of the United States of America.**

130.    Plaintiff's rights under the First Amendment to be free from Retaliation by the State of Illinois have been abridged by Warden Hardy's denial of Plaintiff's grievances addressing the discipline he received for his physical inability to produce a urine specimen upon request.

**ANSWER:     The IDOC Defendants deny the facts and allegations of Paragraph 130.**

131.    At all times relevant to this complaint, Warden Hardy was an employee of IDOC and the Warden and/or Chief Administrative Officer at Stateville.

**ANSWER:     The IDOC Defendants admit the facts and allegations of Paragraph 131.**

132.    While in the custody of the State of Illinois, Plaintiff was disciplined and placed in solitary confinement for six months following his physical inability to produce a urine specimen on January 5, 2011. Plaintiff appropriately filed grievances addressing the discipline he received and requested an expungement of such discipline by presenting firm evidence of his medical condition and physical inability to urinate found in his medical records held by Stateville.

**ANSWER:     The IDOC Defendants admit the facts and allegations of Paragraph 132.**

133.    Upon information and belief, Warden Hardy's retaliation was related to Plaintiff's numerous requests for medical care and grievances related to the Defendants' failure to provide necessary medical care filed between April 2, 2010 and January 5, 2011.

**ANSWER:     The IDOC Defendants deny Warden Hardy retaliated against the Plaintiff in any manner, and further deny the facts and allegations of Paragraph 133.**

134.    Upon information and belief, retaliation was further evidenced by Warden Hardy's deliberate denial of Plaintiff's request, and the Administrative Review Board's recommendation for expungement of discipline received following Plaintiff's grievances filed after January 5, 2011 addressing his medical condition and his inability to produce a urine specimen.

**ANSWER:     The IDOC Defendants deny Warden Hardy retaliated against the Plaintiff in any manner, and further deny the facts and allegations of Paragraph 134.**

135.    Upon information and belief, at all relevant times, by numerous grievances filed and recommendations made by the Administrative Review Board, Warden Hardy was aware of Plaintiff's inability to urinate due to his medical condition. However, Warden Hardy deliberately and willfully denied the Administrative Review Board's recommendation, which was based on firm evidence, addressing his physical inability to urinate.

**ANSWER:** **The IDOC Defendants deny the facts and allegations of Paragraph 135.**

136.     Warden Hardy, in his supervising and official capacity retaliated against Plaintiff by:

    a)     deliberately disregarding and/or denying Plaintiff's grievances and/or complaints expressly indicating Plaintiff was physically unable to produce a urine specimen;

    b)     deliberately and willfully disregarding the Administrative Review Board's recommendation based upon firm medical evidence;

    c)     approving, condoning and recommending that Plaintiff remain in solitary confinement, and denying Plaintiff's request to expunge the discipline received, despite Plaintiff's physical inability to produce a urine specimen.

**ANSWER:** **The IDOC Defendants deny the facts and allegations of Paragraph 136.**

137.     As a direct result of Warden Hardy's acts and/or omissions, Warden Hardy denied Plaintiff his constitutional rights including Plaintiff's right to seek redress through the administrative grievance process, by placing him in solitary confinement and not expunging the discipline Plaintiff received, despite medical evidence proving Plaintiff's physical inability to urinate and the Administrative Review Board's contradicting findings and recommendation to expunge the discipline Plaintiff received. Accordingly, Plaintiff's serious medical needs, and his pain and suffering have been exacerbated resulting in physical and emotional injuries.

**ANSWER:** **The IDOC Defendants deny the facts and allegations of Paragraph 137.**

WHEREFORE, the IDOC Defendants pray this Court: i) enter judgment in their favor and against Plaintiff as to Count VII; ii) enter judgment denying injunctive, monetary, or other relief; and iii) for such other and further relief in favor of Defendants as it deems just and appropriate.

