IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISON

| | | |
|---|---|---|
| RANDY R. LIEBICH | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 11-cv-05624 |
| | ) | |
| WARDEN MARCUS HARDY; ALBERT J. | ) | |
| KISSELL; N. JACKSON; JOHNNIE L. | ) | |
| FRANKLIN; CHARLES P. FREDERICK; | ) | Judge Robert W. Gettleman |
| ILLINOIS DEPARTMENT OF CORRECTIONS; | ) | |
| WEXFORD HEALTH SOURCES, Inc.; | ) | |
| PARATHASARATHI GHOSH, M.D.; | ) | Mag. Judge Mary M. Rowland |
| LIPING ZHANG, M.D.; RONALD | ) | |
| SCHAEFER, M.D.; SALEH OBAISI, M.D. | ) | |
| | ) | |
| Defendants. | ) | |

## FOURTH AMENDED COMPLAINT

NOW COMES Plaintiff Randy R. Liebich, by and through his attorneys, LOEVY &
LOEVY, and complaining of Defendants, Warden Marcus Hardy, Albert J. Kissell, N. Jackson,
Johnnie L. Franklin, Charles P. Frederick, the Illinois Department of Corrections, Wexford
Health Sources, Inc., Dr. Parathasarathi Ghosh, Dr. Liping Zhang, Dr. Ronald Schaefer, and
Dr. Saleh Obaisi, sued in their individual and official capacities (collectively, "Defendants"),
states as follows:

### The Parties

1.      At all times relevant to the events at issue in this case, Plaintiff Randy Liebich is
and was incarcerated by the State of Illinois and held by the Illinois Department of Corrections
("IDOC") at Stateville Correctional Center ("Stateville"). Plaintiff has never before been a party
to any prior civil actions.

2.    At all times relevant to the events at issue in this case, Defendant Hardy was employed by the IDOC in the capacity of Warden of Stateville Correctional Center.  As such, Defendant Hardy was acting under color of law.

3.    At all times relevant to the events at issue in this case, Defendant Hardy promulgated rules, regulations, policies, and procedures as Warden of Stateville Correctional Center for the provision of certain medical care, including medical screening of inmates at Stateville and for investigating and responding to inmate complaints and grievances relating to medical care.  Defendant Hardy's policies were implemented by and through IDOC employees including certain individual Defendant medical care providers, who were responsible for the medical care of inmates at Stateville, including Plaintiff.

4.    At all times relevant to the events at issue in this case, Defendant Hardy had responsibility, *inter alia*, for ensuring that the practices of Stateville Correctional Center complied with federal and state requirements for the treatment of inmates.  Throughout his tenure as warden, he had personal knowledge that the conditions of confinement challenged in this case were being imposed on inmates at Stateville, including Plaintiff, and he implemented, enforced, and/or condoned these conditions.  Defendant Hardy is being sued in his official and individual capacities for the challenged conditions of confinement.

5.    At all times relevant to the events at issue in this case, Defendants Kissell, Jackson, Franklin, and Frederick were employed by the IDOC and worked at Stateville.  As such, Defendants Kissell, Jackson, Franklin, and Frederick were acting under color of law.

6.    Illinois Department of Corrections ("IDOC") is an agency of the State of Illinois that operates the State's prison system.

7.     At all times relevant to the events at issue in this case, Defendant Wexford Health Sources, Inc. ("Wexford") was engaged in the business of providing medical care and treatment to inmates, including Plaintiff, at Stateville Correctional Center, and had contracted with the IDOC to perform such services.  As such, Wexford was acting under color of law.

8.     At all times relevant to the events at issue in this case, in its capacity as a contractor to the IDOC, Wexford promulgated rules, regulations, policies, and procedures for the medical screening, medical treatment, and overall medical care of inmates at Stateville Correctional Center, including Plaintiff.  Wexford policies were implemented by and through its employees and the employees of the IDOC, including the individual Defendant medical care providers and the individual Defendant correctional officers, who were responsible for the medical care of inmates at Stateville.

9.     At all times relevant to the events at issue in this case, Defendant Dr. Ghosh was one of the treating physicians at Stateville and its Medical Director.  In his capacity as Medical Director, Dr. Ghosh promulgated rules, regulations, policies, and procedures for the medical screening, medical treatment, and overall medical care of inmates at Stateville Correctional Center, including Plaintiff.  Dr. Ghosh is being sued in his official and individual capacities.

10.     At all times relevant to the events at issue in this case, Defendants Dr. Ghosh, Dr. Zhang, Dr, Schaefer, and Dr. Obaisi were employed by Wexford or by the IDOC to provide medical services to inmates, including Plaintiff, at Stateville.  As such, Defendants Dr. Ghosh, Dr. Zhang, Dr, Schaefer, and Dr. Obaisi were acting under color of law and within the scope of their employment with Wexford or the IDOC.

**Jurisdiction and Venue**

11.     This action is brought pursuant to 42 U.S.C. Section 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution. This Court has jurisdiction of the action pursuant to 28 U.S.C. §§ 1331 and 1367.  Venue is proper under 28 U.S.C. § 1391(b).  On information and belief, at least one Defendant resides in this judicial district, and the events giving rise to the claims asserted herein all occurred within this district.

**Factual Allegations**

12.     Plaintiff began serving his sentence at Stateville in 2005.  By September of 2009 Plaintiff began experiencing chronic and severe pain in his abdomen and kidneys.

13.     By November 4, 2009 Plaintiff began requesting medical treatment from Stateville medical staff for his pains.

14.     From November 2009 until present, Plaintiff has continuously requested that the Stateville medical staff, including Dr. Ghosh, Dr. Zhang, Dr. Schaefer, and Dr. Obaisi as employees and/or agents of Wexford and/or IDOC, provide treatment for his medical condition. These requests have been made via policies established by Warden Hardy and/or by Wexford as well as through formal grievances.

15.     From November 2009 until present, Stateville medical staff has provided only cursory treatment; specifically the Defendants consistently refused Plaintiff's requests for medical treatment, referrals to a urology specialist, and administration of necessary prescription medications.

16.     From November 2009, until present, Plaintiff has made verbal and written requests upon Defendants and has filed formal grievances regarding Plaintiff's medical

4

condition, his ongoing pain, and the failure to provide and administer medication prescribed by licensed doctors to treat Plaintiff's conditions.

17.     Upon information and belief, all grievances made and/or filed were ignored or wrongfully denied. Accordingly, it is established that Plaintiff has taken proper action to exhaust his administrative remedies.

18.     Defendants have, and continue to, deliberately deny Plaintiff adequate treatment in that they have either failed to conduct further diagnostic testing, timely refer him to a specialist, timely schedule follow-up appointments with appropriate specialists, provide and administer medication to relieve pain, and refused to provide and administer medications prescribed by urology specialists to treat Plaintiff's condition.