### Count VIII
(42 U.S.C. § 1983 – Failure to Intervene)
(Defendants – Hardy, Franklin, and Frederick)

138.     Plaintiff incorporates each Paragraph of this Complaint as if restated fully herein.

**ANSWER:** **The IDOC Defendants hereby reallege and incorporate their responses to the allegations contained in Paragraphs 1 – 137 into Paragraph 138 as if fully set forth herein.**

139.     As described more fully above, Defendants Hardy, Frederick, and Franklin had a reasonable opportunity to prevent the violation of Plaintiff's constitutional rights as set forth above had they been so inclined, but failed to do so.

**ANSWER:     The IDOC Defendants deny that Plaintiff's constitutional rights were violated, and further deny the remaining facts and allegations of Paragraph 139.**

140.     Defendants' actions were undertaken intentionally, with malice and with reckless indifference to Plaintiff's rights.

**ANSWER:     The IDOC Defendants deny that Plaintiff's constitutional rights were violated, and further deny the remaining facts and allegations of Paragraph 140.**

141.     As a direct and proximate result of the misconduct described in this Count, Plaintiff's rights were violated and he suffered physical and emotional injuries.

**ANSWER:     The IDOC Defendants deny that Plaintiff's constitutional rights were violated, that the IDOC Defendants engaged in any misconduct, and further deny the remaining facts and allegations of Paragraph 141.**

142.     Plaintiff's injuries were caused by employees of IDOC and/or Wexford, including, but not limited to, the individually named Defendants, who acted pursuant to the policies and practices of IDOC and/or Wexford.

**ANSWER:     The IDOC Defendants deny that Plaintiff's constitutional rights were violated, that the IDOC Defendants engaged in any misconduct, and further deny the remaining facts and allegations of Paragraph 142.**

WHEREFORE, the IDOC Defendants pray this Court: i) enter judgment in their favor and against Plaintiff as to Count VIII; ii) enter judgment denying injunctive, monetary, or other relief; and iii) for such other and further relief in favor of Defendants as it deems just and appropriate.

### Count IX
(42 U.S.C. § 1983 – Procedural Due Process)
(Defendants – Hardy, Kissell, Franklin, and Frederick)

143.     Plaintiff incorporates each Paragraph of this Complaint as if restated fully herein.

**ANSWER:     The IDOC Defendants hereby reallege and incorporate their responses to the allegations contained in Paragraphs 1 – 142 into Paragraph 143 as if fully set forth herein.**

144.     As described more fully above, Defendants Hardy, Kissell, Franklin, and

Frederick violated Plaintiff's right to procedural due process by depriving Plaintiff of impartial decision making in both the composition of and the process utilized by the Adjustment Committee; by depriving Plaintiff of the right to call witnesses and/or present documentary evidence at his Adjustment Committee hearing; and by publishing a final report recommending, among other punishments, six months of segregation, when there was no evidence to support this disciplinary verdict.

**ANSWER:** **The IDOC Defendants deny the facts and allegations of Paragraph 144, and specifically deny that Plaintiff was denied procedural due process.**

145.   Defendants' actions were undertaken intentionally, with malice and with reckless indifference to Plaintiff's rights.

**ANSWER:** **The IDOC Defendants deny the facts and allegations of Paragraph 145, and specifically deny that Plaintiff was denied procedural due process.**

146.   As a direct and proximate result of the misconduct described in this Count, Plaintiff's rights were violated and he suffered physical and emotional injuries.

**ANSWER: The IDOC Defendants deny the facts and allegations of Paragraph 146, and specifically deny that the IDOC Defendants engaged in any misconduct.**

WHEREFORE, the IDOC Defendants pray this Court: i) enter judgment in their favor and against Plaintiff as to Count IX; ii) enter judgment denying injunctive, monetary, or other relief; and iii) for such other and further relief in favor of Defendants as it deems just and appropriate.