19.     On November 4, 2009, Plaintiff was seen by Dr. Zhang for his abdominal and kidney pain. Dr. Zhang ordered lab tests and gave Plaintiff a pill, *Donnatal*, which provided no relief for Plaintiff's severe pain.

20.     On November 10, 2009, Plaintiff was seen by Dr. Zhang for abdominal and kidney pain. Dr. Zhang merely pressed on Plaintiff's abdomen and lower back with her fingers and indicated that she didn't feel anything abnormal, so it was not anything serious. No further medical care was provided at this time.

21.     On November 15, 2009 Plaintiff's lab tests results came back showing multiple abnormal readings, including elevated blood-urea-nitrogen ("BUN") and creatinine levels, both of which are indications of kidney distress and/or other kidney complications.

22.     On or about December 3, 2009, Plaintiff further requested that Dr. Zhang then refer him to a specialist and prescribe him medication to relieve his pain. Dr. Zhang refused

these requests and instead ordered another lab test. This lab test's results also yielded multiple abnormal readings.

23.     On December 3, 2009, Dr. Ghosh ordered a lab test which also was abnormal with high levels of creatinine and a low BUN-Creatinine ratio.

24.     Between November 4, 2009 and April 1, 2010, Plaintiff submitted numerous medical requests to Dr. Zhang and Dr. Ghosh, requesting medical treatment for his painful condition. However, most requests were not answered.

25.     Upon information and belief, on or about April 1, 2010 Plaintiff's counselor, Ricky Bishop, informed Plaintiff that he "spoke to someone" at the Health Care Unit who related that Plaintiff had already been seen for his complaining issues several times and there was not going to be any further appointments made regarding the same issues.

26.     Plaintiff filed a grievance on April 2, 2010 regarding the comment made by Mr. Bishop and the failure to answer his medical requests. Plaintiff requested treatment for his pain. The request was denied by the Grievance Officer based upon the fact that medical furloughs had been scheduled previously. However, these furloughs were actually appointments to consult a cardiologist regarding matters not related to the abdominal and renal pain the Plaintiff was experiencing. The denial was wrongfully confirmed by Warden Hardy.

27.     On April 26, 2010 Plaintiff filed another grievance asking for medical treatment for his ongoing pain, explaining the previous furlough schedules and the need for new appointments to address his abdominal and renal pain. This grievance was wrongfully deemed "moot" by the grievance office in September 2010.

28.     Thereafter, on May 22, 2010 Plaintiff was seen by Dr. Zhang at the Asthma Clinic (for an evaluation of his condition of asthma). After informing Dr. Zhang that he was continuing to experience abdominal and kidney pain, Dr. Zhang responded by prescribing *Excedrin Migraine* and indicating that the medication would alleviate the kidney and abdominal pain.

29.     During the same consultation with Dr. Zhang on May 22, 2010, Plaintiff requested that Dr. Zhang refer him to a urology specialist. Dr. Zhang responded that it "costs too much money to see a specialist, and that the Stateville medical staff could not be sending inmates out for every little thing, or symptom." Dr. Zhang stated that for him to be referred to a urology specialist, Plaintiff's condition would need to be "life threatening."

30.     By June 26, 2010 a kidney stone developed in Plaintiff's kidney that was so large it could not pass on its own via urination. It became lodged in plaintiff's urethra, completely obstructing urine flow. Plaintiff had not urinated in over 24-hours.

31.     At approximately 9:30 a.m. on June 26, 2010, Plaintiff was sent to the Health Care Unit at which time Dr. Obaisi diagnosed Plaintiff's condition as an "impacted urinary calculus," (more commonly referred to as a "kidney stone") which was lodged inside the urethra.

32.     Rather than sending Plaintiff to the local hospital for appropriate emergency treatment, Dr. Obaisi attempted to surgically remove the kidney stone himself without first providing Plaintiff any form of anesthesia, causing very severe pain and discomfort.

33.     Plaintiff had to repeatedly demand to be provided with anesthesia at which time Dr. Obaisi decided to make several *lidocaine* injections into the tip of Plaintiff's penis and inside the urethra.

34.     Dr. Obaisi inflicted further physical damage on June 26, 2010 by stretching open Plaintiff's urethra with a hemostat, causing a small tear at the opening of the urethra. Dr. Obaisi also punctured Plaintiff with a pair of tweezers. All injuries caused bleeding.

35.     After unsuccessfully attempting to remove the kidney stone, and causing severe pain and further damage to Plaintiff's penis and urethra, over the objections of attending "Nurse Tiffany," Dr. Obaisi, with the request of "Nurse Tiffany," decided that Plaintiff required emergency treatment at St. Joseph Hospital, in Joliet, IL. However, Dr. Obaisi did not arrange for Plaintiff to be transported for emergency medical care for several hours. Plaintiff was placed in a "holding cage" from approximately 11:00 a.m. to 3:23 p.m. during which time Plaintiff further suffered extreme pain and discomfort in his bladder and kidneys due to the tremendous pressure from maintaining a full bladder for over 30 hours, in addition to the injuries inflicted upon Plaintiff resulting from Dr. Obaisi's surgical attempt to remove the kidney stone.

36.     Dr. Obaisi delayed Plaintiff's emergency transport because of a policy at Stateville which requires all employees to obtain authorization from the Medical Director and/or Chief Administrative Officer before calling for emergency transport. This policy caused unnecessary delay in Plaintiff's emergency medical treatment and placed Plaintiff at further risk of kidney damage where his bladder needed to be immediately drained.

37.     Upon information and belief, it took Dr. Obaisi approximately four hours to obtain authorization for Plaintiff's transport to St. Joseph Hospital.

38.     Once transported to Provena Saint Joseph Medical Center, a urology specialist, Dr. Gregory Andros, determined that Plaintiff would have to be administered general anesthesia and the kidney stone would have to be removed using a "laser procedure."

8

39.     Plaintiff was discharged from Provena Saint Joseph Medical Center on June 27, 2010 and returned to Stateville the same day.

40.     On June 28, 2010, Plaintiff showed Dr. Ghosh the tear at the tip of the urethra and the injection site below it (caused by Dr. Obaisi's surgical attempts to remove the kidney stone on June 26, 2010). Plaintiff complained of severe pain due to these injuries, however Dr. Ghosh stated that the injuries would heal quickly and simply prescribed *Motrin* for the pain.

41.     On July 1, 2010, Plaintiff filed a grievance regarding the damage inflicted by Dr. Obaisi and because of the failure to receive *Motrin* as prescribed by Dr. Ghosh. The Grievance Officer's response indicated that Dr. Obaisi's conduct was "normal procedure," and further conceded that *Motrin* was prescribed, but did not address the issue of the Plaintiff having received any dosage of *Motrin*. Ultimately, with the confirmation of Warden Hardy, the Grievance Officer dismissed the grievance.