### Count X
(42 U.S.C. §§ 12131-12134 – ADA Claim)
(Defendant – IDOC)

147.   Plaintiff incorporates each Paragraph of his Complaint as if restated fully herein

**ANSWER:** **The IDOC Defendants hereby reallege and incorporate their responses to the allegations contained in Paragraphs 1 – 147 into Paragraph 148 as if fully set forth herein.**

148.   As described more fully above, Plaintiff suffers from a physical impairment that substantially limits one or more of his life activities, including, the ability to relieve himself normally.

**ANSWER:** **The IDOC Defendants deny that Plaintiff's purported physical limitation qualifies as a "disability" for the purposes of the Americans with Disabilities Act. Answering further, the IDOC Defendants deny the remaining facts and allegations of Paragraph 148.**

149.    As described more fully above, this physical impairment prevents and/or severely restricts Plaintiff from doing an activity that is of central importance to daily life.

**ANSWER:    The IDOC Defendants deny that Plaintiff's purported physical limitation qualifies as a "disability" for the purposes of the Americans with Disabilities Act. Answering further, the IDOC Defendants deny the remaining facts and allegations of Paragraph 149.**

150.    As described more fully above, Plaintiff sought a reasonable accommodation for this physical impairment and one or more of the Defendants refused to provide Plaintiff with a reasonable accommodation.

**ANSWER:    The IDOC Defendants deny that Plaintiff's purported physical limitation qualifies as a "disability" for the purposes of the Americans with Disabilities Act. Answering further, the IDOC Defendants deny the remaining facts and allegations of Paragraph 149.**

151.    As a direct and proximate result of the misconduct described in this Count, Plaintiff's rights were violated and he suffered physical and emotional injuries.

**ANSWER:    The IDOC Defendants deny the facts and allegations of Paragraph 151.**

152.    Plaintiff's injuries were caused by employees of IDOC, including, but not limited to, the individually named Defendants, who acted pursuant to the policies and practices of IDOC and/or Stateville.

**ANSWER:    The IDOC Defendants deny the facts and allegations of Paragraph 152.**

WHEREFORE, the IDOC Defendants pray this Court: i) enter judgment in their favor and against Plaintiff as to Count X; ii) enter judgment denying injunctive, monetary, or other relief; and iii) for such other and further relief in favor of Defendants as it deems just and appropriate.

**Count XI**
(29 U.S.C. § 794 – Rehabilitation Act Claim)
(Defendant – IDOC)

153.    Plaintiff incorporates each Paragraph of his Complaint as if restated fully herein.

**ANSWER:    The IDOC Defendants hereby reallege and incorporate their responses to the allegations contained in Paragraphs 1 – 152 into Paragraph 153 as if fully set forth herein.**

154.    As described more fully above, Plaintiff suffers from a physical impairment that substantially limits one or more of his life activities, including, the ability to relieve himself normally.

**ANSWER:    The IDOC Defendants deny that Plaintiff's purported physical limitation qualifies as a triggering physical limitation under the Rehabilitation Act.    Answering further, the IDOC Defendants deny the remaining facts and allegations of Paragraph 154.**

155.    As described more fully above, this physical impairment prevents and/or severely restricts Plaintiff from doing an activity that is of central importance to daily life.

**ANSWER:    The IDOC Defendants deny that Plaintiff's purported physical limitation qualifies as a triggering physical limitation under the Rehabilitation Act.    Answering further, the IDOC Defendants deny the remaining facts and allegations of Paragraph 155.**

156.    As described more fully above, Plaintiff sought a reasonable accommodation for this physical impairment and one or more of the Defendants refused to provide Plaintiff with a reasonable accommodation.

**ANSWER:    The IDOC Defendants deny that Plaintiff's purported physical limitation qualifies as a triggering physical limitation under the Rehabilitation Act.    Answering further, the IDOC Defendants deny the remaining facts and allegations of Paragraph 156.**

157.    As a direct and proximate result of the misconduct described in this Count, Plaintiff's rights were violated and he suffered physical and emotional injuries.