42.     On July 2, 2010, Plaintiff was seen by Dr. Ghosh for pain in his kidneys and abdomen, irritation in his bladder and continued burning sensation when urinating.

43.     Plaintiff informed Dr. Ghosh that he was not receiving the *Motrin* he had previously prescribed. Dr. Ghosh declined to provide any medication for Plaintiff's pain during this visit.

44.     At the same appointment on July 2, 2010, Plaintiff also requested that Dr. Ghosh refer plaintiff for a follow-up treatment and/or consultation with a urology specialist because Plaintiff was still experiencing complications from the June 26, 2010 procedures by Dr. Obaisi and Provena Saint Joseph Medical Center. Dr. Ghosh refused and instead ordered a lab test.

9

45.     On July 6, 2010, the lab test results yielded abnormal results, including high levels of creatinine, albumin, and a low BUN/creatinine ratio.

46.     An attorney named Heather Kirkwood, who Plaintiff has remained in contact with after she had reviewed his criminal conviction, made several attempts, via telephone, to contact Stateville regarding Plaintiff's medical issues and not receiving his prescribed medications.

47.     Upon information and belief, after Heather Kirkwood's telephone calls, Plaintiff began receiving his medication after spending approximately ten days in pain and at risk of infection.

48.     Upon information and belief, on July 20, 2010, Dr. Ghosh ordered another lab test and this test also yielded abnormal results, including high BUN and creatinine levels.

49.     On August 10, 2010 Plaintiff was seen by Dr. Shaefer at the Asthma Clinic; Plaintiff described his medical condition including chronic pain, trouble urinating and injuries caused by Dr. Obaisi. Dr. Schaefer examined Plaintiff where he sustained the injuries caused by Dr. Obaisi. Dr. Schaefer noted the injection site, but refused to provide Plaintiff any medical treatment for his complaints despite Plaintiff's insistence by responding, "We're not going to sit here and waste any more time talking about this, we've discussed it at length and this is not what this appointment was about."

50.     On August 13, 2010 Plaintiff filed a grievance against Dr. Ghosh, Dr. Zhang, and Dr. Schaefer for ignoring and not documenting his medical complaints. After not receiving any medical attention Plaintiff composed another grievance in the form of a letter on August 29, 2010.

51.     On September 6, 2010, Plaintiff sent an "emergency grievance" to Warden Hardy complaining of severe pain in his abdomen, kidney, testicles, and bladder, swelling in his abdomen and that he was unable to empty his bladder during urination. Plaintiff informed Warden Hardy that the urine retention was placing him at risk of kidney damage and the medical staff was denying him treatment for this condition. Plaintiff specifically requested medical care at an outside hospital to diagnose and treat his condition. Warden Hardy denied the grievance, deeming it a "non-emergency."

52.     On September 17, 2010, Plaintiff was seen by Dr. Ghosh and reported pain in his side that radiated to his abdomen as well as trouble urinating and emptying his bladder during urination. He also informed Dr. Ghosh that the kidney stones had begun to re-develop. Dr. Ghosh allegedly referred Plaintiff to the Urology Clinic at University of Illinois at Chicago (UIC) Hospital, located in Chicago, IL; and the appointment was allegedly approved by Wexford on September 22, 2010. However, the appointment was never followed through, that is Plaintiff was never transported to UIC Hospital for consultation.

53.     On September 22, 2010 Plaintiff sent another "emergency grievance" to Warden Hardy requesting immediate medical care from an outside hospital. Plaintiff informed Warden Hardy that he was in constant severe pain and could not urinate enough to empty his bladder. The Grievance Officer responded to the grievance approximately 7 months later and dismissed the grievance. Warden Hardy denied the grievance again, deeming it a "non-emergency."

54.     By September 25, 2010 Plaintiff had not urinated for 24 hours and was admitted to the Stateville infirmary for 3 days where a catheter had to be installed so

Plaintiff's bladder could drain. The need for catheterization and inability to urinate was documented in Plaintiff's medical chart.

55.     On January 5, 2011, Plaintiff was ordered by Defendant Kissell to provide a urine specimen for purposes of drug testing. Defendant Kissell informed Plaintiff that he had two hours to provide the urine specimen. Plaintiff informed Defendant Kissell that he had a medical condition that affected his ability to urinate and that it may take him additional time to produce a urine sample per Defendant Kissell's orders. Defendant Kissell dismissed Plaintiff's concerns and informed Plaintiff that non-compliance would result is penalties, including solitary confinement. Plaintiff indicated to Defendant Kissell that his medical records contained information from physicians describing his inability to urinate normally.

56.     On January 5, 2011, after multiple attempts to urinate, Plaintiff was unable to produce the requested urine sample in the time period allotted. Defendant Kissell informed Plaintiff that he was sentencing Plaintiff to disciplinary action including six months C grade and six months of segregation. Plaintiff requested that he be allowed additional time to produce a specimen due to his medical condition but Defendant Kissell denied Plaintiff's request stating that Plaintiff's story was "bullshit." Plaintiff requested that Defendant Kissell contact the health care unit to verify his condition but Defendant Kissell refused to do so. Defendant Kissell stated to Plaintiff that he was "going to seg" and that Plaintiff could "file a grievance."

57.     Upon information and belief, Defendant Kissell had a duty to investigate Plaintiff's claim that a medical condition prevented him from urinating in the allotted time, yet he ignored that duty. In failing to investigate whether Plaintiff had a medical condition that prevented him from urinating regularly, as well as in wrongfully punishing Plaintiff with, among

other discipline, six months of C-grade and six months of segregation, Defendant Kissell acted in conscious disregard for Plaintiff's welfare.

58.     On January 6, 2011, Defendant Jackson served Plaintiff with a disciplinary report for his failure to timely provide a urine sample.  Plaintiff informed Defendant Jackson about his medical condition and told her that his condition could be verified by Stateville medical staff and/or his medical records.  Plaintiff requested that Defendant Jackson verify his condition and that she assist him in securing this evidence for his upcoming hearing before the Adjustment Committee since Plaintiff was housed in segregation and was unable to secure this evidence himself.

59.     Defendant Jackson informed Plaintiff that she was only there to serve him with a disciplinary report and would not honor his requests.

60.     On January 10, 2011, Plaintiff filed a grievance in response to the disciplinary report he received for not producing a urine sample. The grievance indicated that his difficulty urinating was documented in his medical records. Plaintiff requested: (1) he be removed from segregation and be placed "back in Unit B;" (2) and that the disciplinary ticket be expunged and removed from his "record."

61.     Plaintiff made several requests for copies of his medical records but all of these requests went unanswered.  Plaintiff also made several requests to the clerk of the law library for access to his legal boxes stored at the library so that he could retrieve copies of grievances and other documents that would substantiate his medical condition.  These requests were ignored for several months.  Additionally, Plaintiff submitted a written request to the Adjustment Committee that Dr. Ghosh and/or one of his medical technicians/assistants be called as witnesses at

13

Plaintiff's upcoming hearing so that they could substantiate his medical condition but Defendants Franklin and Frederick refused to call these witnesses at the hearing.