**ANSWER:    The IDOC Defendants deny the facts and allegations of Paragraph 157.**

158.    Plaintiff's injuries were caused by employees of IDOC, including, but not limited to, the individually named Defendants, who acted pursuant to the policies and practices of IDOC and/or Stateville.

**ANSWER:    The IDOC Defendants deny that Plaintiff's purported physical limitation qualifies as a triggering physical limitation under the Rehabilitation Act.    Answering further, the IDOC Defendants deny the remaining facts and allegations of Paragraph 158.**

WHEREFORE, the IDOC Defendants pray this  Court: i) enter judgment in their favor and against Plaintiff as to Count XI; ii) enter judgment denying injunctive, monetary, or other relief; and iii) for such other and further relief in favor of Defendants as it deems just and appropriate.

**Count XII**
(State Law Claim – Willful and Wanton Misconduct)

(Defendants – Hardy, Franklin, Frederick, Kissell, Ghosh, Zhang, Schaefer, and Obaisi)

159.     Plaintiff incorporates each Paragraph of this Complaint as if restated fully herein.

**ANSWER:     The IDOC Defendants hereby reallege and incorporate their responses to the allegations contained in Paragraphs 1 – 158 into Paragraph 159 as if fully set forth herein.**

160.     In the manner described more fully above, the actions of Defendants breached the duty of care owed to inmates in their care.  They did so by ignoring Plaintiff's requests for medical attention.

**ANSWER:     The IDOC Defendants deny the facts and allegations of Paragraph 160.**

161.     In the manner described more fully above, the actions of Defendants were willful and wanton in that they demonstrated an utter indifference to the safety of others.  Defendants were aware that an injury would likely result from the above-described course of action and recklessly disregarded the consequences of those actions.

**ANSWER:     The IDOC Defendants deny the facts and allegations of Paragraph 161.**

162.     As a direct and proximate result of Defendants' negligence and/or willful and wanton misconduct, Plaintiff suffered tremendous pain and additional injury.

**ANSWER:     The IDOC Defendants deny the facts and allegations of Paragraph 162.**

WHEREFORE, the IDOC Defendants pray this  Court: i) enter judgment in their favor and against Plaintiff as to Count XII; ii) enter judgment denying injunctive, monetary, or other relief; and iii) for such other and further relief in favor of Defendants as it deems just and appropriate.

**Count XIII**
(State Law Claim – Ordinary Negligence)
(Defendants – Ghosh, Zhang, Schaefer, and Obaisi)

163.     Plaintiff incorporates each Paragraph of this Complaint as if restated fully herein.

**ANSWER:     The IDOC Defendants hereby reallege and incorporate their responses to the allegations contained in Paragraphs 1 – 162 into Paragraph 163 as if fully set forth herein.**

164.     In the manner described more fully above, the actions of Defendants Ghosh, Zhang, Schaefer, and Obaisi breached the duty of care owed to inmates in their care.  They did so by ignoring Plaintiff's requests for medical attention despite being aware that a serious injury

would likely result from their actions.

**ANSWER:     The IDOC Defendants make no answer to Paragraph 164 because it is not directed against them.    To the extent Paragraph 164 is directed against the IDOC Defendants, it is denied for lack of sufficient knowledge.**

165.     Defendants Ghosh, Zhang, Schaefer, and Obaisi breached the duty of care owed to inmates in their care, were aware that an injury to Plaintiff would likely result from their above-described course of actions, and recklessly disregarded the consequences of their actions, separate and apart from any unreasonable application of their expertise in medicine.

**ANSWER:     The IDOC Defendants make no answer to Paragraph 165 because it is not directed against them.    To the extent Paragraph 165 is directed against the IDOC Defendants, it is denied for lack of sufficient knowledge.**

**Count XIV**
(State Law Claim - Intentional Infliction of Emotional Distress)
(Defendants – Ghosh, Zhang, Schaefer, and Obaisi)

166.     Plaintiff incorporates each Paragraph of this Complaint as if restated fully herein.

**ANSWER:     The IDOC Defendants hereby reallege and incorporate their responses to the allegations contained in Paragraphs 1 – 165 into Paragraph 166 as if fully set forth herein.**

167.     In a manner described more fully above, by denying Plaintiff medical attention, the Defendants Ghosh, Zhang, Schaefer, and Obaisi engaged in extreme and outrageous conduct.