62.     On January 13, 2011, Plaintiff's scheduled hearing in front of the Adjustment Committee took place.  The Adjustment Committee was composed of Defendants Franklin and Frederick.  Plaintiff's request to dismiss the disciplinary report and expunge the charges were denied based, in part, upon on the notion that Plaintiff had not offered proof of a health condition affecting his ability to urinate.  Plaintiff asked Defendants Franklin and Frederick why he was not allowed to call witnesses at the hearing, nor offer his medical records as proof of his medical condition, and he was informed by Defendant Franklin that this evidence was not necessary because the disciplinary report spoke for itself.  This final decision was approved by Warden Hardy.

63.     In failing to allow Plaintiff to call witnesses at the hearing, to offer his medical records, or to otherwise determine whether Plaintiff had a legitimate medical condition that prevented him from urinating regularly, Defendants Franklin and Frederick failed to intervene to prevent Defendant Kissell from charging Plaintiff with disciplinary action that resulted in, among other discipline, six  months  C-grade and six months of segregation.  Defendants Franklin and Frederick had a duty to allow Plaintiff to present such evidence.  Defendants Franklin and Frederick also had a reasonable opportunity in the form of the Adjustment Committee hearing to prevent Plaintiff from being disciplined as a result of the faulty disciplinary report.

64.     On January 19, 2011, Plaintiff received the final summary report issued by the Adjustment Committee.  This report indicated that Plaintiff had been found guilty of violating the drug testing procedure and that he was being sentenced to six months of segregation, six months good time revocation, 6 months of commissary restriction, six months of C-grade, and

six months of contact visit restriction. The guilty verdict was based on the materially false statements by Defendants Franklin and Frederick indicating that Plaintiff "could not produce proof of the medical condition he claimed he had," and that Plaintiff's "medical record has nothing about Liebich having a urinating problem. Defendant Hardy approved the Adjustment Committee's final summary report on January 18, 2011.

65.     On January 26, 2011, Plaintiff filed another grievance appealing the Adjustment Committee's Final Report, with firm evidence found in Plaintiff's medical records composed by Plaintiff's attending physicians indicating Plaintiff's difficulty and even inability to urinate. After further review, the Grievance Officer's response to these grievances recommended that Plaintiff's disciplinary report be expunged. However, Warden Hardy, as the final policy-maker, did not concur with the Grievance Officer's recommendations and denied the grievance, thus enforcing the disciplinary action for Plaintiff's failure to produce a urine sample on January 5, 2011.

66.     On February 19, 2011 Heather Kirkwood wrote a letter to Warden Hardy in which she expressed her concern for Plaintiff's well being. In her letter, Ms. Kirkwood addressed Plaintiff's inability to urinate and the subsequent disciplinary report for lack of providing a urine sample on January 5, 2010. After further correspondence, and obtaining Plaintiff's medical records, Ms. Kirkwood sent specific evidence of Plaintiff's difficulty urinating found in the Physician's notes of Plaintiff's medical records to Warden Hardy. Shortly following Heather Kirkwood's correspondence with Warden Hardy, Plaintiff was sent to UIC Hospital.

67.     At no time did Defendant Hardy expunge Plaintiff's disciplinary ticket. On June 3, 2011, the Administrative Review Board affirmed the denial of Plaintiff's grievance.

15

68.     On or about March 2, 2011, a computerized axial tomography ("CAT") scan was performed which revealed that Plaintiff had developed another kidney stone in one of his kidneys.

69.     On May 9, 2011, a procedure was conducted at UIC Hospital to look inside Plaintiff's urethra and bladder. The urology specialist diagnosed Plaintiff with a swollen Prostate  and prescribed medication to help Plaintiff urinate and to treat his Prostate condition.

70.     To date the Plaintiff has never received the medication prescribed by the urology specialist at UIC Hospital on May 9, 2011.

71.     Plaintiff has made numerous attempts to obtain this medication by informing the medical staff, writing three letters to the Medical Director and sending another "emergency grievance" to Warden Hardy. Warden Hardy denied the grievance, deeming it a "non-emergency."

72.     In March, 2011, Plaintiff asked Defendant Franklin directly why he had issued an Adjustment Committee report that contained the false statements referenced above.  Defendant Franklin responded that any evidence Plaintiff had to the contrary did not matter because Plaintiff's disciplinary ticket had been issued by Internal Affairs and that Defendant would not simply "throw out" an Internal Affairs ticket.

73.     Upon information and belief, Defendant Warden Hardy received at least four grievances from Plaintiff regarding the medical care he received (or the lack thereof) at the hands of the Wexford Defendants.  Despite being made aware of the Wexford Defendants' ongoing deliberate indifference to Plaintiff's serious medical condition, Defendant Hardy did nothing to ensure that Plaintiff received the medical care that he required.  Nor did Defendant Hardy do anything to prevent the Wexford Defendants from inflicting further injury on Plaintiff by, among

other things, performing medical procedures for which they were wholly unqualified. Defendant Hardy had the opportunity to intervene and prevent further harm to Plaintiff but failed to do so.

74.     Upon information and belief, Defendant Warden Hardy received at least three grievances regarding the disciplinary report issued against Plaintiff, as well as the Adjustment Committee hearing in which Plaintiff was barred from presenting evidence on his behalf. Despite this knowledge, Defendant Hardy did nothing to prevent the disciplinary action taken against Plaintiff. Indeed, despite the recommendation from a Grievance Officer that Plaintiff's disciplinary report should be expunged because his medical records clearly indicated that he has a medical condition that affects his ability to urinate, Defendant Hardy denied Plaintiff's grievances effectively enforcing the disciplinary action against him. Again, Defendant Hardy had the opportunity to intervene and prevent further harm to Plaintiff but failed to do so.

75.     In failing to act upon Plaintiff's grievances, Defendant Hardy acted in conscious disregard of, and with deliberate indifference to, Plaintiff's welfare.

76.     Upon information and belief, at all relevant times, Plaintiff's condition had been obvious and known by the Defendants yet the Defendants have deliberately denied and/or delayed necessary and obvious medical care.

77.     Upon information and belief, at all relevant times, the Defendants have known Plaintiff's need for the referral to a specialist to treat Plaintiff's medical issues, however Defendants have deliberately continued to deny and/or delayed such medical care.

78.     Upon information and belief, at all relevant times, the Defendants have known of Plaintiff's need for having his prescribed medications to be administered, however Defendants have continued to deny and/or delay the administering of such medications.

79.     Upon information and belief, IDOC, Stateville, and/or Defendant Hardy has a policy and/or practice of affirming all disciplinary tickets issued by Internal Affairs.