**ANSWER:     The IDOC Defendants make no answer to Paragraph 167 because it is not directed against them.    To the extent Paragraph 167 is directed against the IDOC Defendants, it is denied for lack of sufficient knowledge.**

168.     Defendants' actions set forth above were rooted in an abuse of power or authority.

**ANSWER:     The IDOC Defendants make no answer to Paragraph 168 because it is not directed against them.    To the extent Paragraph 168 is directed against the IDOC Defendants, it is denied.**

169.     Defendants' actions set forth above were undertaken with intent or knowledge that there was a high probability that the conduct would inflict severe emotional distress with reckless disregard of that probability.

**ANSWER:     The IDOC Defendants make no answer to Paragraph 169 because it is not directed against them.    To the extent Paragraph 169 is directed against the IDOC Defendants, it is denied.**

170.     Defendants' actions set forth above were undertaken with malice, willfulness, and reckless indifference for the rights of others.

**ANSWER:     The IDOC Defendants make no answer to Paragraph 170 because it is not directed against them.     To the extent Paragraph 170 is directed against the IDOC Defendants, it is denied.**

171.     As a direct and proximate result of this misconduct, Plaintiff suffered injuries, including severe emotional distress and great conscious pain and suffering.

**ANSWER:     The IDOC Defendants make no answer to Paragraph 171 because it is not directed against them.     To the extent Paragraph 171 is directed against the IDOC Defendants, it is denied.**

**Count XV**
(State Law Claim – Respondeat Superior)
(Defendant – Wexford)

172.     Plaintiff incorporates each Paragraph of this Complaint as if restated fully herein.

**ANSWER:     The IDOC Defendants hereby reallege and incorporate their responses to the allegations contained in Paragraphs 1 – 171 into Paragraph 172 as if fully set forth herein.**

173.     In committing the acts alleged above, Defendants Ghosh, Zhang, Schaeffer, and Obaisi were employees and/or agents of Defendant Wexford Health Sources, Inc., acting at all relevant times within the scope of their employment.  As such, Defendant Wexford is liable as principal for all torts committed by its employees and/or agents.

**ANSWER:     The IDOC Defendants make no answer to Paragraph 173 because it is not directed against them.     To the extent Paragraph 173 is directed against the IDOC Defendants, it is denied.**

**AFFIRMATIVE DEFENSES**

**First Affirmative Defense**

At all times relevant, the IDOC Defendants acted in good faith and in furtherance of lawful objectives without violating Plaintiff's clearly established statutory or constitutional rights of which a reasonable person would have known.  IDOC Defendants, and each of them, are therefore protected from suit by the doctrine of qualified immunity.

## Second Affirmative Defense

The IDOC Defendants' personal involvement has not been established with sufficient specificity to state a claim upon which relief can be granted.

## Third Affirmative Defense

Plaintiff has not exhausted available administrative remedies as required by 42 U.S.C. 1997(e) and therefore, the complaint should be dismissed.

## Fourth Affirmative Defense

Plaintiff's claims arising under state law are barred by the applicable statute of limitations.

## JURY DEMAND

Defendant demands a trial by jury.

Dated: October 18, 2013                    Respectfully submitted,


LISA MADIGAN
Attorney General of the State of Illinois
*Counsel for Defendants Johnnie Franklin,*
*Charles Frederick, Marcus Hardy, Nicole*
*Jackson and Albert Kissell*

By:    *s/    Jessica M. Scheller*
          Jessica M. Scheller (6283944)
          Assistant Attorney General
          Office of the Illinois Attorney General
          100 West Randolph Street, 13th Floor
          Chicago Illinois 60601
          (312) 814-6131
          jscheller@atg.state.il.us