80.     Upon information and belief, Plaintiff has suffered retaliation from employees of Stateville including transfer to solitary confinement, for seeking medical care, and fighting for civil rights via litigation.

**Exhaustion**

81.     The Prison Litigation Reform Act, 42 U.S.C § 1997 (e)(a), provides that no action be brought by a prisoner with respect to prison conditions until "such administrative remedies as are available are exhausted."

82.     Plaintiff has exhausted all available administrative remedies by repeatedly initiating formal grievance procedures in effort to obtain proper medical treatment. All of Plaintiff's grievances have been improperly denied.

**Count I**
(42 U.S.C. § 1983 – Cruel and Unusual Punishment)
(Defendant Warden Hardy)

83.     Plaintiff incorporates each Paragraph of this Complaint as if restated fully herein.

84.     The Eighth Amendment of the United States Constitution prohibits the Cruel and Unusual Punishment of United States Citizens by the Federal Government.

85.     As described more fully above, Defendant Hardy is liable in his individual capacity for the violation of Plaintiff's rights under the Eighth Amendment because he was aware of Plaintiff's serious medical needs and was deliberately indifferent to them, resulting in harm to Plaintiff.

86.     In addition, and also as described more fully above, Defendant Hardy is liable in his official capacity as an IDOC final policy-maker for maintaining a widespread policy,

practice, or custom at Stateville that was the moving force behind the violation of Plaintiff's Eighth Amendment rights as described in Counts II-VI of this complaint. Specifically, Defendant Hardy maintained a policy, practice, or custom at Stateville of inadequately investigating and responding to inmate complaints regarding medical care, thereby ensuring that the actions of IDOC agents/employees responsible for providing medical care to inmates were never subject to any meaningful scrutiny. In this way, Defendant Hardy acquiesced in, encouraged, and/or authorized the very type of misconduct at issue in Counts II-VI.

WHEREFORE, Plaintiff prays that the Court:

a) issue a preliminary and permanent injunction enjoining Defendant from denying and/or further delaying Plaintiff the necessary medical treatment as required;

b) enter judgment against Defendant and in favor of Plaintiff for damages in an amount to be proven at trial;

c) enter a judgment against Defendant for punitive damages;

d) enter a judgment against Defendant and in favor of Plaintiff for costs of prosecuting this actions;

e) order such further relief as this Court may deem appropriate.

**Count II**
(42 U.S.C. § 1983 – Cruel and Unusual Punishment)
(Defendant – Wexford)

87. Plaintiff incorporates paragraphs each paragraph of this Complaint is if restated fully herein.

88. The Eighth Amendment of the United States Constitution prohibits the Cruel and Unusual Punishment of United States Citizens by the Federal Government.

89.    Plaintiff's rights under the Eighth Amendment to be free from Cruel and Unusual Punishment by the State of Illinois has been abridged by Wexford's deliberate indifference to plaintiff's serious medical needs.

90.    While in the custody of the State of Illinois, Plaintiff is restrained from caring for himself and Wexford has deliberately delayed and/or deliberately denied medical care necessary to alleviate obvious severe pain and suffering resulting from Plaintiff's kidney stones and urinary complications.

91.    At all times relevant to the events at issue in this Complaint, Defendant Wexford was under contract to the State of Illinois, through the IDOC, to provide health care to inmates at Stateville, including Plaintiff.  In this capacity, Defendant Wexford acted under color of law, and Wexford, as provider of healthcare services to inmates at Stateville, was responsible for the creation, implementation, oversight, and supervision of all policies and procedures followed by Wexford and IDOC employees who were medical care providers to inmates incarcerated at Stateville.

92.    At all times relevant to the events at issue in this Complaint, Wexford maintained a policy or procedure under which inmates with serious medical conditions, like Plaintiff, were routinely denied access to proper or sufficient medical care.  Wexford's policies and procedures resulted in the frequent failure and refusal of its employees to provide proper or adequate medication and medical care to inmates.  Wexford had a constitutional obligation to maintain and provide continuing adequate and appropriate medical care and treatment of prisoners incarcerated at Stateville.  As a direct and proximate result of the unconstitutional policies and procedures of Wexford, Plaintiff was deprived of his rights under the Eighth Amendment of the United States Constitition.

20

93.     At all relevant times, Wexford, by and through its agents, knew of Plaintiff's need for specialized medical care, knew that failure to timely provide such care would aggravate his medical conditions and injuries, and knew their failure to provide such care would exacerbate severe pain and suffering caused by these medical conditions and injuries. However, Wexford deliberately failed to take reasonable steps to ensure Plaintiff received the medical care required.

94.     Upon information and belief, Wexford showed deliberate indifference to Plaintiff's serious medical needs by:

a)  having a policy that pressured and/or required defendants, as employees and/or agents of Wexford, to deny necessary medical care and treatment  due  to budgeting constraints;

b)  having a policy that caused unnecessary delay in Plaintiff's emergency medical transport on June 26, 2010.

95.     As a direct and proximate result of Wexford's policies, Plaintiff's serious medical needs, and his pain and suffering have been exacerbated resulting in physical and emotional injuries.

WHEREFORE, Plaintiff prays that the Court:

a)  issue a preliminary and permanent injunction enjoining Wexford and its employees and/or agents from denying and/or further delaying Plaintiff the necessary medical treatment as alleged;

b)  enter judgment against Wexford and in favor of Plaintiff for damages in an amount to be proven at trial;

c)  enter a judgment against Wexford for punitive damages;

21

d) enter a judgment against Wexford and in favor of Plaintiff for costs of prosecuting this actions;

e) order such further relief as this Court may deem appropriate.

**Count III**
(42 U.S.C. § 1983 – Cruel and Unusual Punishment
(Defendant – Dr. Ghosh)

96. Plaintiff incorporates each Paragraph of this Complaint as if restated fully herein.

97. The Eighth Amendment of the United States Constitution prohibits the Cruel and Unusual Punishment of United States Citizens by the Federal government.

98. Plaintiff rights under the Eighth Amendment to be free from Cruel and Unusual Punishment by the State of Illinois have been abridged by Dr. Ghosh's deliberate indifference to Plaintiff's serious medical needs.

99. While in the custody of the State of Illinois, Plaintiff is restrained from caring for himself and Dr. Ghosh has deliberately delayed and/or denied medical care necessary to alleviate obvious severe pain and suffering resulting from known medical complications and severe injuries.

100. Dr. Ghosh, at all times relevant to this complaint, was an employee and/or agent of Wexford and the Medical Director of Stateville Correctional Center.

101. Upon information and belief, as Medical Director of Stateville, Dr. Ghosh had final policy and decision making authority with regard to Plaintiff's medical treatment and care.

102. Dr. Ghosh caused Plaintiff's constitutional injuries by deliberately failing to take reasonable steps to ensure Plaintiff received the medical treatment and care necessary.

103.    Dr. Ghosh showed deliberate indifference to Plaintiff's serious medical needs by:

a)  deliberately refusing to order additional diagnostic tests despite Plaintiff's lab results and symptoms;

b)  deliberately refusing to refer and transfer Plaintiff to a specialist who was able to treat Plaintiff's kidney stones and urinary complications;

c)  deliberately disregarding Plaintiff's pain and suffering;

d)  deliberately disregarding the potential risk of damage to Plaintiff's kidneys from prolonged urine retention, caused by inability to urinate;

e)  deliberately failing to provide necessary and proper pain medication to alleviate Plaintiff's pain and suffering caused by his kidney stones and unresolved urinary complication;

f)  approving, condoning and disregarding the denial of medication treatment prescribed by doctors under his supervision;

g)  deliberately failing to provide more than just cursory medical treatment.

104.    As a direct and proximate result of Dr. Ghosh's deliberate indifference to Plaintiff's serious medical needs, and his pain and suffering have been exacerbated resulting in physical and emotional injuries.

WHEREFORE, Plaintiff prays that the Court:

a)  issue a preliminary and permanent injunction enjoining the defendant from denying and/or further delaying Plaintiff the necessary medical treatment as alleged;

b)  enter judgment against Defendant and in favor of Plaintiff for damages in an amount to be proven at trial;

c)  enter a judgment against Defendant for punitive damages;

d)  enter a judgment against Defendant and in favor of Plaintiff for costs of prosecuting

this actions;

e)  order such further relief as this Court may deem appropriate.

**Count IV**
(42 U.S.C. § 1983 – Cruel and Unusual Punishment)
(Defendant – Dr. Zhang)

105.    Plaintiff incorporates each Paragraph of this Complaint as if restated fully herein.

106.    The Eighth Amendment of the United States Constitution prohibits the Cruel

and Unusual Punishment of United States Citizens by the Federal government.

107.    Plaintiff's rights under the Eighth Amendment to be free from Cruel and Unusual

Punishment by the State of Illinois have been abridged by Dr. Zhang's deliberate indifference to

Plaintiff's serious medical needs.

108.    Dr. Zhang, at all times relevant to this complaint, was an employee and/or agent

of Wexford and the Medical Director of Stateville Correctional Center.

109.    While in the custody of the State of Illinois, Plaintiff is restrained from caring for

himself and Dr. Zhang has deliberately delayed and/or denied medical care necessary to alleviate

obvious severe pain and suffering resulting from  known medical complications and severe

injuries.

110.    Dr. Zhang caused Plaintiff's constitutional injuries by deliberately failing to take

reasonable steps to ensure Plaintiff received the medical care he required.

111.    Dr. Zhang showed deliberate indifference to Plaintiff's serious medical needs by:

a)  Prescribing medication that may have further aggravated Plaintiff's medical

condition;

24

b) deliberately refusing to order additional diagnostic testing despite Plaintiff's prior lab tests' results and symptoms establishing abnormalities;

c) deliberately refusing to refer Plaintiff to the appropriate specialist who would have been able to appropriately treat Plaintiff's medical condition;

d) deliberately disregarding the potential risk of damage to Plaintiff's kidneys from prolonged urine retention, caused by inability to urinate;

e) deliberately failing to provide necessary and proper pain medication to alleviate Plaintiff's pain and suffering caused by his kidney stones and unresolved urinary complication;

f) approving, condoning and disregarding the denial of medication treatment prescribed by doctors under his supervision;

g) deliberately failing to provide more than just cursory medical treatment.

112.    As a direct result of Dr. Zhang's conduct towards the Plaintiff's serious medical needs, Plaintiff's pain and suffering has been has needlessly been exacerbated, resulting in physical and emotional injuries.

WHEREFORE, Plaintiff prays that the Court:

a) enter judgment against Defendant and in favor of Plaintiff for damages in an amount to be proven at trial;

b) enter a judgment against Defendant for punitive damages;

c) enter a judgment against Defendant and in favor of Plaintiff for costs of prosecuting this actions;

d) order such further relief as this Court may deem appropriate.

**Count V**
(42 U.S.C. § 1983 – Cruel and Unusual Punishment)
(Defendant – Dr. Schaefer)

113.    Plaintiff incorporates each Paragraph of this Complaint as if restated fully herein.

114.    The Eighth Amendment of the United States Constitution prohibits the Cruel and Unusual Punishment of United States Citizens by the Federal government.

115.    Plaintiff's rights under the Eighth Amendment to be free from Cruel and Unusual Punishment by the State of Illinois have been abridged by Dr. Schaefer's deliberate indifference to Plaintiff's serious medical needs.

116.    Dr. Schaefer, at all times relevant to this complaint, was an employee and/or agent of Wexford and the Medical Director of Stateville Correctional Center.

117.    While in the custody of the State of Illinois, Plaintiff is restrained from caring for himself and Dr. Schaefer has deliberately delayed and/or denied medical care necessary to alleviate obvious severe pain and suffering resulting from known medical complications and severe injuries.

118.    Dr. Schaefer showed deliberate indifference to Plaintiff's medical serious medical needs by:

a)  deliberately refusing to perform more than a cursory examination;

b)  deliberately refusing to provide medical treatment to Plaintiff specific to his complaints expressed to Dr. Schaefer on August 10, 2010;

c)  deliberately disregarding Plaintiff's pain and suffering caused by his unresolved medical condition;

d)  deliberately disregarding the potential risk of damage to Plaintiff's kidneys from prolonged urine retention;

26

e) deliberately disregarding the potential risk of damage to Plaintiff's kidneys from prolonged urine retention, caused by inability to urinate;

f) approving, condoning and disregarding the denial of medication treatment prescribed by doctors under his supervision;

g) deliberately failing to provide necessary and proper medication to alleviate Plaintiff's condition, including pain and suffering;

h) deliberately failing to refer Plaintiff to the appropriate specialist who would have been able to treat Plaintiff's medical condition.

119.    As a direct result of Dr. Schaefer's conduct and deliberate indifference to Plaintiff's serious medical needs, Plaintiff's pain and suffering has needlessly been exacerbated, resulting in physical and emotional injuries.

WHEREFORE, Plaintiff prays that the Court:

a) enter judgment against Defendant and in favor of Plaintiff for damages in an amount to be proven at trial;

b) enter a judgment against Defendant for punitive damages;

c) enter a judgment against Defendant and in favor of Plaintiff for costs of prosecuting this actions;

d) order such further relief as this Court may deem appropriate.

**Count VI**
(42 U.S.C. § 1983 – Cruel and Unusual Punishment)
(Defendant- Dr. Obaisi)

120.    Plaintiff incorporates each Paragraph of this Complaint as if restated fully herein.

121.    The Eighth Amendment of the United States Constitution prohibits the Cruel and Unusual Punishment of United States Citizens by the Federal government.

27

122.    Plaintiff's rights under the Eighth Amendment to be free from Cruel and Unusual Punishment by the State of Illinois have been abridged by Dr. Obaisi's deliberate indifference to Plaintiff's serious medical needs.

123.    Dr. Obaisi, at all times relevant to this complaint, was an employee and/or agent of Wexford and the Medical Director of Stateville Correctional Center.

124.    While in the custody of the State of Illinois, Plaintiff is restrained from caring for himself and Dr. Obaisi has deliberately delayed and/or denied medical care necessary to alleviate obvious severe pain and suffering resulting from known medical complications and severe injuries.

125.    Dr. Obaisi caused Plaintiff's constitutional injuries by attempting a surgical procedure without necessary and appropriate medical instruments, in an effort to prevent sending Plaintiff to an appropriate hospital to receive the emergency medical treatment Plaintiff required.

126.    Dr. Obaisi showed deliberate indifference to Plaintiff's serious medical needs by:

a)  deliberately failing to timely transfer Plaintiff for emergency care by a specialist capable of performing the necessary surgical treatment;

b)  deliberately failing to provide necessary and proper anesthesia to alleviate Plaintiff's pain and suffering before attempting the surgical procedure;

c)  deliberately disregarding the potential risk of damage to Plaintiff's kidneys and prolonged urine retention;

d)  causing injuries to Plaintiff's urethra as a direct result of his attempted surgical procedure.

127.    As a direct result of Dr. Obaisi's conduct and deliberate indifference to Plaintiff's serious medical needs, Plaintiff's pain and suffering has needlessly been exacerbated, resulting in physical and emotional injuries.

WHEREFORE, Plaintiff prays that the Court:

a)  enter judgment against Defendant and in favor of Plaintiff for damages in an amount to be proven at trial;

b)  enter a judgment against Defendant for punitive damages;

c)  enter a judgment against Defendant and in favor of Plaintiff for costs of prosecuting this actions;

d)  order such further relief as this Court may deem appropriate.

### Count VII
(42 U.S.C. § 1983 – Retaliation)
(Defendant – Warden Hardy)

128.    Plaintiff incorporates each Paragraph of this Complaint as if restated fully herein.

129.    The First Amendment of the United States Constitution prohibits Retaliation against an incarcerated person preventing him from exercising his constitutional rights.

130.    Plaintiff's rights under the First Amendment to be free from Retaliation by the State of Illinois have been abridged by Warden Hardy's denial of Plaintiff's grievances addressing the discipline he received for his physical inability to produce a urine specimen upon request.

131.    At all times relevant to this complaint, Warden Hardy was an employee of IDOC and the Warden and/or Chief Administrative Officer at Stateville.

132.    While in the custody of the State of Illinois, Plaintiff was disciplined and placed in solitary confinement for six months following his physical inability to produce a urine

specimen on January 5, 2011. Plaintiff appropriately filed grievances addressing the discipline he received and requested an expungement of such discipline by presenting firm evidence of his medical condition and physical inability to urinate found in his medical records held by Stateville.

133.    Upon information and belief, Warden Hardy's retaliation was related to Plaintiff's numerous requests for medical care and grievances related to the Defendants' failure to provide necessary medical care filed between April 2, 2010 and January 5, 2011.

134.    Upon information and belief, retaliation was further evidenced by Warden Hardy's deliberate denial of Plaintiff's request, and the Administrative Review Board's recommendation for expungement of discipline received following Plaintiff's grievances filed after January 5, 2011 addressing his medical condition and his inability to produce a urine specimen.

135.    Upon information and belief, at all relevant times, by numerous grievances filed and recommendations made by the Administrative Review Board, Warden Hardy was aware of Plaintiff's inability to urinate due to his medical condition. However, Warden Hardy deliberately and willfully denied the Administrative Review Board's recommendation, which was based on firm evidence, addressing his physical inability to urinate.

136.    Warden Hardy, in his supervising and official capacity retaliated against Plaintiff by:

a) deliberately disregarding and/or denying Plaintiff's grievances and/or complaints expressly indicating Plaintiff was physically unable to produce a urine specimen;

b) deliberately and willfully disregarding the Administrative Review Board's recommendation based upon firm medical evidence;

c) approving, condoning and recommending that Plaintiff remain in solitary confinement, and denying Plaintiff's request to expunge the discipline received, despite Plaintiff's physical inability to produce a urine specimen.

137.   As a direct result of Warden Hardy's acts and/or omissions, Warden Hardy denied Plaintiff his constitutional rights including Plaintiff's right to seek redress through the administrative grievance process, by placing him in solitary confinement and not expunging the discipline Plaintiff received, despite medical evidence proving Plaintiff's physical inability to urinate and the Administrative Review Board's contradicting findings and recommendation to expunge the discipline Plaintiff received. Accordingly, Plaintiff's serious medical needs, and his pain and suffering have been exacerbated resulting in physical and emotional injuries.

WHEREFORE, Plaintiff prays that the Court:

a) enter judgment against Defendant and in favor of Plaintiff for damages in an amount to be proven at trial;

b) enter a judgment against Defendant for punitive damages;

c) enter a judgment against Defendant and in favor of Plaintiff for costs of prosecuting this actions;

d) order such further relief as this Court may deem appropriate.

### Count VIII
(42 U.S.C. § 1983 – Failure to Intervene)
(Defendants – Hardy, Franklin, and Frederick)

138.   Plaintiff incorporates each Paragraph of this Complaint as if restated fully herein.

139.   As described more fully above, Defendants Hardy, Frederick, and Franklin had a reasonable opportunity to prevent the violation of Plaintiff's constitutional rights as set forth above had they been so inclined, but failed to do so.

140.     Defendants' actions were undertaken intentionally, with malice and with reckless indifference to Plaintiff's rights.

141.     As a direct and proximate result of the misconduct described in this Count, Plaintiff's rights were violated and he suffered physical and emotional injuries.

142.     Plaintiff's injuries were caused by employees of IDOC and/or Wexford, including, but not limited to, the individually named Defendants, who acted pursuant to the policies and practices of IDOC and/or Wexford.

**Count IX**
(42 U.S.C. § 1983 – Procedural Due Process)
(Defendants – Hardy, Kissell, Franklin, and Frederick)

143.     Plaintiff incorporates each Paragraph of this Complaint as if restated fully herein.

144.     As described more fully above, Defendants Hardy, Kissell, Franklin, and Frederick violated Plaintiff's right to procedural due process by depriving Plaintiff of impartial decision making in both the composition of and the process utilized by the Adjustment Committee; by depriving Plaintiff of the right to call witnesses and/or present documentary evidence at his Adjustment Committee hearing; and by publishing a final report recommending, among other punishments, six months of segregation, when there was no evidence to support this disciplinary verdict.

145.     Defendants' actions were undertaken intentionally, with malice and with reckless indifference to Plaintiff's rights.

146.     As a direct and proximate result of the misconduct described in this Count, Plaintiff's rights were violated and he suffered physical and emotional injuries.

**Count X**
(42 U.S.C. §§ 12131-12134 – ADA Claim)
(Defendant – IDOC)

147.    Plaintiff incorporates each Paragraph of his Complaint as if restated fully herein.

148.    As described more fully above, Plaintiff suffers from a physical impairment that substantially limits one or more of his life activities, including, the ability to relieve himself normally.

149.    As described more fully above, this physical impairment prevents and/or severely restricts Plaintiff from doing an activity that is of central importance to daily life.

150.    As described more fully above, Plaintiff sought a reasonable accommodation for this physical impairment and one or more of the Defendants refused to provide Plaintiff with a reasonable accommodation.

151.    As a direct and proximate result of the misconduct described in this Count, Plaintiff's rights were violated and he suffered physical and emotional injuries.

152.    Plaintiff's injuries were caused by employees of IDOC, including, but not limited to, the individually named Defendants, who acted pursuant to the policies and practices of IDOC and/or Stateville.

**Count XI**
(29 U.S.C. § 794 – Rehabilitation Act Claim)
(Defendant – IDOC)

153.    Plaintiff incorporates each Paragraph of his Complaint as if restated fully herein.

154.    As described more fully above, Plaintiff suffers from a physical impairment that substantially limits one or more of his life activities, including, the ability to relieve himself normally.

155.     As described more fully above, this physical impairment prevents and/or severely restricts Plaintiff from doing an activity that is of central importance to daily life.

156.     As described more fully above, Plaintiff sought a reasonable accommodation for this physical impairment and one or more of the Defendants refused to provide Plaintiff with a reasonable accommodation.

157.     As a direct and proximate result of the misconduct described in this Count, Plaintiff's rights were violated and he suffered physical and emotional injuries.

158.     Plaintiff's injuries were caused by employees of IDOC, including, but not limited to, the individually named Defendants, who acted pursuant to the policies and practices of IDOC and/or Stateville.

### Count XII
(State Law Claim – Willful and Wanton Misconduct)
(Defendants – Hardy, Franklin, Frederick, Kissell, Ghosh, Zhang, Schaefer, and Obaisi)

159.     Plaintiff incorporates each Paragraph of this Complaint as if restated fully herein.

160.     In the manner described more fully above, the actions of Defendants breached the duty of care owed to inmates in their care.  They did so by ignoring Plaintiff's requests for medical attention.

161.     In the manner described more fully above, the actions of Defendants were willful and wanton in that they demonstrated an utter indifference to the safety of others.  Defendants were aware that an injury would likely result from the above-described course of action and recklessly disregarded the consequences of those actions.

162.     As a direct and proximate result of Defendants' negligence and/or willful and wanton misconduct, Plaintiff suffered tremendous pain and additional injury.

**Count XIII**
(State Law Claim – Medical Negligence)
(Defendants – Ghosh, Zhang, Schaefer, and Obaisi)

163.    Plaintiff incorporates each Paragraph of this Complaint as if restated fully herein. Plaintiff additionally incorporates the attorney's affidavits and physician's certificates, submitted pursuant to 735 ILCS 5/2-622, which have been attached to this Complaint as Exhibit A.

164.    In the manner described more fully above, Defendants Ghosh, Zhang, Schaefer, and Obaisi, in rendering medical care and treatment to Plaintiff and/or holding themselves out as professionals who were rendering medical care and treatment to Plaintiff, had a duty to possess and apply the skill and care of reasonably well-qualified physicians in the same and similar circumstances.

165.    Defendants, in derogation of their aforementioned duty, were negligent in the provision of medical care to Plaintiff.  Plaintiff's injuries were sustained as a direct and proximate result of one or more of the negligent acts and/or omissions of Defendants Ghosh, Zhang, Schaefer, and Obaisi.

166.    Plaintiff has attached as Exhibit A to this Complaint an attorney's affidavits and physician's certificates for Defendants Ghosh, Zhang, Schaefer, and Obaisi in compliance with 735 ILCS 5/2-622.

**Count XIV**
State Law Claim - Intentional Infliction of Emotional Distress)
(Defendants – Ghosh, Zhang, Schaefer, and Obaisi)

167.    Plaintiff incorporates each Paragraph of this Complaint as if restated fully herein.

168.    In a manner described more fully above, by denying Plaintiff medical attention, the Defendants Ghosh, Zhang, Schaefer, and Obaisi engaged in extreme and outrageous conduct.

169.    Defendants' actions set forth above were rooted in an abuse of power or authority.

170.     Defendants' actions set forth above were undertaken with intent or knowledge that there was a high probability that the conduct would inflict severe emotional distress with reckless disregard of that probability.

171.     Defendants' actions set forth above were undertaken with malice, willfulness, and reckless indifference for the rights of others.

172.     As a direct and proximate result of this misconduct, Plaintiff suffered injuries, including severe emotional distress and great conscious pain and suffering.

**Count XV**
(State Law Claim – Respondeat Superior)
(Defendant – Wexford)

173.     Plaintiff incorporates each Paragraph of this Complaint as if restated fully herein.

174.     In committing the acts alleged above, Defendants Ghosh, Zhang, Schaeffer, and Obaisi were employees and/or agents of Defendant Wexford Health Sources, Inc., acting at all relevant times within the scope of their employment. As such, Defendant Wexford is liable as principal for all torts committed by its employees and/or agents.

**Jury Demand**

Plaintiff demands a trial by jury pursuant to Rule 38(b) of the Federal Rules of Civil Procedure on all issues so triable.

WHEREFORE, Plaintiff, RANDY LIEBICH, by and through his attorneys, LOEVY & LOEVY, respectfully requests that this Court enter judgment in his favor and against Defendants Warden Marcus Hardy, Albert J. Kissell, N. Jackson, Johnnie L. Franklin, Charles P. Frederick, the Illinois Department of Corrections, Wexford Health Sources, Inc., Dr. Parathasarathi Ghosh, Dr. Liping Zhang, Dr. Ronald Schaefer, and Dr. Saleh Obaisi, awarding

compensatory damages, punitive damages, attorneys' fees, and any other relief this Court deems

appropriate.

Respectfully Submitted,

/s/ Vincenzo Field

Arthur Loevy
Jon Loevy
Elizabeth Mazur
Vincenzo Field
Sarah Grady
LOEVY & LOEVY
312 North May Street, Suite 100
Chicago, IL 60607
(312) 243-5900

**Certificate of Service**

I, Vincenzo Field, an attorney, certify that on July 7, 2014, I caused the attached Fourth Amended Complaint to be served on all counsel of record via the ECF system.

/s/ Vincenzo Field